**MEMO ENDORSED**

# Stephen A. Katz, P.C.
## Attorney at Law

111 JOHN STREET, SUITE 800
NEW YORK, NY 10038-3180
(212) 349-6400 FAX: (646) 308-1170
1-(800) 251-3529
sakatz00@aol.com

*Stephen A. Katz* (MA, NY & PA)

Honorable Nelson S. Roman
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

*Defendants are directed to respond to this letter in writing (not to exceed 3 pages) by Nov. 15, 2013.*

*Dated: Nov. 12, 2013*
*White Plains, NY*

11 November 2013

**SO ORDERED:**

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE
11/12/13

Re: Hutter v. Countrywide Bank, N.A., Civil Action no. 09-CV-10092 (NSR) (LMS)

Dear Judge Roman:

As counsel for the plaintiff Nance M. Hutter, I submit this letter-motion under Rule 60(b).[1] Mrs. Hutter asks that the Court reconsider its decision of 7 November 2013 to limit her proposed amendments to the complaint, to those amendments that I could remember in Court at the 07-NOV-2013 conference. I did not realize that the Court would require me to name all Mrs. Hutter's desired amendments from memory, but expected to describe them in a pre-motion-conference letter.[2] I therefore inadvertently omitted some amendments to the complaint that Mrs. Hutter wants to make, which are these:

1. Hutter seeks to amend her complaint to conform with the facts asserted in the report and deposition testimony of her expert Professor Raymond H. Brescia, which were that defendant Countrywide Bank, N.A. failed to perform adequate inquiry into Hutter's ability to repay the $1.785 million Pay Option ARM Loan that she received. Prof. Brescia asserts that during 2003–2008, Countrywide made mortgage loans to many borrowers without ensuring that they could afford their loans, causing many Countrywide borrowers to default. Countrywide did that because it sold most of its loans to securitization trusts, which bundled hundreds of mortgage loans and then sold bonds backed by the loans. That meant that the defaults did not financially injure Countrywide and so it did not care if its borrowers defaulted, because by the time the defaults occurred Countrywide no longer owned the loans, but had already profited from them by selling them. Hutter's $1.785 million loan from Countrywide fits that pattern. Countrywide deposed Professor Brescia, so the defendants should not be surprised or prejudiced by this amendment, nor should they need more discovery.

---

[1] Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . .").

[2] *See* Judge Roman's Individual Practices in Civil Cases Rule 3(A)(ii) ("[Besides discovery motions], [a] pre-motion conference with the Court is required before making any other motion . . . . To arrange a pre-motion conference, the moving party shall submit a letter . . . setting forth the basis for the anticipated motion.").

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/12/2013

Honorable Nelson S. Roman
11 November 2013
Page two

---

2. Hutter suffered from duress and incapacity to contract at the 11 December 2006 closing of her $1.785 million Countrywide loan, because she had a serious automobile accident on 21 November 2006 in which she sustained a traumatic brain injury that left her with a permanent 21% disability rating for cognitive impairment. At deposition the defendants questioned her about the accident and how it affected her comprehension of the 11-DEC-2006 closing, so the amendment should not surprise or prejudice the defendants nor require more discovery.

3. Hutter seeks to claim damages because Countrywide's false offer of a 1.5% loan induced her to pass up the opportunity to sell her Westchester County home in 2006, when it was worth $2,550,000. Hutter also wants to add a request for consequential damages caused by loss of credit caused by her Countrywide negative-amortization loan. The tripling of Hutter's monthly payments caused her to default, which Countrywide would have prevented had it competently reviewed her finances to see if she could afford the actual 8.250% payments on its $1.785 million loan. The default caused Hutter financial injury by depriving her of credit to invest in her husband's business of making emergency shelters for victims of disasters such as Hurricanes Katrina and Sandy. (Hutter is a shareholder of the business.) The report of Hutter's expert Joseph Ammirati explains both those damages claims, so the defendants should neither be surprised nor prejudiced by the amendments, nor should they need more discovery.

4. Mrs. Hutter seeks to join Joseph Sciacca, president of defendant mortgage broker Evolution Mortgage, Inc. Judge Cathy Seibel previously dismissed Sciacca as a defendant, but gave Hutter leave to join him back in the case if evidence that he had committed misfeasance emerged in discovery. Now it is known that both Sciacca and his company defendant Evolution Mortgage Inc., improperly paid defendant Watermark Capital's corporate officer Charles Dragna $13,398.75 for work on Mrs. Hutter's loan that Dragna did when he was unlicensed as a New York State mortgage broker. And Sciacca worked with employees of the unlicensed mortgage broker Watermark Capital in arranging Hutter's Countrywide loan. Those actions violated Banking Department Regulation 38.7(a)'s proscription that "[n]o mortgage broker . . . shall (2) conduct business with an entity which it knows or should know is an unregistered mortgage broker . . . .". Sciacca also flouted Banking Regulation 38.3(x) in failing to disclose to Hutter that Evolution would split its broker's fees with Watermark. And he violated Banking Reg. 38.7(b)(2) requiring him to file with the banking department an undertaking of accountability within ten days of his hiring Dragna. The amendments should not surprise or prejudice Sciacca and Evolution Mortgage or require them to do additional discovery, because the complaint already asserts a claim under the Licensed Mortgage Bankers Law,[3] and the foregoing banking regulations are promulgated under that statute.

5. Defendant Countrywide Bank, too, violated Banking Reg. 38.7(a)(2) by conducting business with the unlicensed mortgage broker Watermark Capital. Faxes show that, and also, Hutter's husband was told by Watermark that Countrywide brought Evolution Mortgage into the transaction because Evolution was licensed in New York State as a

---

[3] N.Y. Banking Law §§ 598-99 (McKinney 2008).

Honorable Nelson S. Roman
11 November 2013
Page three

mortgage broker while Watermark which had initiated Hutter's $1.785 million Countrywide loan, was not. Evolution's president Sciacca and Watermark's executive Dragna deny that allegation and claim that rather than Countrywide's bringing them together, they met before Hutter sought a loan when both men attended a mortgage-broker's course in Florida. But at deposition Sciacca and Dragna could not recall any details of the supposed Florida course, suggesting that they did not really meet there, but that Countrywide introduced them as Mr. Hutter was told. Countrywide deposed Mr. Hutter, and also observed Hutter's counsel questioning Sciacca and Dragna about the supposed Florida course, so Countrywide should not be surprised or prejudiced by this amendment or need additional discovery because of it.

    6. The charge that Countrywide brought Evolution Mortgage into Hutter's $1.785 million Countrywide loan that the unlicensed broker Watermark Capital had already begun working on, will be bolstered if Hutter is allowed to make the next amendment that she seeks. That is that both Watermark Capital and Evolution Mortgage were Countrywide's *agents*. The allegation is supported by lender-broker contracts that Countrywide entered into with both Watermark Capital and Evolution Mortgage and that Countrywide produced in discovery. All Hutter's loan negotiations were conducted through the brokers, and testimony revealed that Countrywide marketed its loans through its broker network. The amendment should not surprise or prejudice the defendants nor require them to conduct additional discovery, since Countrywide, Watermark, and Evolution have known about their lender-broker contracts since they entered into them.

    7. Finally, Hutter seeks to amend her Truth-in-Lending Act (TILA) claim to assert that she was not given notice of the right to cancel her $1.785 million loan until 14-DEC-2006, which deprived her of the three days—running from her loan's closing date—that a borrower is entitled to to have the opportunity to rescind her loan. The defendants inquired into the matter at Hutter's deposition, when they had her produce the original Federal Express envelope that contained the closing documents that were sent to her. So the amendment should not surprise or prejudice the defendants, because discovery has already been done on the matter.

    Mrs. Hutter respectfully asks that when she moves to amend her complaint, she should be allowed to seek the amendments described above. None of the amendments require her to add a new claim to the complaint; they all modify existing claims. The foregoing amendments were too complex for me to remember in Court last Thursday, so I omitted them. Under Rule 60(b) therefore, plaintiff Hutter asks that the Court reconsider its decision to limit her proposed amendments to her complaint, to those that I could name in Court, and that instead, the Court let Hutter also seek the amendments described in this letter. Thank you for considering this request.

Sincerely yours,

*Stephen A. Katz*
Stephen A. Katz

cc: All counsel

## Stephen A. Katz, P.C.

Phone: (212) 349-6400
Fax: (646) 308-1170



| To: Hon. Nelson S. Roman | From: Stephen A. Katz |
|---|---|
| Fax: (914) 390-4179 | Pages: 4 |
| Re: Hutter v. Countrywide Bank | Date: November 11, 2013 |

Dear Judge Roman:

I have sent with this cover page:

1. a letter asking the Court's permission for the plaintiff, Nance M. Hutter, to seek additional amendments to her complaint besides those that her counsel described at last week's conference.

Thank you for considering this request.

Sincerely yours,

Stephen A. Katz,
counsel for plaintiff Nance M. Hutter
(212) 349-6400

111 John Street Suite 800, New York, NY 10038-3180

Millions are now using the internet to send and receive faxes. Are you? No more phone line, no more fax machine. Try it free at www.rapidfax.com/free.