ZEICHNER ELLMAN & KRAUSE LLP

1211 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10036
(212) 223-0400
FAX: (212) 753-0396
www.zeklaw.com

35 MASON STREET
GREENWICH, CT 06830
(203) 622-0900
FAX: (203) 862-9889

DIRECT DIAL
(212) 826-5355
krudd@zeklaw.com

103 EISENHOWER PARKWAY
ROSELAND, NJ 07068
(973) 618-9100
FAX: (973) 364-9960

November 15, 2013

**VIA ECF**

Honorable Lisa Margaret Smith
United States Magistrate Judge
The Hon. Charles L. Brieant, Jr.
  Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

      Re:    **Nance Hutter v. Countrywide Bank, N.A., et al.**
               **Case Number 09 Civ. 10092 (ER)(LMS)**

Dear Judge Smith:

      We are counsel to Bank of America, N.A., successor to defendant Countrywide Bank, N.A. ("BANA"). We write in response to the letter motion from plaintiff's counsel dated November 8, 2013 (the "Letter," DE 98) by which plaintiff seeks to take the deposition of Nicole Steigler, even though discovery is now closed. The application should be denied for the reasons outlined below. Initially, plaintiff fails to establish the import of the proposed testimony to warrant the reopening of discovery. Also, permitting plaintiff to serve her hoped-for deposition subpoena would violate the mandate of Rule 1 of the Federal Rules of Civil Procedure, that the Rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action."

      On August 8, 2013 this Court extended the discovery deadline to October 31, 2013. Ms. Steigler was known to plaintiff since at least June 2012. Further, during the November 7, 2013 conference (the "Conference"), Your Honor requested that counsel attach to his proposed letter application plaintiff's Deposition Notice Pursuant to Rule 30(b)(6) ("Plaintiff's 30(b)(6) Notice") and relevant portions of the transcript of the BANA deposition to justify the request. He failed to do so. We have therefore attached Plaintiff's 30(b)(6) Notice as Exhibit A; counsel has not yet sent us the deposition transcript. At the end of the designated topics in Plaintiff's 30(b)(6) Notice, counsel writes that plaintiff "asks that Countrywide produce the following of its employees who worked on Hutter's Countrywide loan;" Ms. Steigler is not among the four people listed.

BANA identified Ms. Steigler in its June 2012 Initial Disclosures, stating that she was no longer employed by BANA. We also identified several areas about which she may have knowledge, including plaintiff's loan application and any asset verification conducted by BANA. Moreover, the document plaintiff's counsel refers to in the Letter regarding alleged "contact" between Todd Mathews and Ms. Steigler is part of Evolution Mortgage Inc's ("Evolution") document production from August 22, 2012. Despite the forgoing, plaintiff's counsel took no action to depose Ms. Steigler.

On August 28, 2013, counsel sent us an email in which he attached a "list of six Countrywide employees that Mrs. Hutter wants to depose," including Ms. Steigler. Again, counsel made no effort to subpoena her. Indeed, counsel later told me during the meet and confer process concerning BANA's 30(b)(6) deposition that the list came from his client.

Therefore, in the approximately seventeen months since plaintiff received BANA's Initial Disclosures and fifteen months after receiving Evolution's document production, other than a cursory email communication stating a desire to conduct six additional depositions, counsel made no effort to actually obtain Ms. Steigler's testimony. Thus, it is clear that seeking to re-open discovery to take another deposition is nothing but a delay tactic as plaintiff had ample opportunity to subpoena Ms. Steigler and conduct her deposition.

During a September 26, 2013 telephonic conference, Your Honor determined that BANA's knowledge of plaintiff's income was an appropriate area of inquiry at deposition. As a result, the 30(b)(6) witness was prepared to answer such questions. Although counsel's vague assertion that Ms. Steigler "processed" the loan does not appear to be supported by any documentation, the 30(b)(6) witness was prepared to discuss this topic and all topics permitted after our September 26 conference. Discovery should not be reopened to the extent counsel failed to probe the witness's knowledge in these areas.

Moreover, the deposition of BANA's 30(b)(6) witness occurred on October 17, 2013, two weeks before the discovery deadline. Yet, during the interim period plaintiff's counsel failed to subpoena Ms. Steigler. In addition, counsel did not contact us to attempt to schedule the deposition or conduct a meet and confer. Instead, counsel blithely let the discovery deadline pass without comment or complaint. His failure to timely act is fatal to the current request to re-open discovery. This is especially true in light of Your Honor's repeated instruction not to delay in bringing discovery issues and disputes to the Court's attention.

ZEICHNER ELLMAN & KRAUSE LLP

Honorable Lisa Margaret Smith
November 15, 2013
Page 3

Further, plaintiff's request to Your Honor to take one more deposition is profoundly disingenuous. Although at the Conference and in the Letter counsel requests only one more deposition, he failed to inform the Court of his real plan: seeking to file a Fourth Amended Complaint and thereby extend discovery even further.[1] At the conference with District Judge Roman immediately following the Conference with Your Honor, counsel informed the Court that he intended to make a motion for leave to file a Fourth Amended Complaint that would, *inter alia*, add two new defendants and add a new claim. Incredibly, he also proposed withdrawing certain factual allegations that were always solely within plaintiff's knowledge and included in all four prior complaints. Of course, given the District Court's reference to Your Honor (DE 71), such motion could have been made, or at least raised, to you. Judge Roman permitted plaintiff until November 25, 2013 to make a motion to file a Fourth Amended Complaint.

Plaintiff's on-going desperate attempts to delay her day of reckoning and summary judgment should be denied. Plaintiff had sufficient time during the lengthy discovery period in this action to seek testimony from Ms. Steigler. Accordingly, this Court should deny the application for plaintiff to re-open discovery and take an additional deposition.

Respectfully submitted,

Kenneth C. Rudd

KCR:bs

cc: Stephen A. Katz, Esq. (via ECF)
Michael Janus, Esq. (via ECF)
John T. Serio, Esq. (via ECF)

Attachment

#739254v2/KCR/2978.172

---

[1] We reserve all rights to seek remedies under 28 U.S.C. 1927 or otherwise.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>      Plaintiff<br><br>    v.<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of COUNTRYWIDE FINANCIAL CORPORATION<br>WATERMARK CAPITAL, INC.<br>EVOLUTION MORTGAGE INC.<br><br>      Defendants | Case no. 09-CIV-10092 (CS)<br><br>**Hutter's Notice of Deposition to Countrywide Bank** |

In accordance with Rule 30(b)(6), plaintiff Nance M. Hutter now notifies defendant Countrywide Bank, N.A., that she seeks to depose Countrywide by oral examination on the following topics:

- Nance M. Hutter will not depose Countrywide about the general countrywide lending policies during 2003–2008 (except as specified below), which Hutter's expert witness Raymond Brescia H. Brescia discusses in his report in this case.

- Instead, Hutter will depose Countrywide Bank about the specific $1.785 million loan that it made to Hutter on 11 December 2006.

- Hutter will ask the person that Countrywide Bank designates to testify at deposition on its behalf, about every aspect of Countrywide's relations with the mortgage brokers Watermark Capital, Inc. and Evolution Mortgage, Inc. concerning Hutter's Countrywide loan. What communications did Countrywide have

[Hutter's Notice of Deposition to Countrywide Bank]

---

with the brokers? Which mortgage brokers do broker-codes that Countrywide uses in its loan documents for Hutter's $1.785 million Countrywide loan—which mortgage brokers do those broker-codes refer to? Who at Countrywide spoke to Watermark Capital's employee Todd Matthews about Hutter's loan, and when did each such conversation take place? What was discussed in those Matthews–Countrywide conversations? What payments did Countrywide make to the brokers concerning Hutter's loan? Those and other questions about Countrywide's relations with Evolution Mortgage and Watermark Capital will be asked at the deposition.

- What percentage of Countrywide Pay Option ARM loans made during 2003–2008 have gone into default, as compared to the percentage of other types of Countrywide mortgage loans that have gone into default?

- Did Hutter qualify for her $1.785 million Countrywide loan under Countrywide's underwriting guidelines, given that she had no income in 2006? Was it Countrywide's practice to trust the income and asset figures for prospective borrowers that mortgage brokers put in borrowers' loan applications, without Countrywide's verifying those income and asset figures by means of the borrower's tax returns, pay stubs, bank statements, or other documents? Those and other questions will be asked concerning how Hutter qualified for her loan.

- Did Countrywide teach its brokers to promote its pay-option ARM loan, and if so what did it teach them in that regard? Did it pay brokers extra to place pay-option ARM loans?

- Under what conditions did Countrywide pay a broker a yield-spread premium?

- Concerning the 11-DEC-2006 closing ceremony for her Countrywide loan: Who conducted the closing for Countrywide? What happened at the closing? Did Countrywide's realize that Hutter was suffering from a debilitating injury from a recent auto accident, which hindered her ability to understand her loan and its loan documents? When did Countrywide provide Hutter with her closing documents and notice of the right to cancel, as the Truth-in-Lending Act

[Hutter's Notice of Deposition to Countrywide Bank]

---

required the bank to do? And so on, until all aspects of the closing have been inquired into.

- How did Countrywide Bank determine the interest rate for Hutter's loan?

In addition to Hutter's deposing a Countrywide Bank representative on the topics listed above, Mrs. Hutter asks that Countrywide produce for depositions, the following of its employees who worked on Hutter's Countrywide loan:

1. Diane McIntyre. She worked at Countrywide's structured-loan desk in Norwalk, CT, and manually processed the underwriting of Hutter's loan;

2. Joseph Rashini. Uniondale Branch manager who oversaw the loan process for Hutter's loan;

3. Betty Samial. Uniondale office involved in Hutter's loan; and

4. Colleen Finch. She worked at Countrywide Headquarters and was involved in processing Hutter's loan.

[Hutter's Notice of Deposition to Countrywide Bank]

---

7 August 2013
New York, New York

                                      Respectfully presented,

                                      _____/s/_____
                                      Stephen A. Katz, attorney for
                                          the plaintiff, Nance M. Hutter
                                      Stephen A. Katz, P.C.
                                      111 John Street, Suite 800
                                      New York, NY 10038-3180
                                      (212) 349-6400
                                      (646) 308-1170 (fax) (not for
                                        service of papers)
                                      SAKatz00@AOL.com