David B. Chenkin
Kenneth C. Rudd
BJ Finneran
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400

*Attorneys for Defendant*
*Bank of America, N.A., successor by merger to*
*Countrywide Bank, N.A.*

UNITED STATES DISTRICT COURT
SOUHTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>                          Plaintiff,<br><br>     v.<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of COUNTRYWIDE FINANCIAL CORPORATION, WATERMARK CAPITAL, INC., EVOLUTION MORTGAGE, INC.,<br><br>                          Defendants. | Index No.: 09-CV-10092 (NSR)<br>(LMS) |

**BANA'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS**
**CROSS-MOTION UNDER 28 U.S.C. §1927**

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ..............................................................................................................................2

POINT I   PLAINTIFF'S OPPOSITION IS IMPROPER ..........................................................2

POINT II  PLAINTIFF'S CONTINUALLY SHIFTING ALLEGATIONS
          CONCERNING HER MENTAL STATE AND HER GBL § 349
          CLAIM ARE VEXATIOUS .......................................................................................4

POINT III PLAINTIFF'S NEW AGENCY THEORY IS VEXATIOUS ...................................6

POINT IV  PLAINTIFF'S ATTEMPT TO WITHDRAW THE ALLEGATION
          THAT THE DEFENDANTS REPRESENTED THAT AN
          ADJUSTABLE RATE LOAN WAS RIGHT FOR HER IS
          VEXATIOUS ...............................................................................................................9

CONCLUSION ..........................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Brown v. Fisher,
   496 Fed Appx. 959 (2d Cir. 2012)................................................................................4

Lum v. New Century Mortgage Corp.,
   19 A.D.3d 558, 800 N.Y.S.2d 408 (2d Dept. 2005) .....................................................5

MacDraw, Inc. v. CIT Group Equip. Fin.,
   73 F. 3d 1253 (2d Cir. 1996).........................................................................................8

Oliveri v. Thompson,
   803 F.2d 1265 (2d Cir. 1986)........................................................................................4

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
   85 N.Y.2d 20, 647 N.E.2d 741 (1995).........................................................................5

United States v. International Board of Teamsters,
   948 F. 2d 1338 (2d Cir. 1991).......................................................................................9

**STATUTES**

28 U.S.C. §1927..............................................................................................................1, 2, 4, 8

General Business Law § 349..................................................................................................4, 5, 6

#749947

This Memorandum of Law is respectfully submitted by Bank of America, N.A., successor by merger to defendant Countrywide Bank, N.A. ("BANA" or "Countrywide") in Reply to plaintiff Nance M. Hutter's ("Plaintiff") Opposition (the "Opposition") to BANA's cross-motion under 28 U.S.C. §1927 seeking relief based on Plaintiff and/or her counsel vexatiously multiplying proceedings ("Cross-Motion") to Plaintiff's motion to file a fourth amended complaint ("Motion").[1]

## PRELIMINARY STATEMENT

Plaintiff's counsel audaciously blames BANA and the Broker Defendants (the "Defendants") for the filing (or attempted filing) of five separate complaints in this matter. Indeed the Opposition to BANA's Cross-Motion can essentially be summarized in four words: It's the Defendants' fault. It is the Defendants' fault that Plaintiff was compelled to file five complaints over four years, that the prior complaints contain factually inaccurate and false allegations, that Plaintiff's legal theories continue to shift and contradict each other and that the FAC is futile and, remarkably, still includes allegations contradicted by unequivocal deposition testimony. Counsel's position belies his failure to elicit a concise factual history from his client and craft a well-pleaded complaint.

As established below, the Opposition conveniently ignores Plaintiff and counsel's complicity in producing four prior complaints that were so defective as to require significant motion practice and judicial intervention to produce a pleading worthy of discovery. Further, continuing an amnesic approach to litigation, counsel's reply memorandum of law in further support of the Motion ("Reply"), serves as a stark example of counsel's continuing vexatious

---

[1] This reply adopts the defined terms in the Motion and BANA's opposition and Cross Motion.

conduct in this matter as its positions are not only futile, but inconsistent with the arguments and legal theories advanced in the Motion and FAC.

Plaintiff's factual allegations continue to "evolve" and counsel's legal theories are in a constant state of flux while both ignore the record, seemingly based on mere vagary and whim. Indeed, Counsel's conduct has resulted in an unreasonable and vexatious multiplication of the proceedings on the eve of summary judgment as he continues to burden the court and BANA in a futile and prejudicial attempt to amend the complaint for a fourth time thereby warranting the awarding of costs and fees to BANA as contemplated by 28 U.S.C. §1927 ("Rule 1927).

## ARGUMENT

### POINT I

### PLAINTIFF'S OPPOSITION IS IMPROPER

The vexatiousness of the conduct of Plaintiff's counsel is underscored by the fact that he submitted three separate briefs totaling over 60 pages of memoranda in reply to the Defendants' opposition to the Motion. Further, counsel improperly wastes a considerable portion of the twenty page Opposition improperly adding argument to the Motion, not addressing BANA's Cross-Motion, the argument in support of which totaled about three pages. Further it is not disputed that Plaintiff repeatedly filed complaints now known to contain outright falsehoods. Initially, the Court on its own accord directed Plaintiff's counsel to reduce the prolix nature of the original complaint. Subsequently, Plaintiff filed the first amended complaint ("First AC") with numerous baseless claims which BANA was compelled to move to dismiss, which motion the Court largely granted in a 62-page dictated decision. Plaintiff then filed a second amended

complaint containing immaterial, scandalous or impertinent allegations even in light of the Court's prior decision. Thereafter, Plaintiff finally filed a pleading that could be litigated only after extensive motion practice and argument.

The parties completed discovery on the TAC, and on the eve of summary judgment counsel is attempting to shift theories, allege different facts always known to Plaintiff and should have been known to counsel, withdraw factual allegations asserted in four prior complaints (which factual allegations were highlighted and heavily stressed in BANA's motion to dismiss),[2] fundamentally change other allegations and intentionally misstate the factual record. Counsel's serial filing of complaints riddled with inaccuracies demonstrates counsel's bad faith, unreasonably delays these proceedings and prejudices BANA by compelling it to expend significant time and resources in response.

Moreover, conspicuously absent from the Opposition is a declaration from counsel attesting to his lack of vexatiousness and good faith in the filings and declarations from the Plaintiff and her husband explaining how blatantly false allegations against BANA were included in the four prior complaints or explaining Mr. Hutter's diametrically opposed affidavits about Evolution's introduction to this transaction. Further, counsel's position that the new claims and factual allegations contained in the proposed FAC need not be based on "substantial evidence" or "grounded in the record" despite the completion of discovery defies logic and

---

[2] See e.g. D.E. 13.

3

sound judicial reasoning yet is consistent with Plaintiff's and counsel's vexatious conduct in pleading as they see fit regardless of the record and the late hour.[3]

Further, Plaintiff's claim that the only additional discovery necessary is the deposition of Todd Matthews is disingenuous and unfounded. Because BANA has no specific idea of his current whereabouts, it is necessary to locate him, serve him with a subpoena and travel to his state of residence to conduct a deposition. Moreover, previously deposed parties will require re-examination along with additional documentary discovery. Counsel is surely aware of this and his transparent objection cannot disguise the fact that the FAC, Motion and the Reply are replete with meritless claims and allegations causing "unnecessary delay in the litigation" of the type addressed by Rule 1927. (See Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986).)

## POINT II

### PLAINTIFF'S CONTINUALLY SHIFTING ALLEGATIONS CONCERNING HER MENTAL STATE AND HER GBL § 349 CLAIM ARE VEXATIOUS

In all of the prior complaints and the proposed FAC, Plaintiff alleges a cause of action under GBL § 349 based on, *inter alia*, purported representations by the Defendants about the benefits of the Loan (see e.g. TAC at ¶ 57). Now, for the first time Plaintiff alleges in the FAC that BANA violated GBL § 349 by closing the Loan even though she was allegedly too severely injured to comprehend the loan documents. (FAC at ¶ 57 (w)). However, such an allegation is futile and vexatious as the alleged conduct is not "deceptive." Even accepting

---

[3] See Point I of BANA's memorandum of law in support of its Cross-Motion, it is the close of discovery or filing a motion for summary judgment that mandates that any new pleading be based on substantial evidence (Brown v. Fisher, 496 Fed Appx. 959, 960 (2d Cir. 2012).

Plaintiff's allegation as true, which BANA categorically denies, there is nothing deceptive about requiring a borrower either to close a loan at a scheduled closing or risk not closing at all. It is axiomatic that rates change and the terms of a prospective loan cannot be maintained indefinitely without consummation.

"To assert a viable claim under General Business Law § 349 (a), a plaintiff must plead that (1) the challenged conduct was consumer-oriented, (2) the conduct or statement was materially misleading, and (3) damages (citation omitted)." Lum v. New Century Mortgage Corp., 19 A.D.3d 558, 559, 800 N.Y.S.2d 408 (2d Dept. 2005). No "recurring act or practice" aimed at the broader public is present here as is required by the statute. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744 (1995) (to prevail on a claim under the Deceptive Practices Act, a party "must demonstrate that the acts or practices have a broader impact on consumers at large"). Asserting such a baseless claim is unreasonable as there is no "materially misleading statement" and the conduct is entirely fact specific and unique to Plaintiff's alleged condition.

Moreover, counsel's allegations in the Motion and the Reply are inconsistent. The proposed FAC, and the memorandum of law accompanying the Motion, clearly assert (for the very first time) that Plaintiff's "medical condition and incapacity rendered her incapable of contracting." (See FAC at ¶ 10C and Memorandum of Law at p. 12, ¶ (5).) However, in the Reply counsel abruptly changes course and states "Unfair and deceptive practices – not lacking of capacity to contract – is the charge that Hutter seeks to add to the complaint." See Opposition at pp. 1 and 2.

5

Therefore, not only is Plaintiff's claim futile and unreasonable as counsel cannot shoehorn the alleged conduct under the protections of GBL § 349, but the vexatiousness of the allegations is underscored by the inconsistency and incompatibility of the Motion, FAC and the Reply and counsel's failure to include any explanation of the failure to previously assert Plaintiff's alleged mental incapacity in the prior complaints when it was known to him.

As further evidence of vaxatiousness, counsel incredibly appears to add yet another claim in the Opposition that is not asserted in either the proposed FAC or the Motion: "fraud in the execution."[4]  Seeking to add a new claim in such a cavalier and underhanded fashion highlights counsel's unreasonable actions in multiplying the pleadings and BANA's continuing frustration in determining the scope of Plaintiff's claims against it nearly five years after the commencement of this action.

## POINT III

### PLAINTIFF'S NEW AGENCY THEORY IS VEXATIOUS

In the First AC, Plaintiff indisputably alleged that the broker defendants were her agents: "In the summer or fall of 2006, Hutter hired Watermark Capital and Evolution Mortgage as her agents to obtain a loan to refinance her Bedford, NY home" and "Defendants Watermark Capital and Evolution Mortgage were agents of Hutter by contract and by operation of law." See First AC: ¶¶ 80-81. Further, in all of the prior complaints, including the TAC, Plaintiff alleged that Countrywide made direct representations to her. (See TAC at ¶ 57 a-r.)

---

[4] See Opposition at page 15, fn 54.

6

The deposition testimony of Plaintiff and her husband establish that the allegations of direct communication and contact between the Hutters and Countrywide were categorically false. Plaintiff therefore now alleges in the FAC that the Broker Defendants were Countrywide's agents, despite the clear evidence to the contrary in the written agreements between Countrywide and the Broker Defendants and the fact that their purported "relationship" does not remotely reach the standard to establish an agency relationship under New York law. See BANA's Memorandum of Law in Opposition to the Motion, Point I(B). Further, Plaintiff employs rather tortured logic by trying to explain away the clear and unequivocal language in the complaints alleging that Countrywide made direct representations to the Plaintiff; indeed, the change shows that the original allegations were simple falsehoods designed to help survive a motion to dismiss. Plaintiff's convoluted Agency by Ventriloquism theory is so meritless as to be vexatious.

However, counsel does not stop there. The Reply also espouses, for the first time, an "agency by estoppel" theory in an attempt to rescue the foundering agency allegation. However, in doing so, counsel crosses the line from advocacy into intentional and willful misrepresentation and vexatiousness. To validate the theory, *counsel* states in the Reply that "Hutter *relied* on the offer because it appeared to come from Countrywide." See Reply at p. 6. *Counsel* further declares that "Hutter reasonably believed that the brokers were acting with Countrywide's authority when they provided a good faith estimate offering a 1.5% fixed rate Countrywide loan …. So Hutter relied on the brokers to be acting on the authority of Countrywide." Id. at p. 8.

Such a statement is alarming in its mischaracterization of the documentary and deposition testimony and an outright falsity. Counsel does not, and can not point to any part of

7

the factual record to support this claim. Indeed, Plaintiff has repeatedly maintained that she had no direct communication or contact with Countrywide and only had one conversation with Todd Matthews in August 2006 about this loan. See N. Hutter Dep. Testimony at pp. 13-15, Exhibit S to Finneran Decl. Glaringly, counsel fails to include a declaration from Plaintiff stating she had any knowledge of Countrywide's involvement in this loan prior to closing. In addition, Mr. Hutter testified that "I didn't know Countrywide was even in the picture… I had no idea what Countrywide is and never heard the name before…." (See G. Hutter Dep. Testimony at p. 25, lines 17-25, Exhibit N to BANA's opposition to the Motion.)

However, most egregious is counsel's demonstratively false allegation that the good faith estimate offers her a "1.5% fixed rate Countrywide loan." The document, attached as Exhibit B to the Reply, clearly states in the upper right-hand corner "Loan Program: MTA option Arm." Further, the word "Countrywide" does not appear on the document, nor does it state that the 1.5% interest rate is fixed for any period, much less the entire term of the Loan.

Indeed, contrary to Plaintiff's argument every document submitted in this matter supports the position that the loan offered to the Plaintiff was always an adjustable rate product. Any assertion to the contrary is intentionally misleading.[5] Counsel has improperly invented a factual "record" out of thin air to support his meritless theory of agency by estoppel and in turn provided clear evidence of the bad faith to warrant an award under Rule 1927. See MacDraw, Inc. v. CIT Group Equip. Fin., 73 F. 3d 1253, 1261-1262 (2d Cir. 1996).

---

[5] Plaintiff only claims for the first time that Loan terms were an incredible 1.5% for 40 years in the FAC and in her recent deposition testimony. The sole evidence of this alleged offer are conversations with Todd Mathews, a person Plaintiff confoundingly fails to make a party to this action.

8

## POINT IV

### PLAINTIFF'S ATTEMPT TO WITHDRAW THE ALLEGATION THAT THE DEFENDANTS REPRESENTED THAT AN ADJUSTABLE RATE LOAN WAS RIGHT FOR HER IS VEXATIOUS

Counsel has acted vexatiously by filing four complaints that he now claims contain a false allegation. Significantly, Plaintiff fails to provide a declaration explaining how this allegation survived for four years in four prior complaints and why she now she seeks to "eliminate it." Moreover, equally troubling is counsel's claim that "the false statement that Hutter was counseled to take out a variable rate loan is contradicted by documents that Hutter has submitted and … nothing supports the false statement." See Opposition at p. 17.

The claim that Plaintiff "was given documents stating that Countrywide was offering her a 1.5% fixed rate loan" (Id. at 17-18) is an intentional misrepresentation. As established in Point III above the good faith estimate clearly states that the Loan is an adjustable rate loan and the word "Countrywide" is entirely absent.

As the court noted in United States v. International Board of Teamsters, 948 F. 2d 1338 (2d Cir. 1991), "1927 invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics." Id. at 1346. Here, counsel repeatedly failed to elicit thorough factual information from his client and continues to twist the factual record to assert meritless claims, some in an improper manner, all to the continued delay of resolution of this case and always to the prejudice of the Defendants.

## CONCLUSION

For the foregoing reasons, this Court should therefore compel counsel to pay either BANA's legal fees and expenses in connection with opposing the Motion and bringing the cross-motion or all of BANA's fees and expenses from the very beginning of this litigation.

Dated: New York, New York
February 11, 2014

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
David B. Chenkin
Kenneth C. Rudd
BJ Finneran
Attorneys for Defendant
 Countrywide Bank, N.A.
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400

#749947