UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

NANCE M. HUTTER,                                              09-CV-10092
                                                              (NSR)(WDW)

                          Plaintiff,


                -against-



PNC BANK,  N.A., d/b/a NATIONAL CITY BANK.
WATERMARK CAPITAL INC., NICHOLAS JOUTZ,
CLINT ELLIOT EVOLUTION MORTGAGE, INC.,
and JOSPEH SCIACCA

                          Defendant(s)
_____X


**DEFENDANT WATERMARK CAPITAL INC., AND NICHOLAS JOUTZ'
DECLARATION  AND MEMORANDUM OF LAW IN OPPOSTION TO PLAINTIFF'S
MOTION SEEKING PERMISSION TO FILE A FOURTH AMENDED COMPLAINT**

# TABLE OF CONTENTS

Table of Authorities.........................................................................................................iv

Preliminary Statement...................................................................................................1

Argument........................................................................................................................2

## TABLE OF AUTHORITIES

### State Cases

Savoy Record Co. v. Cardinal Export Corp.
    15 N.Y.2d  1; 254 N.Y.S.2d 521. ………………………………………..…………3

Yellowbook of NY v. DePente
    309 A.D.2d 859; 766 N.Y.S.2d 44……………..………………………..……….3

### Federal Statutes

Fed. R. Civ. P. 19………………………………………………………………..……….3

### State Statutes

N.Y. CRIM. PROC. LAW § 213………………………………………………..…………4,5

N.Y. Banking Law – Article 12-D………………………………………………………7

Conclusion.....................................................................................................................12

EXHIBITS IN OPPOSITION TO PLAINTIFF'S MOTION SEEKING
TO AMEND HER COMPLAINT

EXHIBIT A:      DECISION OF JUDGE CATHY SEIBEL

EXHIBIT B:       AFFIDAVIT OF NICHOLAS JOUTZ

EXHIBIT C:       DEFENDANTS RULE 26 AUTOMATIC DISCLOSURE

## I.    PRELIMINARY STATEMENT

The plaintiff, Nance M. Hutter, has filed a Motion seeking to amend her complaint an astonishing fourth time.  The defendants' Watermark Capital Inc. (hereinafter – Watermark) and its' corporate President Nicholas Joutz (hereinafter – Joutz) obviously and vehemently oppose each and every aspect of the plaintiff's current application.

Specifically, as it pertains to Watermark and Joutz, these defendants will argue that the granting of plaintiff's motion at this very late stage, after all discovery has been completed, would result in a great and unjust hardship to these defendant's as it would result in the unnecessary duplication of time and effort that would occur through the resumption of Discovery.

## II.    STATEMENT OF FACTS

On December 11, 2006, the plaintiff, Nance M. Hutter closed on a $1.785 million dollar adjustable rate mortgage loan made by co-defendant Countrywide Bank N.A. The loan was secured by the Hutter home, located at 175 Hickory Kingdom Drive, Bedford NY. At the time of the closing on this loan, the appraised value of the Hutter home was in excess of two million dollars.  The type of loan, i.e. adjustable versus fixed rate, etc., was decided upon by the plaintiff and was exactly what she requested.

In late 2008 and early 2009, the real estate market collapsed resulting in a sudden and dramatic decrease in property values throughout the country and specifically to the Hutter home. Recognizing the value of her home was now less than the amount she owes, Ms. Hutter commenced this lawsuit, as well as two others pending in state court.

1

### III          ARGUMENT

### A. HUTTER'S REQUEST TO REINSERT NICHOLAS JOUTZ INDIVIDUALLY AS DEFENDANT HEREIN MUST BE DENIED

When this matter was first commenced, Nicholas Joutz, President of Watermark, was named as a defendant individually by plaintiff's. In the early stages of this litigation, Motions to Dismiss were filed by the several defendant's. By decision dated May 23, 2011, the Honorable Judge Cathy Seibel granted, without prejudice, defendants motion as it pertained to Nicholas Joutz individually. In so doing, Judge Seibel stated:

> " the motion (to dismiss) is GRANTED as to defendant Joutz , but plaintiff's motion to Amend is GRANTED IN PART to the extent she is permitted to re-plead to better articulate a basis of this courts personal jurisdiction over Joutz, if she can do so in compliance with Rule 11 of the Federal Rules of Civil Procedure."

**See Exhibit A** – Decision and Order of Judge Seibel dated March 2011 – DE 39.

To return Joutz to this litigation, the plaintiff must establish a factual basis for doing so. The plaintiff must show that Joutz himself played a knowing and improper role in the alleged "wrongdoing" in order to be subjected to personal liability. **See Exhibit B** – Joutz Decleration in Opposition. The plaintiff has fallen woefully short of meeting this burden.

There exists zero evidence that Nicholas Joutz had any involvement at all with this loan. The plaintiff argues that Joutz, as a corporate officer, knew or should have known that his business partner, acting as an officer of Watermark, was somehow doing something improper. At worst, Mr. Dragna was acting in a manner exactly consistent with what a loan officer should be doing, i.e. obtaining information and creating documents necessary to procure a home loan. In short, nothing Mr. Dragna did should have in any way sent up a red flag that "wrongdoing was afoot." To the contrary, the evidence suggests that Joutz may not have known this loan even

2

existed until well after the loan closed, and possibly not until the commencement of this litigation. In addition, the plaintiff suggests that by accepting the check into the Watermark business account is, in and of itself, evidence to support the application to re-assert Joutz as a defendant. This argument is completely unpersuasive. Simply stated, there is no law that would prohibit Watermark from receiving those funds without a showing that it was known to Joutz that those funds were received through some illicit or improper source. There is simply no evidence at all to support such a contention. "A corporate officer is not subject to personal liability for actions taken in furtherance of the corporate business under the well settled rule that 'an agent for a disclosed principal will not be personally bound unless there is clear and explicit evidence of the agents intention to substitute or supersede his personal liability for, or to, that of his principal." Savoy Record Co. v. Cardinal Export Corp., 15 NY2d 1, 4; 254 N.Y.S.2d 521; 203 N.E.2d 206 (1964) See also Yellowbook of NY v. DePante, 309 A.D.2d 859. 766 N.Y.S.2d 44 (2003). Clearly, plaintiff has failed to meet this minimum threshold. In fact, Watermark disputes in the entirety that the loan at issue was even an "act in furtherance of the corporate (Watermarks) business." However, presuming for a moment it was, no credible argument can be made to support the premise that Joutz was acting, if at all, as nothing other than the agent of Watermark.

Federal Rules of Civil Procedure speaks to the issue of joinder. In particular;

RULE 19. REQUIRED JOINDER OF PARTIES

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
(A) In that personas absence, the court cannot accord complete relief among existing parties… - FRCP 19 (a)(1)(A)

Presuming this court concluded Joutz conduct, or better yet, lack of conduct, provided enough fodder to reinstate him into this action, to do so would be completely unnecessary. As is made clear by FRCP 19, if the plaintiff were to prevail upon her claims, the corporate defendant Watermark, as well as the other defendants', would provide the "complete relief" the rule speaks of.

It is abundantly clear that the plaintiff is now making desperate claims in order to keep afloat a very frail lawsuit. Very little has changed since Judge Seibel agreed with the defendant Joutz that he should not be subject to individual liability in this action. At the very best, Nicholas Joutz is "guilty" of the awful act of allowing his business partner to contribute personal funds that he legitimately earned in a personal capacity, into the new and financially struggling business known as Watermark. The portion of the plaintiff's Motion to Reassert Joutz individually must be denied.

## B. HUTTER'S REQUEST TO NAME CHARLES DRAGNA AS DEFENDANT TO THIS ACTION MUST BE DENIED AS IT IS BARRED BY THE STATUTE OF LIMITATIONS.

The loan at issue closed on December 11, 2006. It is from this date that the plaintiff's cause(s) of action accrued and the clock begins to tick regarding the statute of limitations. Under New York Law, of which this Court must apply, the Statute of Limitations for state Civil actions is set forth in New York's Civil Procedure Laws and Rules. Specifically, CPLR  section 213 states as follows:

> 213 – Actions to be commenced within six years: where not otherwise provided for; on contract; on sealed instrument; on bond or note, and mortgage upon real property; based upon mistake; by corporation against director, officer or stockholder; based on fraud. The following actions must be commenced within six years.
>
> (2) An action upon a contractual obligation or liability, express or implied…

4

(4) An action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured or upon a mortgage of real property , or any interest thereon;

(6) An action based upon mistake;

(8) An action based upon fraud; the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could have with reasonable due diligence.

As set forth above, the cause(s) of action in this litigation accrued on December 11, 2006. On November 25, 2013, the plaintiff for the first time seeks to add a new defendant to this action. Being that it is now just weeks shy of seven years since the cause of action accrued, there can be no dispute that the claims sought to be made against Charles Dragna are now time-barred.

Although absent some form of incompetency there is no method under law to extend the Statute of Limitations, presuming there was, the plaintiff must still be prohibited from adding Charles Dragna as a defendant. Mr. Dragna is a principle of Watermark and has been so since Watermark was formed in early 2006. As such, just as it is presumed the plaintiff learned of the name Nicholas Joutz, she too could have learned of Mr. Dragna's identity, to wit; a corporate search of Watermark through the records of the California secretary of state. If this had been done, Mr. Dragna's identity would have been learned years ago. Apparently it was not. In addition, through the discovery process and defendant Watermark's Rule 26 Automatic Disclosure, the identity and title of Charles Dragna became known to the plaintiff in June 2012, nearly a year and a half ago. See Exhibit C – Defendant's Rule 26 Disclosure. As a result, even if some form of extension were available to the plaintiff, which there is not, plaintiff's request would still be time barred.

Accordingly, the plaintiff's request to amend her complaint to name a new Charles Dragna as defendant to this action is barred by the Statute of Limitations.

## C. HUTTER'S REQUEST TO AMEND HER COMPLAINT AGAINST DEFENDANT WATERMARK MUST NOT BE PERMITTED.

Hutter next seeks to amend her complaint against defendant Watermark, presumptively upon the ground that Watermark improperly and illegally brokered this loan due to the fact that it was not licensed to do so in the State of New York. Once again, the plaintiff begins her argument upon the imaginary foundation that Watermark was the Mortgage broker. It was not.

As is made clear by all the closing documents regarding this loan, Evolution Mortgage was the mortgage broker for the Hutter loan. Period! Charles Dragna, who admittedly was an officer of Watermark at the time this loan closed, was the Mortgage Loan Originator, or loan officer. This loan came to Dragna through an individual named Todd Matthews. Todd Matthews had several prior dealings with the Hutters. The plaintiff has alleged that Todd Matthews was an employee of Watermark. He was not. Todd Metthews owned his own broker firm and was also an independent loan officer. He was never an employee of Watermark.

Charles Dragna had a prior business relationship with Joseph Sciacca, President of Evolution. Based upon this relationship, Evolution became the broker, Dragna the loan officer. What counsel for plaintiff simply refuses to recognize is the simple fact that in 2006, closing loans in the fashion done herein was not only not prohibited by law, it was "how things were done." More importantly, and contrary to plaintiff's argument, at the time this loan was closed, Mr. Dragna was not required to be licensed in the state of New York.

Time and time again, counsel for the plaintiff argues that Watermark and/or Dragna, must be held liable as they were unlicensed in the State of New York at the time this loan was closed.

6

In July 2008, article 12-D of the Banking Law was amended to include a new section 590(2)(b-1), which provides that, effective *July 1, 2009* (emphasis added), no person, partnership, corporation or other entity shall engage in the business of servicing mortgage loans with respect to residential real property located in this state without first being registered with the Superintendent of Banks as a Mortgage Loan Servicer (MLS)... See Banking Law Sec. 590 and McKinney's commentary.

There is no doubt that the loan which plaintiff argues for liability due to these defendant's unlicensed/unregistered status, came into being over two years earlier than the law which required such licensing came into effect. As has been argued to plaintiff's counsel throughout, by both Watermark and Evolution, is the simple fact that at the time this loan was closed, Dragna's work upon this file was completely legal and appropriate so long as Evolution filed with the State an "Undertaking of Accountability," which it did.

### D. HUTTER'S REQUEST TO AMEND HER COMPLAINT TO NOW ALLEGE HER HUSBAND ACTED AS HER AGENT MUST BE DENIED

At this very late stage of litigation, the plaintiff now attempts to claim her husband acted as her agent for this loan and it was he who did all the negotiations in this regard. This argument is preposterous! To fully understand the nature of this plaintiff and the complaints she has set forth herein, it is imperative that this court be presented with some background and collateral information. Beginning in January 2006 and culminating in January 2007, the plaintiff herein, in one fashion or another, refinanced her home on three separate occasions via traditional mortgage or equity line of credit. Upon the heals of the collapse of the real estate market, this plaintiff commenced three separate lawsuits all alleging that she was deceived into taking the loans that

she took, one of which is of course before this court, the other two are currently pending in the Supreme Court for Westchester.  It is important to bring this to the courts attention for the following reason, during a deposition of the plaintiff conducted by me, a series of questions were posed upon her asking what information the plaintiff had that supported the factual allegations set forth in her complaint(s) against Watermark.  Her responses, if truthful, revealed that she personally had no personal knowledge of the facts alleged but instead it was her husband that negotiated the terms of all her loans, including the one before this court.  As a result, each and every factual allegation set forth in the plaintiffs complaint(s) could not be true as she never spoke to anyone concerning the terms of her loan, contrary to what her complaint states.

Now, after three complaints in State court (one was amended) and four complaints in this Federal action, seven complaints in total, the plaintiff for the first time alleges her husband acted as her agent and in essence it was he who was deceived.  There can be no doubt this new "factual" issue is asserted at this time in a desperate attempt to save plaintiff's case.  It is painfully obvious that once plaintiff's counsel recognized that every single factual allegation contained in the complaint could not be true and therefore could not be proved, he recognized the agency argument was the only way to salvage the complaint.

Plaintiff's counsel suggests that permitting the complaint to be amended in this fashion should "not surprise or prejudice the defendant's or require more discovery, because they deposed Mrs. Hutter and Mr. Hutter on the topic of their agency agreement."  See Exhibit D of plaintiff's motion, page eleven of the proposed amended complaint.  Counsel's contention is both patently untrue as well as blatantly misleading and disingenuous. Mr. Hutter was not deposed by this defendant's on the issue of agency.  How could he have been since this now is the first time plaintiff formally seeks to interpose this contention? Mr. Hutter was deposed only

by counsel for defendant Countrywide and he was so deposed as a non-party witness. For various reasons Watermark chose not to participate in the Gerhardt Hutter deposition, as is also the case for co-defendant Evolution. Watermarks entire defense strategy was formulated upon confronting and challenging the literal allegations contained in each and every paragraph of the complaint(s) filed by the plaintiff, totaling seven in all. In each of these complaints, the plaintiff set forth factual allegations claiming she personally was lied to, deceived and otherwise fooled by the various defendants. To claim now, four years after this litigation was commenced that it wasn't she that was deceived but instead her husband, who then passed along the false information to her would be extremely prejudicial to this defendant.

Based upon the foregoing, the portion of the plaintiff's motion which seeks to alter the factual allegations in such a manner must be denied. In the alternative, if this Court grants this portion of the plaintiff's motion, it is respectfully requested that Watermark be granted the opportunity to depose Mr. Hutter.

The defendant Watermark adapts as it's own the legal arguments set forth by co-defendant Countrywide on this issue.

### E. HUTTER'S REQUEST TO AMEND HER COMPLAINT TO ADD FACTS CONCERNING HER MENTAL CONDITION IS IRRELEVANT AND SHOULD BE DENIED

Watermark must briefly address this request by plaintiff. As indicated above, a total of seven prior complaints have been filed by this plaintiff since 2009 concerning loans taken against her property starting in 2006. Why at this time is it now being argued that plaintiff should be allowed to claim she didn't understand what she was signing due to a brain injury? She suffered that brain injury long before commencing any of these several lawsuits. It is painfully obvious

that these "allegations" are set forth for the first time now in a desperate attempt to save a sinking ship.

Plaintiff argues here that she and her husband tried to reschedule the closing because the plaintiff was so badly injured, "but Watermark refused." To begin with, Watermark was not the mortgage broker, Evolution was. Assuming Watermark was the broker, the obvious questions raised by this contention are, how is it that Watermark refused to reschedule the closing? Who from Watermark refused? Neither Mrs. Hutter, nor her husband, ever spoke to any employee of Watermark, so how then can they claim Watermark refused to reschedule? The plaintiff sets forth nothing more than the conclusory statement that Watermark refused, naming no names, time or manner by which they allegedly refused. Finally, in my twenty-three years of practice and the several times I personally closed on home loans, not on any of those occasions was the closing date and time controlled by the mortgage broker. In short, this allegation is pure fabrication.

Nevertheless, the foregoing is all irrelevant as the plaintiff appeared at the closing and executed all the documents necessary to close on the loan.

### F.  HUTTERS REQUEST TO ASSERT COUNTRYWIDE AND WATERMARK HAD IMPROPER DEALINGS SHOULD BE DENIED

At the outset, whether Countrywide had improper dealings with Watermark seems to be of no concern to the plaintiff, since it has been shown time and again that Watermark was not involved in the loan at issue. Nevertheless, the plaintiff's claims must be briefly addressed.

As is his way, counsel again claims that an employee of Watermark, Todd Matthews, told Mr. Hutter how each party is alleged to have come into play. Watermark has no idea what Todd Matthews may or may not have said to Mr. Hutter. However, whatever that may have been

10

should have no bearing upon Watermark for the simple reason that Todd Matthews was not an employee of theirs.

The remainder of the contentions made by plaintiff on this issue are simply ridiculous and more importantly irrelevant.

### G. HUTTERS REQUEST TO AMEND HER COMPLAINT TO ALLEGE WATERMARK ACTED AS THE AGENT FOR COUNTRYWIDE MUST BE DENIED

Again, the plaintiff wrongly argues that Watermark was the mortgage broker on this loan. It was not. For that reason alone the plaintiff's request to amend in this regard should be denied, primarily upon the ground of relevance. Nevertheless, the plaintiff's argument must nonetheless fail. In support of his argument, counsel annexes as his Exhibit R, the "Wholesale Brokers Agreement" as evidence of Watermarks status as Agent for Countrywide. Unfortunately for the plaintiff, this document undermines his argument. The broker agreement referred to is generic in nature and was executed well in advance of the loan closing at issue. The agreement is nothing more than one by which Countrywide requires mortgage brokers to act when brokering a loan through it. Ironically, at page 14 of this document, under ARTICLE 9 GENERAL, the agreement specifically states the parties are independent contractors and that the broker is never authorized to hold itself out as the agent for Countrywide. See **Exhibit R – plaintiffs motion Article 9 – 9.2 Relationship of the Parties.** Simply stated, Watermark is an independent mortgage broker, who, in order to broker loans through Countrywide, agreed to execute an agreement which outlined the manner by which Countrywide expected them to act when conducting business. The agreement was not specific to the loan at issue and, of greater importance, the agreement itself explicitly states that the broker is NOT the agent of Countrywide. For this reason, this portion of the plaintiff's motion must be dismissed.

11

**Note: The Defendant Watermark and Nicholas Joutz Will Adapt The Legal Arguments And Supporting Law Submitted In Opposition By Co-Defendant Countrywide as it Pertains to All Issues Raised in the Plaintiff's Motion**

## H. CONCLUSION

On November 7, 2013, the parties to this matter appeared before Magistrate Smith and stated in no uncertain terms that, excepting one minor issue, Discovery had been completed. Minutes later, the parties appeared before this Court and for the first time, plaintiff addressed the issues now contained in her motion. This factor alone should indicate the disingenuous nature of the plaintiff and the allegations she has made.

It is blatantly apparent that the requests being made by counsel herein are ones that are almost completely void of substance. In fact, other than identifying who earned fees and how much those fees were as a result of his work on the closing, there is not a single, solitary new fact alleged in the complaint, never mind those that would permit the filing of yet another amended complaint.

The application of this plaintiff seeking to amend her complaint, at this very late stage of this litigation, must be seen for exactly what it is, a desperate, last gasp attempt to save a collapsing lawsuit. The plaintiff's motion must be denied in all respects.

Dated: Mineola, New York
       January 6, 2014

                        Respectfully submitted,

                        JOHN T. SERIO/JTS-0007
                        Attorney for defendants Watermark and Nicholas Joutz
                        114 Old Country Road, Suite 420
                        Mineola, New York 11501
                        (516) 248-5317