UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

NANCE M. HUTTER,
                              Plaintiff

       v.


COUNTRYWIDE BANK, N.A., a subsidiary
   of COUNTRYWIDE FINANCIAL
   CORPORATION
WATERMARK CAPITAL, INC.
EVOLUTION MORTGAGE INC.,

                              Defendants

Case no. 09-CIV-10092 (NSR)
(LMS)


**Hutter's Reply Memorandum to Watermark Capital in Support of
Her Motion to File a Fourth Amended Complaint and Join Parties**


Submitted by


Stephen A. Katz, attorney for the
   plaintiff, Nance M. Hutter
Stephen A. Katz, P.C.
111 John Street, Suite 800
New York, NY 10038-3180
(212) 349-6400
(646) 308-1170 (fax)
SAKatz00@AOL.com

**Table of Contents**

Page

Argument    1

1. Watermark's president Nicholas Joutz should be re-joined as a defendant because of his wrongdoing in (a) letting Watermark broker Hutter's loan when Watermark was unlicensed in New York; and (b) letting Watermark receive payment for its unlicensed brokerage work.    1

    A. Joutz is not eligible to be joined as a required party, but he can be permissively joined.    2

    B. The Licensed Mortgage Bankers Law's statute of limitations does not prevent Dragna's joinder, because the doctrine of equitable tolling stayed the statute of limitations when Watermark wrongfully withheld a $13,398.75 check in discovery.    3

      (1) For thirteen months during which Hutter's deadline for suing Dragna expired, the brokers suppressed the $13,398.75 check with which Evolution Mortgage and Dragna illegally paid Watermark.    3

    C. Watermark Capital violated the Licensed Mortgage Bankers Law by doing brokerage work on Hutter's Countrywide loan when Watermark was unlicensed as a mortgage broker in New York State.    9

    D. Hutter should be allowed to amend her complaint to assert that her husband was her agent for her Countrywide loan, because Watermark has known about the agency since June 2013 and so the amendment will not prejudice it.    11

    E. As with Mr. Hutter's agency, Evolution was told about Hutter's mental disability six months ago, so its claim that the complaint's being amended to describe the disability will prejudice it is groundless.    14

      (1) Mrs. Hutter's psychiatrist testified about Mrs. Hutter's disability in June 2013, Evolution had the opportunity to cross-examine him, and Evolution has received Mrs. Hutter's medical records concerning her condition; so it already knows about the disability.    14

    F. The doctrine of agency by estoppel permits Hutter to amend her complaint to allege that Watermark Capital was Countrywide's agent.    15

Conclusion    18

# Table of Authorities

**Cases**

*Campbell v. WABC Towing Corp.,* 78 Misc. 2d 671, 672, 356 N.Y.S.2d 455, 456
(Sup. Ct. Queens County 1974) (mem.)                                    16

*Durante Bros Constr. Corp. v. St. John's Cemetery*, 285 A.D.2d 578, 579, 729
N.Y.S.2d 40, 41 (2d Dep't 2001)                                        16

*Getlar v. Rubinstein*, 171 Misc. 40, 40–41, 11 N.Y.S. 943, 944 (Sup. Ct. N.Y.
County 1939).                                                          17

*Hannon v. Siegel-Cooper Co.*, 5 Bedell 244, 246, 167 N.Y. 244, 246, 60 N.E. 597,
598 (1901).                                                            16

*Securities and Exchange Commission v. Gabelli*, 653 F.3d 49, 59–60 (2011)    3


**Statutes and Rules**

N.Y. Banking Law § 598(5)                                             3, 11
Banking Reg. 38.7(a)(2)                                                  5
Banking Reg. 38.7(b)(2)                                               10, 11
N.Y. BANKING Law §§ 589–99 (McKinney 2008)                          3, 6, 7, 8
N.Y. Banking Law § 590(2)(b)-1                                      9, 10, 11
N.Y. Banking Law § 590.2(b)                                         4, 5, 10,
                                                                       11

N.Y. C.P.L.R. § 213                                                      3


**Secondary Authority**

2A N.Y. Jur. 2d *Agency* § 25                                          16

This legal memorandum is plaintiff Nance M. Hutter's reply to defendant Watermark Capital, Inc.'s opposition to Hutter's motion to file a fourth amended complaint and join parties.

## Argument

### 1. Watermark's president Nicholas Joutz should be re-joined as a defendant because of his wrongdoing in (a) letting Watermark broker Hutter's loan when Watermark was unlicensed in New York; and (b) letting Watermark receive payment for its unlicensed brokerage work.

Defendant Watermark Capital, Inc. opposes plaintiff Nance M. Hutter's effort to re-join Watermark's president Nicholas Joutz back into this case as a defendant.[1] But discovery revealed evidence that Joutz deserves re-joinder.

Nance M. Hutter's memorandum in support of her present motion to file a fourth amended complaint cites authority showing that a corporate officer is liable for corporate wrongdoing if she participated in it. And Hutter explained that that principle makes Watermark's president Joutz liable for Watermark's wrongdoing.[2]

In particular, while Joutz was Watermark's president in 2006, Watermark's corporate secretary Charles Dragna did brokerage work on Hutter's $1.785 million Countrywide loan that was improper because Dragna was unlicensed as a mortgage broker in New York State.[3] Dragna also had his corporation Watermark Capital work on Hutter's loan, in that Dragna used Watermark's employee Todd Matthews to do brokerage work for the loan, and that was illegal because Watermark was not licensed as a mortgage broker in New York.

---

[1] Watermark Mem. Oppos'g 4th Am. Compl. at 2–4.

[2] Hutter Mem. Supp'g 4th Am. Compl. at 3–7.

[3] *See* Ex. A (certificate showing that Dragna was unlicensed in 2006).

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

Finally, Watermark Capital received $13,398.75 of Evolution Mortgage's broker's fees that Dragna paid to Watermark by means of Dragna's endorsing the $13,398.75 check from Evolution Mortgage to Dragna over to Watermark;[4] and that was improper because it paid Watermark for its unlicensed brokerage work on Hutter's loan.

While Joutz was Watermark Capaital's president, he let Watermark's secretary Charles Dragna and Watermark itself perpetrate those acts of illegal, unlicensed mortgage brokerage. And Joutz let that happen in a small corporation in which he must have known about the illegal activity that Watermark Capital was engaging in. In that way, Joutz participated in Watermark Capital's wrongdoing, and so he is individually liable for the wrongdoing.

Joutz should therefore be re-joined as a defendant in this lawsuit.

## A. Joutz is not eligible to be joined as a required party, but he can be permissively joined.

Nance Hutter has moved to join Joutz as a required party or in the alternative, to permissively join him. She now admits that Joutz does not qualify for joinder as a required party; but he does qualify for permissive joinder, so he *can* be re-joined as a defendant in this lawsuit.

---

[4]   *See* Ex. B ($13,398.75 check).

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

### B. The Licensed Mortgage Bankers Law's statute of limitations does not prevent Dragna's joinder, because the doctrine of equitable tolling stayed the statute of limitations when Watermark wrongfully withheld a $13,398.75 check in discovery.

#### (1) For thirteen months during which Hutter's deadline for suing Dragna expired, the brokers suppressed the $13,398.75 check with which Evolution Mortgage and Dragna illegally paid Watermark.

Watermark Capital asserts a statute-of-limitations defense against Charles Dragna's joinder.[5] However, Watermark's own wrongdoing in withholding a check that it was required to produce in discovery tolled the statute of limitations under the doctrine of equitable tolling, so Hutter can still meet the statute-of-limitations deadline.

The claim under sec. 598(5) of the Licensed Mortgage Bankers Law[6] that Nance Hutter seeks to bring against Dragna[7] has a six-year statute of limitations, since six years is the default limitation period for a claim with no explicit statute of limitations,[8] and Hutter has found no statute of limitations for section 598(5) in any statute or decision. But Hutter is entitled to *toll* the Licensed Mortgaged Bankers Law's six-year limitation period under the doctrine of equitable3 tolling,[9] because for thirteen months, defendant Watermark Capital

---

[5]   Watermark Mem. Oppos'g 4th Am. Compl. at 4–5.

[6]   *See* N.Y. BANKING LAW § 598(5).

[7]   *See* Ex. C (proposed Fourth Am. Compl.) ¶¶ 88–139.

[8]   N.Y. C.P.L.R. § 213 ("The following actions must be commenced within six years: 1. an action for which no limitation is specifically prescribed by law;").

[9]   *See, e.g. Securities and Exchange Commission v. Gabelli*, 653 F.3d 49, 59–60 (2011) ("The fraudulent concealment doctrine is an equitable tolling doctrine . . . . Under the fraudulent concealment doctrine, even when a claim has already accrued, a plaintiff may benefit from equitable tolling in the event that *the defendant took specific steps to conceal her activities from the plaintiff*. . . . [T]he fraudulent concealment doctrine may be used to toll the limitations period for non-fraud claims where the plaintiff is able to establish that the defendant took affirmative steps beyond the allegedly wrongful activity to conceal her activity from the plaintiff.")

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

withheld in discovery the $13,398.75 check with which Evolution Mortgage paid Charles Dragna and with which Dragna in turn paid Watermark Capital, for Dragna's and Watermark's illegal brokerage work on Hutter's Countrywide loan.

Evolution Mortgage issued the $13,398.75 check, which is dated 27 December 2006 and payable to Charles Dragna.[10] Instead of Dragna's depositing the check in his personal bank account, he endorsed it over to his corporation Watermark Capital. That endorsement provides the financial link between Evolution Mortgage and Watermark Capital that Hutter had always suspected existed but that she had been unable to prove until she obtained the check.[11] That is, by means of Dragna's endorsement, Evolution Mortgage paid Watermark Capital $13,398.75.

The $13,398.75 check with Dragna's endorsement was also the first evidence that Hutter obtained that Dragna had done anything illegal. His endorsement showed that he had helped Evolution Mortgage illegally pay Watermark Capital for brokerage work on Hutter's loan that Watermark had had no right to do and no right to be paid for, because Watermark had been unlicensed as a mortgage broker in New York when it did the work and when it received the payment.[12] That is, Banking Law sec. 590(2)(b)[13] prohibits an unlicensed entity

---

(emphasis added).

[10]   *See* Ex. B ($13,398.75 check).

[11]   *See* Ex. D (Third Am. Compl.) ¶ 57r ("[O]n information and belief, Evolution Mortgage wrongfully shared [its broker's fees] with the unlicensed broker Watermark Capital.").

[12]   *See* Ex. E (certificate showing that Watermark was unlicensed).

[13]   N.Y. BANKING LAW § 590.2(b) ("No person, partnership, association, corporation or other entity shall engage in the business of soliciting, processing, placing or negotiating a mortgage loan or offering to solicit, process, place or negotiate a mortgage loan in this state without first being registered with the superintendent as a mortgage broker in accordance with the registration procedure provided in this article and by such regulations as may be promulgated by the banking

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

from brokering a mortgage loan in New York, and both Dragna and Watermark were unlicensed in New York in 2006 when they did the brokerage work for Hutter's loan.

So only when Hutter obtained the $13,398.75 check did she have grounds for suing Dragna, because the check and Dragna's endorsement on it meant that he had done unlicensed brokerage work himself, in violation of Banking Law sec. 590(2)(b); that he had been paid for that unlicensed work, also in violation of sec. 590(2)(b); and that he had then paid Watermark for its unlicensed brokerage work, which also violated sec. 590(2)(b). So the check gave Hutter evidence that she had the right to sue Dragna for brokering an unlicensed mortgage loan in violation of sec. 590(2)(b) of the Licensed Mortgage Bankers Law, and that she could claim quadruple damages from Dragna under Banking Law sec. 598(5).

The $13,398.75 check also documents a violation of New York Banking Regulation 38.7(a)(2), which prohibits a licensed entity like Evolution Mortgage from having business dealings with an unlicensed party like Charles Dragna or Watermark Capital. Given the violation of Banking Law sec. 590(2)(b) and the violation of Reg. 38.7(a)(2) that the $13,398.75 check revealed, both Evolution Mortgage and Watermark Capital had reason to suppress the check in discovery. And for thirteen months, that is what they did.

The brokers' flouting the law of discovery stems from the fact that on 8 July 2012, Hutter sent identically worded document requests to Watermark Capital, Inc. and Evolution Mortgage Inc. that required the brokers to produce the $13,398.75 check in twenty days. She demanded

> [c]opies of both sides of every check that Watermark Capital or its attorney
> has ever issued or received in connection with a mortgage loan that
> Countrywide Bank made to the plaintiff, including but not limited to: . . . b.

---

board or prescribed by the superintendent. The registration provisions of this subdivision shall not apply to any exempt organization or mortgage banker.").

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

---

checks payable to an officer . . . of Watermark Capital from either Countrywide Bank or Evolution Mortgage.[14]

If a broker no longer had a requested document in its possession, the discovery request instructed the broker to describe the document that it had formerly had.[15]

Hutter served her requests for production on Watermark and Evolution on 8 July 2012 and instructed them to respond in twenty days.[16] But the broker-defendants neither produced the $13,398.75 check nor described it by the 28-JUL-2012 deadline, in violation of the law of discovery. Only on 9 September 2013 did the broker-defendant Evolution Mortgage produce the $13,398.75 check,[17] which was *thirteen months* after the discovery-response deadline of 28-JUL-2012. Watermark Capital has *never* produced the check or described it.

Watermark's wrongfully withholding the $13,398.75 check is compounded by the fact that its corporate secretary Charles Dragna *knew* of the check, since he had received it from Evolution Mortgage and endorsed it over to Watermark. His withholding the check in discovery was willful. It also prevented Hutter from meeting the statute of limitations in her claim to join Dragna in this case under the Licensed Mortgage Bankers Law.[18]

That is because by 09-SEP-2013 when Evolution Mortgage's president Joseph Sciacca finally produced the $13,398.75 check, the six-year statute of limitations for Hutter to sue

---

[14] *See* Ex. F (Hutter's request to Watermark for production of documents) ¶ 13.

[15] *Id.* at 1 ("Nance M. Hutter requests that you produce . . . *or that you describe, if you no longer have the document*, those of the documents requested below that are now, or were formerly, in your possession.") (emphasis added).

[16] *See* Ex. F (Hutter's request to Evolution Mortgage and Watermark Capital for production of documents).

[17] *See* Ex. G (Evolution Mortgage's counsel's 09-SEP-2013 fax of the $13,398.75 check to Hutter's counsel).

[18] N.Y. BANKING LAW §§ 589–99 (McKinney 2008).

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

Dragna under the Licensed Mortgage Bankers Law had run. Dragna wrongfully endorsed the $13,398.75 check, which was dated 27-DEC-2006, over to Watermark on about 29 December 2006. That endorsement violated banking law sec. 590(2)(b)'s prohibition against unlicensed lending, and so six years after Dragna's wrongful endorsement of 29-DEC-2006, namely, on 28-DEC-2012, the six-year limitation period for Hutter to sue Dragna under the Licensed Mortgage Bankers Law expired.

Had Watermark produced or described the $13,398.75 check by the 28-JUL-2012 discovery deadline, Hutter would have had five months—that is, the period between 28-JUL-2012 and the statute-of-limitations expiration date of 28-DEC-2012—in which to bring a claim against Dragna under the Licensed Mortgage Bankers Law. But Evolution Mortgage produced the check on 09-SEP-2013, when the statute of limitations had already expired on 28-DEC-2012. That meant that the brokers' refusing to comply with Hutter's discovery demands for thirteen months made it impossible for Hutter to meet the 28-DEC-2012 deadline for suing Dragna.

The doctrine of equitable tolling[19] entitles Hutter to toll the statute of limitations on her Licensed Mortgage Bankers Law claim against Dragna, during the thirteen months that the brokers wrongfully withheld the $13,398.75 check.

Hutter received the $13,398.75 check on 09-SEP-2013, and discovery closed in this case on or shortly before 7 November 2013. On 07-NOV-2013, Hutter informed the Court that she wanted to move to join Dragna as a defendant in this case, and the Court announced a briefing schedule for Hutter's motion. So Hutter acted promptly after she received the $13,398.75 check to move to join Dragna, And equitable tolling stayed the statue of

---

[19]   *See supra* note 9.

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

limitations because of the brokers' intransigence in discovery.

Thus, the statute of limitations in Hutter's Licensed Mortgage Bankers Act claim against Dragna has not expired, and so it does not bar Hutter from joining Dragna as a defendant in this case.

Watermark Capital criticizes Hutter for not suing Charles Dragna initially when she filed this case, in contrast the way in which she sued Nicholas Joutz right away.[20] It is ironic that Watermark should make that complaint, because three years ago Watermark's motion to dismiss criticized Hutter for suing Joutz without having evidence of his individual wrongdoing. Now the broker says Hutter *should have* sued Dragna without having evidence of his individual wrongdoing.

In fact as stated above, a corporate officer is liable only if he participated in his corporation's wrongdoing, and when Hutter filed this case she had no evidence that Dragna had participated in Watermark Capital's unlicensed mortgage-brokerage work. Only when Evolution Mortgage finally produced its $13,398.75 check on 09-SEP-2013 did Hutter have evidence that Dragna had personally participated in Watermark's unlicensed mortgage-brokerage work on Hutter's loan, so that Hutter had grounds for suing Dragna.

Hutter therefore behaved correctly by waiting until she obtained evidence of Dragna's wrongdoing before she moved to make him a defendant in this case.

---

[20]   Watermark Mem. Oppos'g 4th Am. Compl. at 5 ("[J]ust as it is presume the plaintifflearned of the name Nicholas Joutz, she too could have learned of Mr. Dragna's identity, to wit; a corporate searchof Watermark through the records of the California secretary of state. If this had been done, Mr. Dragna's identity would have been learned years ago.").

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

### C. Watermark Capital violated the Licensed Mortgage Bankers Law by doing brokerage work on Hutter's Countrywide loan when Watermark was unlicensed as a mortgage broker in New York State.

Watermark Capital argues that Charles Dragna and Watermark Capital are not liable for brokering a mortgage loan in New York State when they were unlicensed as mortgage brokers in New York.[21] The broker does not say which part of Hutter's motion to amend its argument is intended to oppose, but Hutter will respond to the argument anyway in order to correct a basic error in it.

Watermark Capital asserts that "Mr. Dragna was not required to be licensed [as a mortgage broker] in the state of New York" on 11-DEC-2006 when Countrywide made its $1.785 million loan to Hutter.[22] Watermark contends that since New York Banking Law sec. 590(2)(b)-1 did not become effective until 2009, Dragna therefore did not have to be licensed as a mortgage broker back in 2006.

But Banking Law sec. 590(2)(b)-1 requires the licensing of a mortgage-loan *servicer,*[23] not the licensing of an independent contractor who works for a licensed mortgage broker as Dragna and Watermark Capital worked for Evolution Mortgage. So since Dragna and Watermark did not service Hutter's loan, in that they did not bill her for her monthly mortgage payments or collect those payments, sec. 590(2)(b)-1 does not apply to them. Dragna and Watermark were mortgage brokers not mortgage-loan servicers.

---

[21]  *See* Watermark Mem. Oppos'g 4th Am. Compl. at 6–7.

[22]  *Id.* at 6.

[23]  *See* N.Y. BANKING LAW § 590(2)(b)-1 ("No person, partnership, association, corporation or other entity shall engage in the business of *servicing* mortgage loans with respect to any property located in this state without first being registered with the superintendent as a mortgage loan servicer in accordance with the registration procedure provided by such regulations as may be prescribed by the superintendent.")

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

Moreover, Dragna and Watermark Capital both *did* have to be licensed in 2006 when they worked on Hutter's loan, but not for reasons having to do with sec. 590(2)(b)-1. Rather, Dragna and Watermark Capital had to be licensed because Banking Regulation 38.7(b)(2) required the licensed mortgage broker that they worked for, Evolution Mortgage, to file an undertaking of accountability with New York's banking department within ten days of the licensed mortgage broker's hiring them. But Evolution did not fulfill that requirement.

Watermark Capital's corporate secretary Charles Dragna sent Evolution Mortgage's president Joseph Sciacca a fax on 7 September 2006 arranging for Evolution to serve as a figurehead mortgage broker for Hutter's Countrywide loan, while Dragna and his corporation Watermark would do the brokerage work for the loan.[24] Dragna needed Evolution Mortgage because Evolution was licensed as a mortgage broker in New York State, and neither Dragna nor Dragna's corporation Watermark Capital were so licensed. Between 07-SEP-2006 when Dragna sent Sciacca the fax, and 11-DEC-2006 when Hutter's Countrywide loan closed, it was illegal undr Banking Law sec. 590(2)(b) for Dragna or Watermark Capital to work on brokering Hutter's loan, because they were unlicensed in New York.

Banking Reg. 38.7(b)(2) provided that to make Dragna and Watermark Capital properly licensed as brokers in New York, Evolution Mortgage, which had hired Dragna on 07-SEP-2006, had to file undertakings of accountability for Dragna and Watermark with New York's banking department within ten days of Evolution's hiring Dragna and Watermaark. But Evolution Mortgage did not file an undertaking with the banking department until 26 December 2006, by which time Hutter's Countrywide loan had already closed on 11-DEC-2006.

---

[24]   *See* Ex. H (fax of 07-SEP-2006 from Dragna to Sciacca).

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

In other words, Evolution filed Dragna's undertaking three months late. It should have filed an undertaking within ten days of its hiring Dragna on 07-SEP-2006, or by 17-SEP-2006, but it actually filed the undertaking on 26-DEC-2006, which was three months late. As for Watermark Capital, Evolution never filed an undertaking for it.

Evolution Mortgage's failure to timely file the undertakings meant that the whole time that Dragna and Watermark Capital worked on brokering Hutter's Countrywide loan between 07-SEP-2006 and 11-DEC-2006, they did the brokerage work illegally.

Dragna's and Watermark Capital's being unlicensed violated sec. 590(2)(b) of the banking law, which required a party who brokered a mortgage loan in New York to be licensed to do so. Because Dragna and Watermark violated sec. 590(2)(b), they are liable for up to quadruple damages under Banking Law sec 598(5).

Thus, banking law sec. 590(2)(b)-1, which pertains to mortgage-loan *servicers*, has nothing to do with Dragna or Watermark Capital, since Dragna and Watermark brokered but did not service Hutter's Countrywide loan. And Banking Reg. 38.7(b)(2) required Dragna and Watermark to be licensed in New York in 2006, in that undertakings of accountability had to be filed for them in order for them to legally do brokerage work for Hutter's Countrywide loan then.

**D. Hutter should be allowed to amend her complaint to assert that her husband was her agent for her Countrywide loan, because Watermark has known about the agency since June 2013 and so the amendment will not prejudice it.**

Watermark Capital opposes Nance Hutter's request to amend her complaint to assert that her husband acted as her agent when she applied for her $1.785 million Countrywide loan.[25]

---

[25] *See* Watermark Mem. Oppos'g 4th Am. Compl. at 7–9.

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

Yet the mortgage broker correctly describes the Hutters' relationship when it says: "[Hutter's deposition] responses, if truthful, revealed that she personally had no knowledge of the facts alleged but instead *it was her husband that negotiated the terms of all her loans, including the one before this court*."[26]

Hutter's proposed amendment that her husband was her agent thus does not just assert a legal theory, but accurately describes how the Hutter family functioned. In 2006 Mr. Hutter had scores of conversations with Watermark Capital's employee Todd Matthews concerning Hutter's Countrywide loan, while Mrs. Hutter spoke to Matthews only once or twice. Mr. Hutter arranged the loan for his wife.[27]

Watermark Capital criticizes Mrs. Hutter for supposedly notifying the defendants of her husband's agency only "[a]t this very late stage of litigation . . . ."[28] But in fact, Hutter told the defendants at her June 2013 deposition that her husband had been her agent.[29] And *Magistrate Judge Smith specifically allowed the defendants extra time to depose Mrs. Hutter so that they would be able to question her about her husband's agency, or so that they would have time to question Mrs. Hutter on other topics if they had used up a lot of time questioning her about her husband's agency*.[30] Watermark Capital therefore cannot truthfully claim that Hutter's amending her complaint to state that her husband was her agent will convey information that is new to Watermark, or that Watermark needs to do discovery into

---

[26]   *Id.* at 8 (emphasis added).

[27]   *See* Ex. I (excerpts from Mr. Hutter's deposition) 29:2–8, 54:7–21.

[28]   Watermark Mem. Oppos'g 4th Am. Compl. at 7.

[29]   *See* Ex. J (excerpts from transcript of Mrs. Hutter) 310:13–20.

[30]   *See* Ex. K (transcript of 28-JUN-2013 Status Conf. before Magistrate Judge Lisa Margaret Smith) at 3:13–25 to 4:1.

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

the matter.

Indeed, Watermark Capital had the opportunity to depose Mr. Hutter on the subject of his agency for his wife. Defendant Countrywide deposed Mr. Hutter on 15 October 2013 after Mrs. Hutter had informed the defendants that Mr. Hutter had been her agent, and Watermark could have attended the deposition and asked Mr. Hutter about the agency. But it chose not to. Watermark acknowledges not questioning Mr. Hutter when it had the chance to do so, but tries to excuse its failure by claiming that it relied on the pleadings, which do not say that Mr. Hutter was his wife's agent ("Watermark chose not to participate in the Gerhardt Hutter deposition . . . . Watermarks entire defense strategy was formulated upon confronting and challenging the literal allegations contained in each and every paragraph of the complaint(s) filed by the plaintiff . . . .").[31]

But Watermark's supposed reliance on the pleadings does not excuse its not deposing Mr. Hutter, because Mrs. Hutter told the defendants during her June 2013 deposition that Mr. Hutter had been her agent, and Magistrate Judge Smith granted the defendants more time to depose Mrs. Hutter for the express purpose of allowing them to inquire into Mr. Hutter's agency for his wife.[32] From then on, Watermark Capital had no right to rely on the pleadings and ignore Mrs. Hutter's statement that her husband had been her agent, so Watermark has only itself to blame for not participating in Mr. Hutter's deposition and asking him about his agency for his wife.

Watermark Capital's claim that Hutter will prejudice it by amending the complaint to

---

[31]   Evolution Mem. Oppos'g 4th Am. Compl. at 9 (emphasis added).

[32]   *See* Ex. K (Transcript of 28-JUN-2013 status conference before Magistrate Judge Lisa Margaret Smith) at 3:13–25 to 4:1.

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

assert that her husband was her agent is therefore spurious. It did *not* rely on the pleadings while discovery was conducted, because it has known about Mr. Hutter's agency for half a year.

### E. As with Mr. Hutter's agency, Evolution was told about Hutter's mental disability six months ago, so its claim that the complaint's being amended to describe the disability will prejudice it is groundless.

#### (1) *Mrs. Hutter's psychiatrist testified about Mrs. Hutter's disability in June 2013, Evolution had the opportunity to cross-examine him, and Evolution has received Mrs. Hutter's medical records concerning her condition; so it already knows about the disability.*

As with Hutter's proposed amendment that Mr. Hutter was her agent, Hutter's request that she be allowed to plead that she was disabled at the 11-DEC-2006 closing of her Countrywide loan—because of a traumatic brain injury that she had sustained in a recent automobile accident—was communicated to Watermark Capital at least six months ago in June 2013. Watermark had the opportunity to conduct discovery into the condition then.

Mrs. Hutter's treating psychiatrist Dr. F. Carl Mueller testified at a hearing before Magistrate Judge Smith on 5 June 2013 about Hutter's traumatic brain injury and the 21% disability that it caused her. Watermark Capital cross-examined Dr. Mueller then, and by then it had already obtained Hutter's medical records concerning the injury. Hutter's deposition was held *after* Dr. Mueller testified, so Watermark Capital had an opportunity to question Hutter about her injury and disability after learning about those conditions from an expert. And Watermark could have asked Mr. Hutter how his wife's disability affects her, had it attended Mr. Hutter's deposition that Countrywide conducted.

So Hutter's amending her complaint to assert that at the 11-DEC-2006 closing of her Countrywide loan she was too severely injured to comprehend the proceedings, will not assert new information, but will only let the complaint plead facts that Watermark Capital

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

has known about and been able to investigate for more than half a year.

## F. The doctrine of agency by estoppel permits Hutter to amend her complaint to allege that Watermark Capital was Countrywide's agent.

Nance Hutter seeks to amend her complaint to assert that the broker-defendants Watermark Capital, Inc. and Evolution Mortgage Inc. were Countrywide Bank's agents when they arranged Hutter's $1.785 million Countrywide loan. In the course of Hutter's applying for a loan, the brokers falsely promised her in writing that her loan would have a 1.5% fixed interest rate[33] (in fact she was given an 8.125% variable rate);[34] they misrepresented her monthly income as $38,500 in her loan application[35] when she actually had no income at all;[36] and they told her falsely that she could afford her $1.785 million loan by continuing to refinance her home, because real-estate prices were going to keep rising.[37]

Hutter contends that ultimately Countrywide uttered those falsehoods that the brokers told Hutter's husband, because the brokers were Countrywide's agents. They were Countrywide's agents under the doctrine of agency by estoppel.

That is, Evolution Mortgage and Watermark Capital were Countrywide's agents because *(1)* the brokers *acted* as though they had Countrywide's authority to offer Hutter a 1.5% fixed-rate Countrywide loan; *(2)* Hutter *relied* on the offer because it appeared to come from Countrywide; and *(c)* Countrywide was *negligent* in allowing its brokers to make the false

---

[33] *See* Ex. L (good-faith estimate).

[34] *See* Ex. M (promissory note for $1.785 million Countrywide loan).

[35] *See* Ex. N (loan application).

[36] *See* Ex. J (excerpt from Mrs. Hutter's deposition).

[37] *See* Ex. D (third amended complaint) ¶ 57j.

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

offer to Hutter.[38]

Cases illustrate how agency by estoppel has been applied. A cemetery that a contractor had sued in order to be paid for installing concrete beams through ranges of graves, could not make the Roman Catholic Diocese of Brooklyn (rather than the cemetery) liable for the work. The Diocese had made "all arrangements for the work at issue and payment therefore," but the Diocese had been the cemetery's *agent*, and so the cemetery was liable for the work. The court noted that the cemetery had seen the construction work's being done, and the Diocese's office that had ordered the work had been located on the cemetery's grounds.[39]

In another case, the driver of an automobile, which had been damaged in an accident, had signed an "Authorization to Repair" at a repair shop while the car's owner watched the driver sign; and then the owner had read the document. The owner could not repudiate the authorization because "the driver executed the authorization with the full authority of the [owner] based on the principal [sic] of agency by estoppel."[40]

A department store that advertised dental treatment was, likewise, liable for dental malpractice because the dentist had been the store's agent.[41] And a camp that offered

---

[38]  *See* 2A N.Y. Jur. 2d *Agency* § 25 ("As to third persons, an agency may arise by estoppel. An agency by estoppel is created, however, only by acts or *neglect* of the person sought to be charged as principal, and the person dealing with the *ostensible* agent must have known of and *relied* upon such acts or omissions; this reliance must be in good faith and in the exercise of reasonable prudence. The negligence as to the acts of another who has assumed to act for a person or to deal with the person's property is that of permitting the other to clothe itself or to be clothed with apparent authority to act.") (emphasis added) (footnotes omitted).

[39]  *Durante Bros Constr. Corp. v. St. John's Cemetery*, 285 A.D.2d 578, 579, 729 N.Y.S.2d 40, 41 (2d Dep't 2001).

[40]  *Campbell v. WABC Towing Corp.,* 78 Misc. 2d 671, 672, 356 N.Y.S.2d 455, 456 (Sup. Ct. Queens County 1974) (mem.).

[41]  *Hannon v. Siegel-Cooper Co.*, 5 Bedell 244, 246, 167 N.Y. 244, 246, 60 N.E. 597, 598 (1901).

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

horseback riding and had riding stables on its premises, was estopped from avoiding liability for the negligence of a riding instructor who had kicked and whipped a horse, which lead to a child's being injured. The camp offered riding as one of its major activities, claimed its horses were safe, and praised the riding instructor, with the result that "[s]uch conduct on the part of the [camp owner], coupled with reliance thereon by the infant plaintiff to her detriment, created an apparent or ostensible agency, and, if believed and accepted by the jury, sustains its finding that the [camp's owner] was liable for the negligence of the [riding instructor]."[42]

Countrywide and the brokers contend that the brokers cannot have been Countrywide's agents, because the contracts that Countrywide entered into with each of the brokers provide that the brokers are not the bank's agents. But it is notable that the foregoing cases determined whether an agency existed based on whether a party had *appeared* to be acting for the principal, and whether a customer had reasonably *relied* on that appearance. The principal and agent's contractual relations were ignored in the foregoing cases.

The cases cited above show that Evolution Mortgage and Watermark Capital were Countrywide's agents regarding Hutter's Countrywide loan, for two reasons. First, because Hutter reasonably relied on the brokers to be acting with Countrywide's authority, which they appeared to have when they provided her with a good-faith estimate offering a 1.5% fixed rate Countrywide Loan. Hutter also believed that as Countriywide agents, the brokers would not invent a fictitious monthly income of $38,500 for her.

---

(upholding the principle that "a person is estopped from denying his liability for the conduct of one whom he holds out as his agent against persons who contract with him on the faith of the apparent agency . . . .").

[42] *Getlar v. Rubinstein*, 171 Misc. 40, 40–41, 11 N.Y.S. 943, 944 (Sup. Ct. N.Y. County 1939).

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

Hutter's reliance was similar to that of the contractor that relied on the cemetery to pay its bill, and similar to the reliance of the auto-repair shop that depended on the automobile's owner to pay for his car's repairs.

Second, the foregoing cases show that the brokers were Countrywide's agents because each case forced the principal to take *responsibility* for its agent's conduct. The cemetery tried to make the Diocese pay for the construction work, but the court disallowed that shirking of responsibility. The department store attracted customers by offering dental work, but had to be forced to assume responsibility for the dental work when it was done poorly. And the camp reaped the benefit of offering horseback riding, but it tried to avoid responsibility when the riding injured someone.

Countrywide's brokers enabled Countrywide to lend to Hutter and profit from doing so, but now it seek to avoid responsibility for the brokers misconduct as the department store tried to disavow its dentist's malpractice. Based on the foregoing cases, Countrywide should not be evade responsiblity, and so Evolution Mortgage and Watermark Capital should be considered Hutter's agents by estoppel.

## Conclusion

For the foregoing reasons, plaintiff Nance M. Hutter respectfully requests that the Court:

- grant her Motion to File a Fourth Amended Complaint and Join Parties.

[Hutter's Reply Mem. to Watermark in Supp. of Fourth Am. Complaint]

28 January 2014
New York, New York

Respectfully presented,


_____/s/_____
Stephen A. Katz, attorney for the
   plaintiff, Nance M. Hutter
Stephen A. Katz, P.C.
111 John Street, Suite 800
New York, NY 10038-3180
(212) 349-6400
(646) 308-1170 (fax) (not for service of
   papers)
SAKatz00@AOL.com