UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 09 Civ. 10092 (NSR)

NANCE M. HUTTER,
                Plaintiff,

-against-

COUNTRYWIDE BANK, N.A., a subsidiary of
COUNTRYWIDE FINANCIAL CORPORATION,
WATERMARK CAPITAL, INC. EVOLUTION
MORTGAGE INC.,
                Defendant.

**DEFENDANT EVOLUTION MORTGAGE, INC. & JOSEPH SCIACCA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION SEEKING PERMISSION TO FILE A FOURTH AMENDED COMPLAINT**

## I. PRELIMINARY STATEMENT

The plaintiff, Nance M. Hutter, has filed a Motion seeking to amend her complaint a FOURTH time. The defendants' EVOLUTION MORTGAGE, INC. (herein after "EVOLUTION") and the former Defendant, JOSEPH SCIACCA, (herein after "SCIACCA") strenuously oppose each and every aspect of the Plaintiff's current application.

This Motion must be denied in its entirety as will be outlined below. Prior to describing the basis for which this motion should be denied in its entirety regarding my clients, the court should consider costs, attorney fees and sanctions against counsel for Plaintiff, for frivolous pleadings and the failure to exercise due diligence when filing the initial complaint and the three subsequent amendments, that he is now claiming contained false statements. Furthermore, we have been defending the matter based upon the pleadings and the clients have expended substantial fees for same. If any of the co-defendants cross-move for similar request, we respectfully join in that request.

## II. STATEMENT OF FACTS

On December 11, 2006, the Plaintiff, Nance M. Hutter, closed on a $1.785 million dollar adjustable rate mortgage loan made by co-defendant Countrywide Bank N.A. The loan was secured by the Hutter home, located at 175 Hickory Kingdom Drive, Bedford, NY. At the time of the closing of this loan, the appraised value of the Hutter home was in excess of two million dollars. The type of loan, i.e. adjustable versus fixed rate, etc., was decided upon by the Plaintiff and was exactly what she requested. The four prior Complaints (Original and Three Amended Complaints) specifically acknowledged that she was aware that the loan was an adjustable rate loan and claimed that she had been "told" it was the right loan for her. As will be discussed below, Plaintiff is now claiming that this allegation that has been previously pled, four times, is false.

This proposed FOURTH amended Complaint is nothing more than a last ditch effort by counsel for Mrs. Hutter to try to preserve her frivolous claims. Furthermore, it is being made on the eve of when all the Defendants intended to make motions for summary judgment since discovery had been deemed completed. Counsel asserts that if this motion is granted, there is no need for further discovery, and that there are no new legal theories and nothing is a surprise. That statement is completely erroneous. I am uncertain about counsel for the co-defendants, but my litigation strategy had been geared to the pleadings and not what Mrs. Hutter now proposes. Should the Court grant this motion, it is requested that discovery be reopened and the Defendants are entitled to further depositions of the Plaintiff and her Husband. Additionally, Plaintiffs should pay the costs associated with the prior depositions which were conducted based upon the pleadings, which Counsel admits had material false allegations.

## III   ARGUMENT

### A. HUTTER'S REQUEST TO REINSERT JOSEPH SCIACCA INDIVIDUALLY AS A DEFENDANT AND AMENDED ALLEGATIONS

## AGAINST EVOLUTION MORTGAGE HEREIN MUST BE DENIED

When this matter was first commenced, JOSEPH SCIACCA, President of EVOLUTION MORTGAGE, INC, was named as a defendant individually by the plaintiff. In the early stages of this litigation Motions to Dismiss were filed by the several defendants. By decision dated May 23, 2011, the Honorable Judge Catherine Seibel granted, without prejudice, defendants motion as it pertained to Joseph Sciacca individually. In so doing, Judge Seibel stated:

" the motion as to defendant Sciacca is GRANTED, but plaintiffs motion for leave to file a second amended complaint is GRANTED IN PART to the extent that plaintiff is granted leave to plead additional facts demonstrating that Sciacca was personally involved in the allegedly actionable conduct under New York General Business Law §349 and RESPA, if she can do so in compliance with Rule 11 of the Federal Rules of Civil Procedure".

Plaintiff has failed to demonstrate how Sciacca was personally involved in the allegedly actionable conduct under New York General Business Law §349 and RESPA. In fact, Plaintiff has testified that she never spoke or interacted with SCIACCA so she cannot establish that he was personally involved. Putting that aside, he cannot be liable regardless, since any actions he took were on behalf of his corporation that received payment for this loan and not him individually. A corporate officer and/or shareholder, almost always performs acts on behalf of the corporation, but that does not mean they should be deemed to be substututing themselves in their indivudal capacity, as opposed to an agent or representative for their corporation.

The attached affidavit of SCIACCA clearly outlines why the proposed amendments which relate to EVOLUTION or himself should be denied. There has been no basis shown by Plaintiff as to why SCIACCA should be named as an individual nor any basis for the other allegations. " A corporate officer is not subject to personal liability for actions taken in furtherance of the corporate business under the well settled rule that 'an agent for a disclosed principal will not be personally bound unless there is clear and explicit evidence of the agents intention to substitute or supersede his personal liability for, or to, that of his principal.' Savoy

Record Co. v. Cardinal Export Corp., 15 NY2d 1, 4; 254 N.Y.S.2d 521; 203 N.E.2d 206 (1964) See also Yellowbook of NY v. DePante, 309 A.ZD.2d 859. 766 N.Y.S.2d 44 (2003).

Clearly, plaintiff has failed to meet this minimum threshold. Additionally, there is no good faith basis for same pursuant to the Federal Rules of Civil Procedure, since EVOLUTION is already a party to the action. Rule 19 of the Federal Rules of Civil Procedure addresses the issue of joinder. In particular; Rule 19(a)(1)(A) states the following: RULE 19. REQUIRED JOINDER OF PARTIES

> (a) Persons Required to Be Joined if Feasible.
>> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
>>> (A) In that personas absence, the court cannot accord complete relief among existing parties... - FRCP 19 (a)(1)(A)

Presuming this court concluded SCIACCA's conduct, or better yet, lack of conduct, provided enough to reinstate him into this action, to do so would be completely unnecessary. As is made clear by FRCP 19, if the plaintiff were to prevail upon her claims, the corporate defendant EVOLUTION, as well as the other defendants', would provide the "complete relief" the rule speaks of.

### B. HUTTER'S REQUEST TO WITHDRAW THE ALLEGATION REGARDING THE ADJUSTABLE RATE MORTGAGE MUST BE DENIED AND IF GRANTED THEN THE PLAINTIFF SHOULD PAY COSTS AND SANCTIONS

Mrs. Hutter is now seeking to eliminate the charge that the Defendants told her that an adjustable-rate mortgage was right for her. The below allegation had been previously pled four times (The initial complaint and three previous amended complaints) and it is extremely suspect that on the eve of summary judgment motions, it is now claimed that the allegation previously pled, cited below, is now claimed to be an untrue statement.

> The bank and the two mortgage brokers told
> Hutter that she could afford the monthly
> payments on a $1,785,000 monthly adjustable-
> rate Pay Option loan, when in actuality the
> payments were beyond her means, particularly
> in light of the fact that after just two
> years, the payments would reset from
> $4,947.53 to $13,891.87

Certain due diligence is required to be performed in drafting and filing pleadings. One would presume Mr. Katz performed same and that the allegations in the FOUR prior complaints were accurate and not fabricated. Mrs. Hutter commenced a lawsuit and should not be able to change her theory at the close of discovery. The Defendants have conducted discovery based upon the pleadings. This allegation was critical in that it was an acknowledgment that she knew the type of loan she took out, depsite her testimony to the contrary. It is amazing that this allegation has been previously been pled FOUR times and now is claimed to be untrue. Before dragging the Defendants into one of several frivolous lawsuits regarding loans, which allowed Plainitff to cash out almost $1,000,000, the matter should have been properly researched and the Complaint properly drafted. Perhaps, instead of filling the initial complaints with boiler plate irrlevant blurbs from the congressional hearings and other irrelevant citations, Counsel should have assured that the allegations he pled were true and accurate (according to his client), or he at least had a good faith basis for making the allegations. Since the Defendants have been forced to defend allegations that the Plaintiff is now claiming to be untrue, Plainitff should pay the costs associated for same.

### C. HUTTER'S REQUEST TO ASSERT THE ALLEGATION THAT GERHARD HUTTER WAS HER AGENT BE DENIED

The above leads into another topic in that the Complaint was based upon numerous

allegations of how Mrs. Hutter was allegedly defrauded, misled, deceived, etc. However, as acknowledged by Mrs. Hutter, she never spoke to or had any communication with any of the named Defendants (or proposed Defendants), so thereofore, all of her allegations will have to be dismissed upon the filing of the summary judgment motion. During the course of her depositions, Plaintiff must have realized this and started to allege that her husband, Gerhard Hutter, (hereinafter "GERHARD") was her agent. This is a new allegation which counsel is attempting to seek in this motion for amendment. What is interesting, is that while it has been conceded that this alleged agency was never relayed to any of the Defendants, Plaintiff claims it should be of no surprise. The attached affidavit of Plaintiff does not state that he was her agent and neither does GERHARD's, nor do they mention in what way GERHARD as Plaintiff's agent was misled, defrauded, etc . There is no evidence in sworn admissible form attached to the subject motion to support this request. Counsel for Plaintiff has not attached the signature page from his client and her husband's transcripts nor any changes that were made. Unless he is willing to stipulate that there are no changes in the transcripts, any portion of them regarding this issue should not be considered. Putting that aside, there is still the issue of what type of loan she was told she was getting and that is one of the reasons why they are seeking to remove the allegation regarding the adjustable loan.

Furthermore, the cases cited by Counsel do not support their agency theory, nor are they within the last 100 years or even within the proper Department, which is Southern District for Federal Court and Second Department for state court. Counsel cites to *Cannon v. Bannon*, 151 A.D.693,694, a First Department case from 1912, that was based upon the Plaintiff suing for a broker commission and showed employment by Defendant's agent under allegation by employment of the Defendant. Counsel then cites to a 3rd Department case from 1901, *Johnson v. Ehrman Brewing Co.,* 66 A.D.103, 104 that counsel conveniently neglects to mention that the husband after negotiating the terms of the lease, on the authority of the Plainitiff (his wife) signed the lease in the Plaintiff's name. It was clear to all of the parties that he was acting as her agent. I

am perplexed as to what bearing those cases, or his interpretation of the Domestic Relations Law have to do with the the case at hand. Mrs. Hutter signed all of the documents and it seems the only reason the Plaintiff wants and needs GERHARD to be her agent, is for all of the allegations made relating to how Mrs. Hutter was deceived, misled, etc. can now be made by him in an attempt to defeat the summary judgment motions. In the matter at hand, whether Mr. Hutter handled all of the negotiations or not, Mrs. Hutter is the one who came to the closing. Mrs. Hutter is the one who voluntarily signed the loan documents. Mrs. Hutter was the one financially responsible for the loan. Mrs. Hutter was the one whom received the cash out proceeds from this loan. This is one of three lawsuits brought by Mrs. Hutter claiming to the effect, "Woe is me. I was taken advantage of by the big bad banks". While the other two cases are separate and distinct, they are relevant to the total picture. In a little over a period of two years, she pulled out almost $1,000,000 of equity in her home, and is coming to court claiming that she had no income and never should have been given the loan. The Court should deny permission to allow the allegation that Mr. Hutter was her agent. As her alleged agent, he had a duty to relay to her what he had been told which would be ripe for hearsay. Even if he were her agent for purposes of negotiations, he did not sign any documents at the closing, nor did he testify that he reviewed them or had been promised anything at the closing or beforehand. If the court grants this amendment, Mr. Hutter's credibility would clearly be an issue and we would need further depositions from him regarding same. He had been involved in several prior litigation matters, including a prior foreclosure case in Connecticut, a prior Federal bankruptcy case that involved an attempt to stave off the loss of their mansion in Connecticut, a lawsuit with his former attorney for unpaid legal fees and a few other matters. These were not explored, nor did I take his testimony previously because he was not a party and not an agent in the pleadings which were based on how Mrs. Hutter (and not him as her agent) was defrauded, misled, etc. This material change in the theroy of the case and pleadings should not be permitted at this late juncture and once again, counsel for the Plaintiff should have thoroughly reseached and vetted the allegations

in the four previous Complaints. In essence each and every allegtion since they related directly to Mrs. Hutter herself were false and untrue and costs and sanctions should be imposed.

### D. HUTTER'S REQUEST TO ASSERT THE ALLEGATION THAT SHE WAS INCAPACITATED AT THE CLOSING SHOULD BE DENIED

First and foremost, all of this should have been ascertained and known at the time the initial complaint was drafted, or the three prior amended complaints. If she was too incapaciated to understand what was going on, she never should have VOLUNTARILY attended the closing. While counsel for Plaintiff may argue that this is no surprise and that Mrs. Hutter testified to all of this, it is improper in that the discovery was performed based upon the pleadings. Mrs. Hutter has admitted that she never spoke to anyone regarding the loan terms and alleges it was all performed by her husband. She is now seeking and claiming Mr. Hutter was her agent, and therefore, it would have been his responsibility to review the documents that were signed and prior to signing, or at a minimum within the 3 day recission period. Mrs. Hutter wants to add that she was unable to understand what took place at her closing because of her purported brain injury. It should be noted that she VOLUNTARILY attended this closing and was brought to it by her husband, GERHARD. Counsel claims that GERHARD tried to reschedule it, but was told that if she didn't attend they would cancel the loan. There is no dispute that this was a refinance and she was not at risk of losing anything, had she not attended the closing. It wasn't a purchase where she would be at risk of losing a down payment if she didn't close. Plaintiff voluntarily attended the closing and signed all of the loan documents, as well as was given the right to cancel the loan within 3 days. The date she received the right to cancel is disputed by Plaintiff, but it is clear that she received them and never sought to rescind the loan until over 2 years later. Probably, because they realized the gravy train on loans being made to people without having to prove their income had come to an end with the real estate bubble bursting. What is fascinating, is her alleged agent, GERHARD, brought her to the closing and didn't review the documents

before she signed them, despite being aware of her claimed "incapacitated" position. This would lend one to question, whose interests was he really looking out for, his wife's or his own, to obtain the funds. Also, if she had this alleged condition that prevented her from understanding anything, why was she at the closing at all? Had she not come to the closing and the loan was truly cancelled, she would have been in the same position she claims she would have been if it were not for this loan, which she claims she would have turned down had she been "aware" that it was not a 1.5% 30 year fixed loan.

### E. HUTTER'S REQUEST TO AMEND THE ALLEGATIONS REGARDING DAMAGES SHOULD BE DENIED

The proposed amendments to the damages sought regarding the loss of sale proceeds and Mr. Hutter's Rescushelter are so speculative that they should be denied outright. Additionally, counsel for Plaintiff has refused to provide any of the names of the so-called possible investors or buyers of this product or any information to verify this product had any chance of success. Also, there has been nothing provided regarding a marketing plan for the product, product testing, etc. The self-serving statements for this proposed amendment, as well as the one for the "loss of opportunity" to sell the house are so speculative it is actually laughable, especially in light of the rapid downturn in the real estate market. No one prevented them from selling and paying off their loan, especially since the first several years after the refinancing it was a 1.5 % rate. The Plaintiff conveniently neglects to inform the court that the subject loan paid off previous loans and the subsequent one from National City (now know as PNC), allowed the Hutters to take out approximately $1,000,000 in equity from the time they purchased the property until then, while knowingly having no income or ability to pay off the loans.

### CONCLUSION

It appears that the lawsuit was commenced with the hope of a quick settlement and now that it hasn't happened, counsel is fishing for anything to hang his hat on. From using a fishing pole, he is now trying to cast out a commercial fisherman's net and it is truly unjust to my clients that have expended a significant amount in attorney fees defending this and the other frivolous

actions. Counsel is well aware that the ultimate decision of the approval of a loan, as well as the funding of a loan can only be made by the mortgage bank and the only role the mortgage broker has, is to submit it to the bank for approval. These complete game changer allegations should be denied and Plaintiff and Plaintiff's counsel should be assesed costs and sanctions for knowingly setting forth false statements in Pleadings and having Defendants expend time and money on Defending false allegations.

Dated: New York, N.Y.
January 6, 2014

s/ 
Michael Janus (MJ 4446)
Janus Law, PC
825 East Gate Blvd. – Suite 308
Garden City, New York 11530
(516) 683-1200
(516) 320-8949 (fax)
e-mail: mike@januslaw.com

## Certificate of Service

I hereby certify that a true and accurate copy of Defendant's Memorandum of Law and Affidavit in Opposition to all parties was served via electronic mail and Overnight Delivery . Mail, on January 7, 2014, upon:

STEPHEN A. KATZ, P.C.
Stephen A. Katz, Esq.
Attorneys for Plaintiff
111 John Street, Suite 800
New York, New York 10038-3180
{212) 349-6400

Kenneth Rudd, Esq.
BJ Finneran, Esq.
Zeichner Ellman & Krause LLP
Attorneys for Countrywide Bank, N.A.
1211 Avenue of the Americas
New York, NY 10036,
(212) 223-0400

Law Office of John T. Serio
John T. Serio, Esq.
Attorneys for Defendant Watermark Capital, Inc.
114 Old Country Road, Suite 420
Mineola, New York 11501
(516) 248-5317

Michael Janus (MJ 4446)