David B. Chenkin
Kenneth C. Rudd
BJ Finneran
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400

*Attorneys for Defendant*
*Bank of America, N.A., successor by merger to*
*Countrywide Bank, N.A.*

UNITED STATES DISTRICT COURT
SOUHTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>                  Plaintiff,<br><br>          v.<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of<br>COUNTRYWIDE FINANCIAL<br>CORPORATION, WATERMARK CAPITAL,<br>INC., EVOLUTION MORTGAGE, INC.,<br><br>                  Defendants. | Index No.: 09-CV-10092 (NSR) (LMS) |

## BANA'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION
## <u>FOR SANCTIONS UNDER FED. R. CIV. P. 11</u>

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................ii

PRELIMINARY STATEMENT ..........................................................................1

STATEMENT OF FACTS ...................................................................................2

ARGUMENT ......................................................................................................5

POINT I     PLAINTIFF AND COUNSEL'S FALSE ALLEGATIONS
VIOLATED RULE 11(B)(3).................................................................5

    A.   Plaintiff Falsely Pleaded That Countrywide Made Statements to Her ........5

    B.   Plaintiff's Shifting Allegations About the Nature of the Loan She
Was Promised ............................................................................................7

    C.   The False Allegation That Countrywide "Brought" Evolution into
the Loan ................................................................................................... 10

    D.   Counsel's Deliberate Distortion of the Good Faith Estimate ................... 10

    E.   Counsel's Shifting Allegations Regarding Her Mental Capacity ............. 11

POINT II   COUNSEL'S FRIVOLOUS LEGAL ARGUMENTS VIOLATED
RULE 11(B)(2)................................................................................... 11

    A.   Pleading a Claim Based on Facts Known to be False Was Legally
Frivolous ................................................................................................. 12

    B.   Plaintiff's Unexplained Inconsistent Factual Agency Assertions Are
Sanctionable............................................................................................ 12

    C.   Requiring a Borrower to Show Up to a Closing Is Not Grounds for a
GBL Claim............................................................................................... 14

    D.   Plaintiff's Newly Concocted "Fraud in the Execution" Theory Is
Meritless.................................................................................................. 15

POINT III  RULE 11 SANCTIONS ARE APPROPRIATE........................................ 16

POINT IV  DISMISSAL AND AWARDING BANA ITS ATTORNEYS' FEES
IS APPROPRIATE ............................................................................. 18

CONCLUSION................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Calloway v. Marvel Entertainment Group,
    854 F.2d 1452 (2nd Cir. 1988).................................................................................19

Colliton v. Cravath,
    2008 U.S. Dist. LEXIS 74388 (S.D.N.Y. 2008).................................................7, 16

De La Rosa v. Rocco,
    2011 U.S. Dist. LEXIS 76079 (S.D.N.Y. 2011)......................................................12

Eastway Constr. Corp. v. City of New York,
    762 F.2d 243 (2nd Cir. 1985)....................................................................................5

Empire State Pharmaceutical Soc., Inc. v. Empire Blue Cross & Blue Shield,
    778 F. Supp. 1253 (S.D.N.Y. 1991)..................................................................18, 19

Kochisarli v. Tenoso,
    2006 U.S. Dist. LEXIS 95862 (E.D.N.Y. 2006).....................................................16

Levine v. FDIC,
    2 F.3d 476 (2nd Cir. 1993).........................................................................................5

Michelson v. Merrill Lynch,
    1989 U.S. Dist. LEXIS 3013 (S.D.N.Y. 1989)........................................................19

Morley v. Ciba-Geigy Corp.,
    66 F.3d 21 (2nd Cir. 1995)................................................................................11, 19

Perry v. Fischer,
    2010 U.S. Dist. LEXIS 32013 (N.D.N.Y. 2010).....................................................18

Simpson v. Putnam County Nat. Bank of Carmel,
    112 F.Supp.2d 284 (S.D.N.Y. 2000)........................................................................16

Star Mark Mgmt. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,
    682 F.3d 170 (2nd Cir. 2012)............................................................................11, 12

Wechsler v. Hunt Health Sys, Ltd.,
    216 F.Supp.2d 347 (S.D.N.Y. 2002)........................................................................12

**OTHER CASES**

Hallock v. State,
    64 N.Y.2d 224, 474 N.E.2d 1178 (N.Y. Ct. App. 1984) .........................................13

Lum v. New Century Mortgage Corp.,
    19 A.D.3d 558, 800 N.Y.S.2d 408 (N.Y. App. Div. 2nd Dept. 2005) . No ............................14

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,
    85 N.Y.2d 20, 647 N.E.2d 741 (N.Y. Ct. App. 1995) ............................................................14

Pyramid Champlain Co. V. R.P. Brosseau & Co.,
    267 A.D.2d 539, 699 N.Y.S.2d 516 (N.Y. App. Div. 3rd Dept. 1999) ............................12, 13

**FEDERAL STATUTES**

28 U.S.C. § 1927 ....................................................................................................................2, 15

**OTHER STATUTES**

New York's General Business Law § 349 ......................................................................... passim

**RULES**

Fed. R. Civ. P. 11(c)(1) .................................................................................................................5

Fed. R. Civ. P. 11 (b)(2) ........................................................................................................11, 12

Fed. R. Civ. P. 11(b)(2)-(3) ............................................................................................... passim

Fed. R. Civ. P. 11(b)(3) ...................................................................................................... passim

Fed. R. Civ. P. 11(c) ..................................................................................................................19

Fed. R. Civ. P. 11 (c)(2) ..............................................................................................................18

Fed. R. Civ. P. 11 (c)(5) ..............................................................................................................18

This Memorandum of Law is respectfully submitted by Bank of America, N.A., successor by merger to defendant Countrywide Bank, N.A. ("BANA" or "Countrywide")[1] in support of its motion for the imposition of sanctions under Fed. R. Civ. P. 11(b)(2)-(3) ("Rule 11") against plaintiff Nance M. Hutter ("Plaintiff") and her counsel based on their filing five separate complaints and other papers that contain factual allegations and legal positions that are factually and legally unsupportable.

## PRELIMINARY STATEMENT

Over the more than four year course of what should have been a straightforward litigation over the origination of a large residential mortgage loan, Plaintiff has filed (or attempted to file) five separate complaints, in which Plaintiff and her counsel made knowingly false factual allegations and advanced frivolous legal arguments.   This misconduct, which pervades all five complaints as well as other papers filed with the Court, includes:

- Plaintiff's admittedly false allegations that Countrywide made deceptive communications directly to Plaintiff about her mortgage loan;
- Plaintiff's allegation in her proposed FAC that Countrywide promised her a 1.5% fixed loan, despite pleading for years that the defendants told her that "an adjustable rate loan was right for her" to induce her to take such a loan;[2]
- Plaintiff's admittedly false allegation that Countrywide "brought" the co-defendant Evolution Mortgage, Inc. ("Evolution") into her mortgage loan transaction;
- The FAC's new assertion that the Broker Defendants[3] were Countrywide's agents when Plaintiff admitted that they were *her* agents in her First Amended Complaint ("AC");

---

[1]   Although the named defendant is now legally BANA, as context requires, this memorandum uses both "BANA" and "Countrywide."

[2]   Indeed, counsel tries to hide this 180 degree change in position by deliberately violating this Court's order to show his changes in the proposed Fourth Amended Complaint ("FAC").

[3]   "Broker Defendants" refers collectively to Evolution and Watermark Capital, Inc.

- Plaintiff counsel's claim in the 1927 Opposition[4] that the Good Faith Estimate ("GFE") promises Plaintiff a 1.5% fixed rate loan from Countrywide when it clearly does not;

- The baffling new claim in the FAC that Countrywide violated New York's General Business Law § 349 ("GBL 349") by requiring her to appear at the closing of her mortgage loan or else risk that the terms of that loan would change;

- The Reply's[5] contradictory claim that Plaintiff is not seeking to void her mortgage loan due to her lacking capacity to contract when Plaintiff first made that claim in the FAC;

- Plaintiff's attempt to amend her proposed FAC in her 1927 Opposition, by asserting that she states a legitimate claim for "fraud in the execution" when such a claim is absent from the actual pleading;

Rule 11 provides for monetary and other sanctions for filing a paper or in this case numerous papers, containing factual contentions that lack evidentiary support or frivolous legal arguments. As both are present here, this Court should award BANA sanctions in the form of dismissal and/or BANA's reasonable legal costs and expenses against Plaintiff and her counsel.

## STATEMENT OF FACTS

The allegations in Plaintiff's Complaints arise out of a $1,785,000 residential mortgage refinance loan (the "Loan") made by Countrywide to Plaintiff in December 2006 to refinance prior adjustable rate mortgages on the property. As collateral security for the Loan, Plaintiff granted to Countrywide a mortgage on her Bedford, New York home. Plaintiff alleges that the Broker Defendants were the mortgage brokers for the Loan.

In Plaintiff's original Complaint ("OC")[6] filed on or about October 22, 2009 through her Third Amended Complaint ("TAC") filed on or about November 15, 2011 (collectively, the "Prior Complaints"), she alleged that Countrywide made deceptive communications about her Loan actionable under GBL 349. See DE 1 (OC) ¶ 143 (b), (c), (j), (k), (n); Finneran Decl., Exs. A, D-E (AC-TAC), ¶ 57 (b), (c), (j), (k), (n). Subsequently,

---

[4]  "1927 Opposition" refers to Plaintiff's counsel's memorandum of law in opposition to BANA's cross-motion under 28 U.S.C. § 1927 (DE 126).

[5]  "Reply" Plaintiff's counsel's reply memorandum of law in further support of Plaintiff's motion to file the FAC.

Plaintiff contradicted these allegations when she and her husband admitted during their depositions that they had no communication with Countrywide or its employees prior to the Loan's closing. Id., Ex. Q (N. Hutter Dep.) at p. 24:21-24; see also id., Ex. R (G. Hutter Dep.) at p. 25:11-15.

Plaintiff's false allegations also extend to her proposed FAC.  Plaintiff alleges in all four Prior Complaints that "defendants told Hutter that an adjustable rate loan was right for her" to induce her to take an adjustable rate mortgage loan.  See DE 1 (OC), ¶ 143 (c); Finneran Decl., Exs. A, D-E (AC-TAC), ¶ 57 (c).  She now claims that allegation, advocated for years and the truth or falsity of which was known to her, is "untrue."  See id., Ex. H (Memorandum of Law in Support of Plaintiff's Motion to File a FAC at p. 7).  Further, she previously asserted she was promised a 1.5% loan and told that a variable rate would be right for her (see DE 1 (OC), ¶¶ 143 (c), (e); Finneran Decl., Exs. A, D-E (AC-TAC), ¶¶ 57 (c), (e)); she now asserts that she was promised a "1.5% fixed-rate loan…both verbally and in pre-closing documents" (see id., Ex. I (FAC), ¶ 11), even though the one document that Plaintiff admits she saw prior to the closing (see id., Ex. Q, pp. 20:10-22, 23:3-7 (N. Hutter Dep.); Ex. R pp. 27:22-28, 57:1-6, 124:10-16 (G. Hutter Dep.)), the GFE, clearly states the loan was to be an "Arm," or an adjustable rate mortgage. See id., Ex. S (GFE).

Moreover, Plaintiff alleges for the first time in the FAC that the Broker Defendants are Countrywide's agents.  This new allegation not only conflicts with Plaintiff's AC where she alleges that the Broker Defendants were *her* agents (see id., Ex. A (AC), ¶¶ 73, 80, 81-84), but also contradicts her husband's recent written admission to the New York State Attorney General.  See id., Ex. L, p. 5 (G. Hutter letter to NY AG).  Further, Plaintiff's assertion

---

[6]   Due to its length, the OC is not attached to the accompanying Declaration of BJ Finneran ("Finneran Decl.").

that Countrywide "brought" Evolution to work on Plaintiff's Loan is not supported by any facts adduced during discovery. See Finneran Decl., Ex. I, (FAC) ¶ 57 (v).  Indeed, Plaintiff's husband asserted in an affidavit that Watermark "brought" in Evolution on its own accord. Id., Ex. T (G. Hutter 6/3/10 Opp. Aff.), ¶ 7.  The affidavit states Todd Matthews told him "his company was not a licensed broker in New York State, so he would get a local mortgage broker to handle our loan." Id.  Mr. Hutter's admission is corroborated by the Broker Defendants' undisputed testimony that they met at a conference in Florida in February or March 2006. See id., Ex. M (Dragna Dep.) at pp. 47-48 and Ex. N (Sciacca Dep.) at pp. 13, 118.

Plaintiff quixotically claims for the first time in the FAC that Countrywide violated GBL 349 by requiring her to appear at the closing of her mortgage loan or else risk that the terms of that loan would change.  See id., Ex. I (FAC), ¶57 (w).

Further, counsel's allegations in the brief in support of the Motion (the "Memo") conflict with the allegations in the Motion's Reply.  The proposed FAC and the Memo clearly assert that Plaintiff's "medical condition and incapacity rendered her incapable of contracting." See id., Exs. I (FAC) ¶ 10 (c) and H (Memo) at p. 12, ¶ 5.  Only a month later, Plaintiff's counsel completely switches his position: "Unfair and deceptive practices – not lacking of capacity to contract – is the charge that Hutter seeks to add to the complaint."  See id., Ex. J (Reply), pp. 1-2.

Plaintiff and her counsel continue their sanctionable conduct in their latest filing with the Court.  In the 1927 Opposition, Plaintiff's counsel asserts that the GFE promises Plaintiff a 1.5% *fixed* rate loan from Countrywide when it clearly does not.  See id., Ex. S (GFE). Counsel also asserts a claim for "fraud in the execution," which is not in the FAC.

4

# ARGUMENT

## POINT I

### PLAINTIFF AND COUNSEL'S FALSE ALLEGATIONS VIOLATED RULE 11(B)(3)

In presenting a pleading motion or other paper, the attorney is representing that, after reasonable inquiry, he or she believes that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Moreover, attorneys have "an affirmative duty…to conduct a reasonable inquiry into the viability of a pleading before it is signed." Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 253 (2nd Cir. 1985), cert. denied, 484 U.S. 918, 98 L. Ed. 2d 226, 108 S. Ct. 269 (1987). An attorney's claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim is not a defense to a Rule 11 violation. Id. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

Here, Plaintiff and her counsel have violated Rule 11(b)(3) by filing (or seeking to file) five complaints containing indisputably false factual assertions known by Plaintiff to be false and, averments that contradict each other as well. Counsel committed a further Rule 11 violation by filing memoranda of law in support of the Motion asserting differing and inconsistent theories about his client's mental incapacity and misstating the content of the GFE.

### A.     Plaintiff Falsely Pleaded That Countrywide Made Statements to Her

Rule 11 sanctions are appropriate where a pleading contradicts deposition testimony. See Levine v. FDIC, 2 F.3d 476, 479 (2nd Cir. 1993) (upholding award of Rule 11 sanctions where complaint's allegations contradicted deposition testimony).

Here, the heart of Plaintiff's GBL claim against Countrywide was that Countrywide made deceptive statements directly to her.  See DE 1 (OC) ¶ 143 (b), (c), (j), (k), (n), Finneran Decl., Exs. A, D-E (AC-TAC), ¶ 57 (b), (c), (j), (k), (n).  For instance, she alleged "the bank told Hutter she could afford" the loan; "Countrywide… assured Hutter that refinancing would help her;" the Broker Defendants and Countrywide "told Hutter an adjustable rate loan was right for her;" and "Countrywide promised Hutter" a particular interest rate.  See id.

Both Plaintiff and her husband, who alleges he negotiated the Loan (aside from one phone call Plaintiff had with a broker) admit Countrywide never communicated with them at all, and thus could not have made any of the claimed deceptive statements.  Plaintiff admits that she did not "personally have any contact, conversation, or communication with anyone from Countrywide".  See Finneran Decl., Ex. Q (N. Hutter Dep.) at p. 24:21-24.  Likewise, her husband admits that "[p]rior to the closing of the loan on December 11th, 2006, [he did not] personally have any contact, conversation, or communication with anyone from Countrywide".  See id., Ex. R (G. Hutter Dep.) at p. 25:11-15.

Prior to commencing this litigation, Plaintiff knew — and her counsel knew or should have known in accordance with his duty to investigate — that Plaintiff did not communicate with Countrywide.  Nevertheless, the allegations about communications from Countrywide remained in four separate complaints wasting BANA's and this Court's time and resources.

After Plaintiff's and her husband's depositions, after counsel heard actual testimony contradicting four Prior Complaints, and discovery presumably closed, Plaintiff sought leave to file the FAC.  The FAC contains some of the same admittedly false allegations, concerning direct communications from Countrywide: "Countrywide and its agents Watermark

Capital and Evolution Mortgage assured [Plaintiff] Hutter that refinancing would help her…" (FAC, ¶ 57 (b)); to "induce Hutter to take out her Countrywide loan, the lender Countrywide and its agents the brokers Watermark Capital and Evolution Mortgage, falsely assured her that housing prices would keep rising…" (FAC, ¶ 57 (j)); Countrywide, Watermark Capital, and Evolution Mortgage assured Hutter that she did not need a lawyer at her loan's closing ceremony… (FAC, ¶ 57 (k)); "Countrywide, Watermark Capital, and Evolution Mortgage told Hutter that Countrywide's refinancing would help her… (FAC, ¶ 57 (n)).

These allegations are false for two reasons.   First, Plaintiff admits that Countrywide never said or assured anything about the loan.   Second, Plaintiff admits that no such statements or assurances were made by anyone to her; all communications were through her husband.   Further, when Judge Siebel declined to dismiss the GBL 349 claim in the AC, she did so explicitly on the grounds that there might be truth to Plaintiff's allegation of oral statements by Countrywide:

> The written representations and the documents may make it harder
> for plaintiff to prove that the oral representations were, in fact,
> made, but that is an issue for summary judgment [or] trial not a
> motion to dismiss.

Finneran Decl., Ex. B (Seibel Trans.), p. 27.   Had Plaintiff pleaded the truth, it seems inevitable that the Court would have dismissed the GBL 349 claim along with the others it dismissed. Accordingly, these allegations violate Rule 11(b)(3).

**B.**     **Plaintiff's Shifting Allegations About the Nature of the Loan She Was Promised**

Contradictory factual allegations in separate complaints are grounds for Rule 11 sanctions.  See  Colliton v. Cravath, 2008 U.S. Dist. LEXIS 74388, *39 (S.D.N.Y. 2008).

Here, Plaintiff alleged in all four Prior Complaints that "defendants told Hutter that an adjustable rate loan was right for her" to induce her to take the adjustable rate mortgage

loan at issue here (see DE 1 (Original Complaint), ¶ 143 (c); Finneran. Decl., Exs. A, D-E (AC through FAC), ¶ 57 (c)).  Further, the Prior Complaints alleged that she was promised a 1.5% loan.  See DE 1 (Original Complaint), ¶ 143 (e); Finneran. Decl., Exs. A, D-E (AC through FAC), ¶ 57 (e).  Conspicuously absent is any allegation concerning the term of such rate.  Now, in the FAC, Plaintiff completely changes the factual basis for the GBL claim, asserting that for the very first time that she was promised a "1.5% *fixed*-rate loan…both verbally and in pre-closing documents" instead of an adjustable rate loan.  See Finneran. Decl. Ex. I (FAC), ¶ 11 (emphasis added).  This new allegation contradicts all the prior pleadings and, as concerns the documentary evidence, is demonstrably false.

Simple logic compels the conclusion that one of these conflicting allegations is false.  Further, not only does Plaintiff's eleventh-hour allegation that she was promised a fixed-rate loan "in pre-closing documents" contradict the Prior Complaints, it also contradicts the pre-closing document to which the allegations refer.  Both Plaintiff and her husband admit to having seen only one such pre-closing document, a Good Faith Estimate.  See id., Ex. Q, pp. 20:10-22, 23:3-7 (N. Hutter Dep.); Ex. R, pp. 71: 9-12, 124:10-19 (G. Hutter Dep.).  That document clearly states that Loan was an "Arm" or adjustable rate mortgage.  See Finneran Decl., Ex. S (GFE).  As such the new allegation changes the basis under which Countrywide has defended this lawsuit.  Plaintiff should not be permitted to flip flop on factual allegations that have always been known to her and the attempt to do so violates Rule 11(b)(3).

Further, Plaintiff violated an order of this Court in preparing her proposed FAC, and in so doing misled BANA and ran the risk of misleading the Court.  The Court ordered that the FAC should be marked so as to show any changes between it and the TAC.  Id., ¶ 7.  Here, marked changes on the proposed FAC, on which BANA'S counsel relied in highlighting changes

to this Court, fail to disclose significant changes.  A telling example is the difference between paragraphs 57 (a) in the TAC and the proposed FAC.  While the TAC made clear that Plaintiff always knew she was seeking and getting an "adjustable-rate Pay Option" mortgage, counsel failed to accurately mark the FAC to show that he had removed those allegations from the TAC. The TAC states:

> a.   the bank and the two mortgage brokers told Hutter that she could afford the monthly payments on a $1,785,000 monthly adjustable rate Pay Option loan, when in actuality the payments were beyond her means, particularly in light of the fact that after just two years, the payments would reset from $4,947.53 to $13,891.87;

Id., Ex. E (TAC), ¶ 57 (a).  The FAC states as below, but conspicuously does not reveal (by strikethrough) that information about an adjustable rate mortgage was deleted:

> a.   ~~the bank~~ **Countrywide Bank, speaking through** the mortgage brokers **Evolution Mortgage and Watermark Capital who were its agents**, convinced Hutter that she could afford the monthly payments on a $1,785,000 loan, when in actuality the payments were beyond her means, particularly in light of the fact that after just two years, the payments would ~~reset~~ **increase** from $4,947.53 to $13,891.87;

Id., Ex. I (FAC), ¶ 57 (a).

As such, counsel misled BANA and the Court in filing the proposed FAC as it fails to acknowledge that he deleted allegations that Plaintiff was told she could afford the payments on the "monthly adjustable-rate Pay Option loan"[7].  The ease of using comparison

---

[7] This only one of the multiple substantive changes between the TAC and FAC that Plaintiff's counsel failed to mark.  See Finneran Decl., ¶ 10.

software, along with the fact that the FAC shows computer markings of additions and deletions suggests that counsel's omissions were deliberate. Indeed, it is beyond mere happenstance or coincidence that the deleted language pertains directly to one of the central issues in this case and Plaintiff's attempt to "withdraw" detrimental factual allegations.

**C.    The False Allegation That Countrywide "Brought" Evolution into the Loan**

In support of her claim, proposed for the first time in the FAC, that Countrywide violated Reg. 38.7 by conducting business with an unlicensed broker, Plaintiff alleges that Countrywide "brought" co-defendant Evolution to work on Plaintiff's Loan. See Finneran Decl., Ex. I, (FAC) ¶ 57 (v).

However, this allegation is knowingly false. As demonstrated above, it contradicts Mr. Hutter's prior sworn statement, in which he asserts that Todd Matthews "brought" in Evolution to the Loan.

Further, Mr. Hutter's admission is corroborated by the Broker Defendants' undisputed testimony that they met at a conference in Florida in February or March 2006. See id., Ex. M (Dragna Dep.) at pp. 47-48 and Ex. N (Sciacca Dep.) at pp. 13, 118. Accordingly, the allegation that Countrywide brought in Evolution violates Rule 11 (b)(3).

**D.    Counsel's Deliberate Distortion of the Good Faith Estimate**

The factual misstatements are not confined to Plaintiff however. In the 1927 Opposition, Plaintiff's counsel makes demonstratively false allegations that the GFE offers Plaintiff a "1.5% fixed rate Countrywide loan" when that document clearly states in the upper right-hand corner "Loan Program: MTA option Arm." See Finneran Decl., Ex. S (GFE). Further, the word "Countrywide" does not appear on the document, nor does it state that the 1.5% interest rate is fixed for any period, much less the entire term of the Loan.

Indeed, contrary to Plaintiff's argument, every document submitted in this matter supports the position that the loan offered to Plaintiff was always an adjustable rate product. Any assertion to the contrary is intentionally misleading. Counsel has improperly invented a factual "record" out of thin air to support his meritless legal theories and in turn provided clear evidence of conduct meriting Rule 11 sanction.

**E.      Counsel's Shifting Allegations Regarding Her Mental Capacity**

Counsel's statements in the motion for leave to file the FAC and the Reply in further support of that motion are inconsistent and ultimately sanctionable. The proposed FAC and the accompanying memorandum of law clearly assert that Plaintiff's "medical condition and incapacity rendered her incapable of contracting." <u>See id.</u>, Ex. I (FAC) at ¶ 10 (c) and Ex. H (Memo) at p. 12, ¶ 5. However, in the Reply, counsel abruptly changes course and states "Unfair and deceptive practices – not lacking of capacity to contract – is the charge that Hutter seeks to add to the complaint." <u>See id.</u>, Ex. J (Reply) at pp. 1-2. Again, simple logic compels the conclusion that Plaintiff falsely sought to plead lack of capacity. As such, Plaintiff's counsel has further violated Rule 11(b)(3).

**POINT II**

**COUNSEL'S FRIVOLOUS LEGAL ARGUMENTS VIOLATED RULE 11(b)(2)**

Under Rule 11, when an attorney files a complaint, motion, or other written paper, he or she is representing to the Court that "the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11 (b)(2).

In determining whether a plaintiff has engaged in conduct violating Rule 11(b)(2)'s requirements, courts apply an objective standard of reasonableness. <u>See</u> <u>Morley v. Ciba-Geigy Corp.</u>, 66 F.3d 21, 25 (2nd Cir. 1995); <u>Star Mark Mgmt. v. Koon Chun Hing Kee</u>

11

Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2nd Cir. 2012). "A pleading, motion or paper violates Rule 11 if it is frivolous, or factually without foundation, even though not signed in subjective bad faith." Wechsler v. Hunt Health Sys, Ltd., 216 F.Supp.2d 347, 356 (S.D.N.Y. 2002) (citation omitted); De La Rosa v. Rocco, 2011 U.S. Dist. LEXIS 76079, 6 (S.D.N.Y. 2011) (same).

**A.**     **Pleading a Claim Based on Facts Known to be False Was Legally Frivolous**

Here, Plaintiff's counsel violated Rule 11(b)(2) by pleading meritless GBL 349 and Reg. 38.7 claims, both based on allegations that counsel knew to be false because he knew (or should have known) from the inception of the action that Countrywide did not communicate with Plaintiff or her husband and therefore did not make any deceptive statements. See Argument Point I, supra. Likewise he knew (or should have known) that Countrywide did not bring in Evolution into the loan, a fact that was confirmed over the course of discovery. Based on this independent reason, Plaintiff's counsel has committed separate Rule 11 violations.

**B.**     **Plaintiff's Unexplained Inconsistent Factual Agency Assertions Are Sanctionable**

In the first amended complaint, Plaintiff indisputably alleged that the Broker Defendants were her agents: "In the summer or fall of 2006, Hutter hired Watermark Capital and Evolution Mortgage as her agents to obtain a loan to refinance her Bedford, NY home" and "Defendants Watermark Capital and Evolution Mortgage were agents of Hutter by contract and by operation of law." See Finneran Decl., Ex. A (AC): ¶¶ 80-81.

For an agency relationship to be established it must be based on a written or oral contract, or "by words or conduct of a principal, communicated to a third party, that gives rise to an appearance and reasonable belief that an agency has been created and the agent possesses the authority to enter into a transaction." Pyramid Champlain Co. V. R.P. Brosseau & Co., 267 A.D.2d 539, 544, 699 N.Y.S.2d 516, 522 (N.Y. App. Div. 3rd Dept. 1999).

Here, Plaintiff cannot point to any evidence that the Broker Defendants were Countrywide's agents. The written agreements between Countrywide and the Broker Defendants do not evidence an agency relationship, but rather compel the opposite conclusion as they contain clear language that "at all times they are operating as <u>independent parties</u>." <u>See id.</u>, Exs. O and P at ¶ 9.2 (emphasis added). Further, Plaintiff cannot cite any words or conduct of Countrywide communicated to Plaintiff or her husband that would make her believe that the Broker Defendants were Countrywide's agents.

Counsel does not stop there. The Reply espouses, for the first time, an "agency by estoppel" theory in an attempt to rescue the agency allegation. Agency by estoppel or apparent authority can be created only by acts or neglect of the person to be charged as principal, and the person dealing with the ostensible agent must have known of, and relied upon, such acts or omissions in good faith and reasonably. <u>Hallock v. State</u>, 64 N.Y.2d 224, 231, 474 N.E.2d 1178, 1181 (N.Y. Ct. App. 1984).

In this instance, counsel crosses the line from advocacy into intentional misrepresentation. To validate the theory, counsel states in the Reply that "Hutter relied on the offer because it appeared to come from Countrywide." <u>See id.</u>, Ex. J (Reply) at p. 6. Counsel further declares that "Hutter reasonably believed that the brokers were acting with Countrywide's authority when they provided a good faith estimate offering a 1.5% fixed rate Countrywide loan …. So Hutter relied on the brokers to be acting on the authority of Countrywide." <u>Id.</u> at p. 8.

Such a statement is alarming in its mischaracterization of the documentary and deposition testimony and an outright falsity. Counsel does not, and can not point to any part of the factual record to support this claim. Indeed, as noted above, Plaintiff repeatedly maintained

that she had no direct communication or contact with Countrywide and only had one conversation with Todd Matthews of Watermark in August 2006 about this loan. See id., Ex. Q, (N. Hutter Dep.) at pp. 13-15. Likewise, she has never identified any documentary evidence supporting the claim. In addition, Mr. Hutter testified that "I didn't know Countrywide was even in the picture... I had no idea what Countrywide is and never heard the name before...." See id., Ex. R (G. Hutter Dep.) at p. 25:17-25. Thus, based on the Hutters' unequivocal testimony, it is factually impossible for Plaintiff (or her husband) to have relied on any acts of Countrywide.

**C.     Requiring a Borrower to Show Up to a Closing Is Not Grounds for a GBL Claim**

In all of the Prior Complaints and the proposed FAC, Plaintiff alleges a cause of action under GBL § 349 based on, *inter alia*, purported representations by the Defendants about the Loan and prognostication about the future of the housing market. See e.g. id., Ex. I (TAC) at ¶ 57. Now, for the first time Plaintiff alleges in the FAC that BANA violated GBL § 349 because "Mr. Hutter tried to reschedule the 11-DEC-2006 closing because his wife was so badly injured, but Watermark Capital refused, saying that if Mrs. Hutter did not attend the closing, Countrywide would cancel its $1.785 million loan to her."

"To assert a viable claim under General Business Law § 349 (a), a plaintiff must plead that (1) the challenged conduct was consumer-oriented, (2) the conduct or statement was materially misleading, and (3) damages." Lum v. New Century Mortgage Corp., 19 A.D.3d 558, 559, 800 N.Y.S.2d 408 (N.Y. App. Div. 2nd Dept. 2005) (citation omitted). No "recurring act or practice" aimed at the broader public is present here as is required by the statute. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744 (N.Y. Ct. App. 1995) (to prevail on a claim under the Deceptive Practices Act, a party "must demonstrate that the acts or practices have a broader impact on consumers at large").

Plaintiff's allegation is meritless as the alleged conduct is not "deceptive" within GBL §349.  There is nothing deceptive alleged, as Countrywide was under no legal obligation to make the loan on December 11, 2006 or at any other time.  There was not even an alleged agreement to make a mortgage loan, and any such agreement to agree would likely be unenforceable in any event.  Further, there is nothing deceptive about setting a final date for a mortgage loan closing.  It is axiomatic that rates change and the terms of a prospective loan cannot be maintained indefinitely without consummation.  Asserting such a baseless claim is frivolous as there was no materially misleading statement and the conduct is entirely fact specific and unique to Plaintiff's alleged condition.

**D.     Plaintiff's Newly Concocted "Fraud in the Execution" Theory Is Meritless**

After filing the motion for leave to file a FAC, counsel, in Plaintiff's opposition to BANA's cross-motion under 28 U.S.C. §1927, incredibly appears to seek to add yet another claim: "fraud in the execution."  See id., Ex. K, (1927 Opposition) at p.15, n. 54.

It is not clear if counsel actually sought to add a new claim or just launch an improper attack on Countrywide.  Assuming the former, seeking to add a new claim in such a cavalier and underhanded fashion highlights counsel's tactic of making frivolous arguments and BANA's continuing frustration in determining the scope of Plaintiff's claims against it nearly five years after the commencement of this action.

Counsel had the opportunity in Court to state the bases of the proposed motion for leave to file a FAC; he wrote the Court promptly after the conference to identify yet other changes to the proposed FAC (Finneran Decl. ¶¶ 7-8, Ex. F), and now he seems to add a brand new theory in unrelated papers.  The Court previously dismissed Plaintiff's fraudulent inducement and fraud in the factum claims with prejudice.  Finneran Decl., Ex. B (Seibel

Trans.), p. 33.  She does not and did not actually plead fraud again.  It was palpably improper to seek to add a new claim or impugn Countrywide on this basis.

## POINT III

### RULE 11 SANCTIONS ARE APPROPRIATE

Sanctions are appropriate for the above violations.   The 1993 Advisory Committee Note to Rule 11 sets forth certain factors that may be considered by the court when deciding whether to impose sanctions or what sanctions are appropriate in the given circumstances.  See also e.g. Colliton v. Cravath, 2008 U.S. Dist. LEXIS 74388, *36 (S.D.N.Y. 2008); Kochisarli v. Tenoso, 2006 U.S. Dist. LEXIS 95862, *24 (E.D.N.Y. 2006); Simpson v. Putnam County Nat. Bank of Carmel, 112 F.Supp.2d 284, 291-92 (S.D.N.Y. 2000).   Those factors include: (1) "[w]hether the improper conduct was willful, or negligent"; (2) "whether it was part of a pattern or activity, or an isolated event"; (3) "whether it infected the entire pleading, or only one particular count or defense"; (4) "whether the person has engaged in similar conduct in other litigation"; (5) "whether it was intended to injure"; (6) "what effect it had on the litigation process in time or expense"; (7) "whether the responsible person is trained in the law"; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case"; and (8) "what amount is needed to deter similar activity by other litigants."  1993 Advisory Committee Note to Fed. R. Civ. P. 11.

Here, Plaintiff's and her counsel's conduct merits Rule 11 sanctions under seven of the eight factors. (BANA is unable to speak to "whether the person has engaged in similar conduct in other litigation").  First, the improper conduct is "willful" and "part of a pattern or activity" as evidenced by the fact that misstatements and frivolous arguments span five separate Complaints as well as multiple memoranda of law.  The misstatements and bogus arguments "infected the entire pleading" as most of the sanctionable assertions were in support of a

meritless GBL 349 claim, which is at the heart of her Complaint and presents the greatest potential damages award. That Plaintiff "intended to injure" BANA can be inferred by the fact she is seeking significant damages against BANA for her meritless claims, the repeated filings of complaints, her flip-flopping allegations, her vastly over-reaching damages claims, including seeking compensation for lost profits for a business unrelated to her home, owned by her husband, that never actually operated.

Further, the improper conduct has had a profound effect on this litigation in terms of time and expense. As one of the many examples of how Plaintiff and her counsel have wasted BANA's and the Court's resources, one need only look at the false allegations about Plaintiff's communication with Countrywide. The veracity of the allegations in the Complaints was in Plaintiff's and her husband's sole knowledge from the outset of this litigation and it took Countrywide several years and many depositions to discover, as Plaintiff and her husband freely admitted, that they never had communications with Countrywide and therefore could not possibly have a legitimate GBL 349 claim. Indeed, but for Plaintiff's misstatements that Countrywide *itself* made representations directly to Plaintiff that deceived her into entering into the adjustable rate Loan, the Court likely would have dismissed the GBL claim against Countrywide years ago. See Point I B. Notably, the very oral representations on which Judge Siebel appeared to have rested her decision not to dismiss the GBL §349 claim admittedly *never* were made.

Finally, the individuals responsible for perpetrating the misstatements are Plaintiff and her counsel who is presumably "trained in the law."

## POINT IV

## DISMISSAL AND AWARDING BANA ITS ATTORNEYS' FEES IS APPROPRIATE

As stated in the Comments to the 1993 Amendments to Rule 11, "[t]he Court has a variety of possible sanctions to impose for [Rule 11] violations" including "striking the offending paper." Dismissal is appropriate where it is the only sanction that is adequate to deter plaintiff or similarly situated litigants from further egregious and abusive conduct. Perry v. Fischer, 2010 U.S. Dist. LEXIS 32013, 15 (N.D.N.Y. 2010).

Dismissal is the only means that will ensure that Plaintiff and her counsel will not continue their pattern of improper conduct because numerous misstatements and frivolous legal arguments pervade the entire action. Indeed, as noted, the GBL 349 claim should have been dismissed in 2011, leaving only a demand for modest RESPA damages and a demand for rescission under TILA, even though Plaintiff lacks the funds to rescind.

In addition or as an alternative to dismissal, BANA respectfully requests an award of its attorneys' fees for this entire litigation against both Plaintiff and her counsel. Rule 11 "authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party." See Comments to the 1993 Amendments to Rule 11. Where a party seeks its reasonable attorneys' fees for a Rule 11 violation, "District courts have broad discretion in ascertaining the appropriate amount of a defendant's attorneys' fees thought reasonable to serve the purpose of the rule, which is to deter baseless filings in the district courts, thereby streamlining administration and procedure of the federal courts." Empire State Pharmaceutical Soc., Inc. v. Empire Blue Cross & Blue Shield, 778 F. Supp. 1253, 1260 (S.D.N.Y. 1991) (citations omitted). A court may also "award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion," such an award may be made against either a party or its counsel. See Fed. R. Civ. P. 11 (c)(2) and (c)(5). When deciding the

18

amount of sanctions, Courts consider "the gravity of the Rule 11 violation, the circumstances of the violation within the context of the case, and the financial resources of the respective parties." Michelson v. Merrill Lynch, 1989 U.S. Dist. LEXIS 3013, 20 (S.D.N.Y. 1989) (citation omitted).

Here, BANA incurred a significant amount of attorneys' fees and expenses in defending Plaintiff's meritless GBL claim, which but for Plaintiff's false allegations would not have survived BANA's motion to dismiss.

As such, BANA respectfully requests that this Court issue an award of sanctions for BANA's reasonable attorneys' fees and expenses for this entire litigation including BANA's fees and expenses in preparing this Rule 11 motion and to schedule a hearing to compute those amounts. Empire State Pharmaceutical Soc., Inc., 778 F. Supp. at 1260 (awarding attorneys' fees for sanctions and scheduling separate hearing so as to ascertain the appropriate amount of fees). In the alternative, the Court should award sanctions from March 10, 2011 when the Court issued its order regarding BANA's motion to dismiss, which but for the Plaintiff and her counsel's misstatements would have dismissed the GBL claim.

As Plaintiff and her counsel were both aware of and actively participated in the pleading of false assertions of fact, any award of attorneys' fees should be against them jointly and severally. See Morley v. Ciba-Geigy Corp., 66 F.3d 21, 24 (2nd Cir. 1995) (a court has the discretionary authority under Rule 11(c) to impose monetary sanctions on either the offending party or its counsel, or both where a court finds that claims or defenses have been asserted for the sake or harassment or some other improper purpose, or that they lack any evidentiary support); see also Calloway v. Marvel Entertainment Group, 854 F.2d 1452, 1474 (2nd Cir. 1988) (holding that Rule 11 sanctions may be imposed upon a represented party when the party "had actual knowledge that filing the paper constituted wrongful conduct"), rev'd on other grounds.

## CONCLUSION

For the foregoing reasons, this Court should issue an order pursuant to Rule 11 dismissing the Complaint and compelling Plaintiff and her counsel to pay BANA's legal fees and expenses in from the very beginning of this litigation and schedule a hearing to compute those amounts.

Dated:   New York, New York
         March 3, 2014

                              ZEICHNER ELLMAN & KRAUSE LLP

                              By: _____
                                  David B. Chenkin
                                  Kenneth G. Rudd
                                  BJ Finneran
                                  Attorneys for Defendant
                                  Bank of America, N.A.
                                    as successor by merger to Countrywide
                                    Bank, N.A.
                                  1211 Avenue of the Americas
                                  New York, New York 10036
                                  (212) 223-0400

#748897v6/PXM/2978.172