David B. Chenkin
Kenneth C. Rudd
BJ Finneran
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400
(212) 753-0396 (fax)

Attorneys for Defendant Bank of America, N.A.,
as successor by merger to Countrywide Bank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NANCE M. HUTTER,

                        Plaintiff,

- against -

COUNTRYWIDE BANK, N.A., a subsidiary of
COUNTRYWIDE FINANCIAL
CORPORATION, WATERMARK CAPITAL,
INC. and EVOLUTION MORTGAGE, INC.,

                       Defendants.

Case No. 09 CV 10092 (NSR)(LMS)

---

# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF BANA'S
# MOTION FOR SANCTIONS UNDER RULE 11

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii
Preliminary Statement 1

ARGUMENT .................................................................................................................................1

POINT I   SANCTIONS SHOULD BE IMPOSED REGARDLESS OF
          WHETHER PLAINTIFF'S PAPERS ARE ENTIRELY MERITLESS ...................1

POINT II  PLAINTIFF AND COUNSEL DO NOT DISPUTE MAKING
          FACTUAL CONTENTIONS WITHOUT EVIDENTIARY SUPPORT...................2

POINT III PLAINTIFF VIOLATED RULE 11(B)(2) ................................................................6

    A.   Plaintiff's Sanctionable Agency Positions Contradict her Prior
               Submissions .................................................................................................6

    B.   Plaintiff Misrepresents her Pleading and Judge Seibel's Ruling ...............7

    C.   Plaintiff's Agency Arguments Violate Rule 11 ..........................................9

POINT IV  THE COURT SHOULD IMPOSE SANCTIONS.....................................................9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Cross & Cross Properties, Ltd. v. Everett Allied Co.,
   886 F.2d. 497 (2d Cir. 1989)..................................................................................................1

Eastway Constr. Corp. v. City of New York,
   762 F.2d 243 (2d Cir. 1985)....................................................................................................1

Oyibo-Ebije v. NYC HRA,
   2013 U.S. Dist. LEXIS 14941 (S.D.N.Y. 2013) .....................................................................2

**OTHER AUTHORITIES**

Rule 11 ............................................................................................................................. passim

Rule 11(b)(2).............................................................................................................................6

Rules 11(b)(2) and (b)(3) ..........................................................................................................1

Rule 11(b)(3).........................................................................................................................2, 6

Rule 26(a).................................................................................................................................2

## PRELIMINARY STATEMENT

Plaintiff's opposition (the "Opposition") to BANA's motion grasps at straws in an effort to avoid sanctions and reinforces her and counsel's Rule 11 violation. Indeed, Plaintiff continues to misstate the factual record in this matter while further contradicting prior submissions. Likewise, Plaintiff's baseless and waffling legal positions twist established precedent and demonstrate the lack of a non-frivolous argument for modifying existing law.

## ARGUMENT

### POINT I

### SANCTIONS SHOULD BE IMPOSED REGARDLESS OF WHETHER PLAINTIFF'S PAPERS ARE ENTIRELY MERITLESS

Plaintiff's Opposition not only conflates Rules 11(b)(2) and (b)(3), making the wholly unsupportable argument that an entire case or claim needs to be frivolous to support a violation, but also simply misstates the law and the import of Eastway Constr. Corp. v. City of New York, 762 F.2d 243 (2d Cir. 1985). The United States Court of Appeals for the Second Circuit clearly stated the law after a district court determined that a counterclaim was without foundation but declined to impose Rule 11 sanctions because the pleadings as a whole passed muster:

> But to adopt a standard that would deny sanctions for a significant and obviously meritless claim simply because the rest of the pleading was sound strikes us as contrary to this court's established reading of Rule 11. In Eastway Construction, we held that sanctions are mandated where it is "patently clear that a *claim* has.... no chance of success... To adopt the standard applied by the district court would allow a party with one or more patently meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims, for that party would be assured that the weight of his meritorious claim(s) would shield him from sanctions. In light of these considerations, we hold that the district court applied an improper standard in weighing only the merits of the pleading *as a whole*...

Cross & Cross Properties, Ltd. v. Everett Allied Co., 886 F.2d. 497, 504-505 (2d Cir. 1989) (emphasis in original). Further, Plaintiff attempts to impose a non-existent burden on BANA,

asserting that it must "prove" that her factual contentions are frivolous. (Pl. Opp. Memo at 6). That is not the standard. Sanctions are appropriate if her factual contentions lack evidentiary support. As shown, they do. Thus, Plaintiff's frivolous claims are sanctionable as are her baseless factual contentions, regardless of whether they are interwoven with non-sanctionable claims.[1]

## POINT II

### PLAINTIFF AND COUNSEL DO NOT DISPUTE MAKING FACTUAL CONTENTIONS WITHOUT EVIDENTIARY SUPPORT

The Opposition side steps Plaintiff's sanctionable factual contentions. As shown in the BANA Memorandum of Law in support of Rule 11 sanctions ("BANA Memo"), Plaintiff repeatedly made factual assertions that Countrywide "told" *her* numerous deceptive statements. (BANA Memo, Point I A). Plaintiff now seeks to change or withdraw those assertions even though she has always known which party made representations to her and her husband. Those oft-repeated prior contentions lacked evidentiary support. That is a violation of Rule 11(b)(3).[2]

Also, Plaintiff does not dispute that had she accurately pleaded her factual contentions regarding those representations, Judge Seibel would likely have dismissed her GBL claim. (See BANA Memo, Point I A). Based on that admission, this Court should impose significant sanctions to deter her in the future from litigating a frivolous case for years.

Having long pleaded contentions that Countrywide told her deceptive statements and facing her own sworn admission that such contentions were untrue, Plaintiff obfuscates, noting

---

[1] This Court should not countenance Plaintiff's apparent attempt to blame the Court for her pleading deficiencies. (Pl. Opp. Memo, p. 1). In addition, Plaintiff improperly attaches numerous unauthenticated exhibits to her memorandum, which this Court should disregard. See Oyibo-Ebije v. NYC HRA, 2013 U.S. Dist. LEXIS 14941, 14 (S.D.N.Y. 2013) ("Documents must be attached to and authenticated by an appropriate affidavit and the affiant must be a competent witness.").

[2] Plaintiff's Rule 26(a) disclosures are also misleading, deliberately not identifying that it was her husband who had nearly all communications concerning the loan. (Finneran Reply Decl., Ex. V (Rule 26(a) Disclosure)).

2

that a BANA witness testified that Countrywide "would have" sent her a Good Faith Estimate ("GFE") based on information provided to it by a broker, and therefore there was at least one communication from Countrywide to her. (Pl. Opp. Memo at pp. 7-8). That is of no moment. Both Plaintiff and her husband contend that Countrywide never told or sent either of them anything, and her husband, who had virtually all communications about the loan, testified that he "didn't know Countrywide was in the picture." (See e.g., Finneran Reply Decl., Ex. AA, pp. 25, 38-39 (G. Hutter Dep.); Ex. Z, p. 140 (N. Hutter Dep.); BANA Memo, p. 6; Finneran Decl., Ex. T ¶ 6 (June 3, 2010 G. Hutter Aff.); DE 20-2, ¶ 6 (June 4, 2010 N. Hutter Aff.)).

Further, plaintiff acknowledged receiving only two GFEs, one from Evolution and one from Watermark, but none from Countrywide. (Finneran Reply Decl. ¶6; see also, Ex. Z (N. Hutter Dep., pp. 19, 27-28, 321-22)). In addition, none of the prior complaints or the proposed FAC even cite to the GFEs, so Plaintiff could not possibly have considered a GFE she claims not to have received when pleading direct contact. Further, Plaintiff, through clever wording, the misleading use of quotation marks that do not actually quote the witness, and disingenuous citation, tries to attribute to a BANA witness the claim that Countrywide is responsible for brokers having stated a 1.5% rate in their GFEs. (Pl. Opp. Memo, p. 12). However, the testimony Plaintiff cites (and that which follows) contradict Plaintiff's contention. (Finneran Reply Decl., Ex. Z, pp. 100-103 (N. Hutter Dep.)).

Plaintiff's testimony establishes that she always believed that Countrywide sent her nothing. No amount of wiggling or references to legal arguments about the law of agency changes that fact. Further, Plaintiff asserts that she never discussed with counsel whether her claims concerning a 1.5% rate were about a fixed or variable rate. (Pl. Opp. Decl. ¶ 7). Counsel fails to address this assertion, underscoring his failure to conduct a reasonable inquiry.

3

When a party seeks to file a pleading that contradicts prior pleadings in an attempt to plead around the defenses presented by an adversary, sanctions are appropriate. Colliton v. Cravath, 2008 U.S. Dist. Lexis 74388, 36 (S.D.N.Y. Sept 24, 2008) (imposing Rule 11 sanctions against a party whose amended complaint contradicted his original complaint in a transparent attempt to plead around defenses raised by an adversary). Indeed, "it is clear that sanctions are appropriate where facts have been 'concocted.'" Id. at 38.

Here, Plaintiff presents ever-shifting, contradictory factual contentions.[3] Over the course of four pleadings, she asserted that defendants told her that she would receive a 1.5% interest rate (which is the actual rate she initially had the option to pay (DE 120-5, Ex. F), that a variable rate loan was right for her and that she could afford the payments on a Pay Option loan. Those assertions have morphed into new contentions that Plaintiff was always promised a *fixed* 1.5% rate loan for a 40 year term and was never told that a variable rate was right for her. Plaintiff goes even further and asserts that her prior pleaded factual contentions were "untrue" (see DE 120-3 at 7) (Plaintiff's Memo of Law in Support of Motion to File a FAC) and a "falsehood." (Finneran Reply Decl., Ex. AA, pp. 61-63 (G. Hutter Dep.)). This clearly constitutes sanctionable conduct. Further, Plaintiff's attempt to justify this flip-flop is even more confounding as she now asserts that she did not "pay attention" to the allegation that *she* was told that a variable rate loan was right for her or "assumed" it was accurate and was told to her husband. (Plaintiff's Opp. Decl., ¶9).

After Plaintiff failed to mark the deletion from her TAC in her proposed FAC that "the bank ... told Hutter that she could afford the monthly payments on a $1,785,000 monthly adjustable rate Pay Option loan," BANA concluded that the failure was likely deliberate.

---

[3] This Court has already recognized Plaintiff's "waffling" and that it appeared that Plaintiff "tailor[ed]" her pleading to evade possible dismissal. (DE 148 at 10-11).

4

(BANA Memo at 9-10). She failed to respond. From the start, Plaintiff alleged the proposed loan was a Pay Option ARM and she even hired an expert to opine about the allegation that defendants downplayed the risks of an ARM. (Finneran Reply Decl., ¶12).

Plaintiff's assertion that there is no issue under Colliton because earlier complaints were silent as to whether the 1.5% rate was fixed defies credulity. Plaintiff strategically pleading one set of facts through her TAC and then changing her mind was improper, and she had every opportunity to clarify her pleading when Judge Seibel described her 1.5% allegation in ruling on the motions to dismiss. (See Finneran Decl., Ex. B at 12 (March 10, 2011 Seibel Tr.)).

Plaintiff's assertions about the GFEs she received are profoundly misleading. One of the two GFEs she admittedly received describes the loan product as an "OPTION ARM" (capitalization in original), (Finneran Reply Decl. ¶6, Ex. Z at 19, 27-28, 321-22 (N. Hutter Dep.)) thus fundamentally undermining her claimed lack of understanding of the term "Option Arm" because "Arm" was not entirely in capital letters. Given that several of Plaintiff's prior loans on her home had an adjustable rate feature, (DE 12-5-6 (Ex. B to Gershon MTD Aff)) her contention defies credulity.[4]

Plaintiff's self-serving, newly concocted factual allegations about how Evolution came into the transaction violate Rule 11. Plaintiff's new averment that Countrywide brought in Evolution was contradicted by Plaintiff's husband's sworn testimony. (BANA Memo, Point I C). Now, her husband submits a new affidavit, inserting yet a new hearsay contradiction, that Todd Matthews, an employee of Watermark, told him that he "asked Countrywide" to locate a

---

[4] Likewise the assertions in Plaintiff's complaints and opposition papers that the Countrywide loan was at an 8.125% rate and the prior loan was at a 5.875% rate are misleading. The Countrywide Loan, the prior loan it refinanced, and upon information and belief the prior Citibank loan, were all variable rate products. (See DE 12-5-6 (Ex. B to Gershon Aff. in support of BANA's MTD))  The indices were different; the margins were different; the frequency that interest rates changed were different and the payment obligations were different.

New York broker and that Matthews said that Countrywide "found" Evolution. (Finneran Decl., Ex. T (June 3, 2010 G. Hutter Aff. ¶4)). However, when Plaintiff's husband submitted his affidavit in opposition to the motion to dismiss, at a time when his every incentive was to be truthful and fulsome, he said clearly that "Matthews told me that his company was not licensed … so he would get a local mortgage broker to handle our loan. He did not mention Evolution … but just said that ***he would have to hire a local broker.***" (Id.). Further, as noted above, he testified he "didn't know Countrywide was in the picture." Now on the brink of facing summary judgment – and having heard an outline of an anticipated motion and having read BANA's Rule 11 submission – his story has changed. Consequently, both Plaintiff and her counsel violated Rule 11(b)(3).

## POINT III

## PLAINTIFF VIOLATED RULE 11(b)(2)

### A.     Plaintiff's Sanctionable Agency Positions Contradict her Prior Submissions

Plaintiff pleaded that Countrywide told *her* deceptive information. Her absurd legal argument that her husband was her agent and therefore it was legally accurate to plead that statements allegedly made to her husband were actually made directly to her is vacuous nonsense. It would have been simple to plead that certain statements were made to Plaintiff's husband, acting as Plaintiff's agent. She did not do that. Likewise, if she could have done so based on a non-frivolous argument for extending existing law, she could have pleaded that Countrywide spoke to her husband through employees of companies Plaintiff alleged were Countrywide's agents. For years, she did not do that. Of course she and her husband believed that the brokers were her agents, owing her a fiduciary duty, as her husband recently asserted to the Attorney General and as she asserted to this Court. (BANA Memo, Point II B; DE 21 at 26-27 (Pl. MTD Opp.)). The entire GBL claim violates Rule 11(b)(2).

6

B.  **Plaintiff Misrepresents her Pleading and Judge Seibel's Ruling**

Plaintiff inaccurately asserts that her GBL claim rests on the assertion that Countrywide "knowingly made her sign a loan application" containing gross misrepresentations of her income. (Pl. Opp. Memo, p. 3). She mischaracterized the TAC and the entire action. The gravamen of Plaintiff's complaints has always been that the defendants deceptively marketed the Loan to Plaintiff and prognosticated about the future, steering her into a Pay Option ARM: ***"the bank ... told Hutter that she could afford the monthly payments on a $1,785,000 monthly adjustable rate Pay Option loan."*** See Finneran Decl., Exs. A, ¶ 57a (First Am. Compl.); Ex. D, ¶ 57a (Second Am. Compl.); Ex. E ¶ 57a (Third Am. Compl) (emphasis added). Indeed, in furtherance of that theory, Plaintiff pleaded that the *brokers* "falsely stated" her income on an application they gave her (id., ¶57(e)), and that, upon information and belief (the basis for which is not stated) Countrywide "tolerated" such conduct. (Id., ¶57(g)).[5] Even more egregious, is Plaintiff's outright falsehoods concerning Judge Seibel's decisions. Plaintiff's Memo dissembles when it states that Judge Seibel "agreed that Hutter's allegation that the bank knowingly had Hutter sign a false loan application alleges wrongdoing under the [GBL]." (Pl. Opp. Memo at 3). Judge Seibel neither said nor implied any such thing. (See Finneran Decl., Ex. B). Rather, she first stated that Plaintiff "barely" pleaded a GBL claim based on the allegations that Countrywide encouraged and incentivized brokers to sell pay option ARMs, that the brokers used Countrywide scripts that omitted crucial information, and that defendants made various misrepresentations that induced borrowers to enter into mortgages. (Id. at 23-25). (Plaintiff now disavows the latter two allegations). Second, at a later date, after discussing the elements of the

---

[5] In opposition to BANA's motion to dismiss, Plaintiff agreed with this assertion: "Surely then Hutter's particular [GBL] claim, charging Countrywide Bank and the broker defendants with making a deceitful type of loan, (namely the Pay Option loan) that Hutter could not afford ..." (DE 21 at 11).

7

GBL claim, Judge Seibel said, "I agree that offering a no-doc loan is in itself not improper conduct by the lender nor is 'just accepting' the representations in plaintiff's application. Indeed, that is what plaintiff knew Countrywide would do when she applied for a no-doc loan." (See Finneran Reply Decl., Ex. BB, pp. 7-10 (September 23, 2011 Decision & Order). Further, Plaintiff contends only that the brokers had her sign, not that anyone deceived her into signing, her fraudulent application.[6]

Plaintiff continues to frivolously flip-flop on the basis of her GBL claim having realized that there is no evidence of deceptive marketing by Countywide. The new position that Countrywide acted deceptively by making her close the Loan is not only not pleaded but is an unsupportable legal position as the GBL is directed to materially misleading conduct. (See BANA Memo II C). Requiring a potential borrower to either agree to a loan or risk losing the borrowing opportunity is not misleading; indeed it is entirely accurate. Likewise, her newly-hatched incapacity legal theory not only underscores the requirement for parties to plead accurately but is also an example of why statutes of limitations exist. The parties are now over 4 ½ years after the action commenced and 7 ½ years after the loan originated; memories fade, and indulging this new theory prejudices BANA. Further, Plaintiff asserts that she is not seeking to rescind her mortgage on the grounds of incapacity (Pl. Opp. Memo, p. 24), but she pleads that she is indeed seeking to void it. (Finneran Decl., Ex. I, ¶¶ 51-52). Further and importantly, the GBL section of her FAC does not plead anything about incapacity or injury, and there is nothing

---

[6] Plaintiff makes other misrepresentations. She incorrectly asserts that Countrywide's contracts with the brokers provide that it will draft the closing documents and that this means that Countrywide drafted Plaintiff's fraudulent loan application. (Pl. Opp. Memo at 4). However, the contract actually provides the broker will submit to Countrywide a completed loan application. (Finneran Decl. Ex. B, p. 2 §1.3(b)). Plaintiff further dissembles in saying that BANA's witness had no evidence that Plaintiff submitted her false income representation prior to closing. (Pl. Opp. Memo at 4). BANA had been given her claimed income at least two months before closing. (DE 116-11). These allegations about the application flatly contradict the FAC, which asserts that "the false income figure stated on that application was invented by the brokers." (¶19).

8

pleaded from which to infer that Plaintiff's alleged injury forms the basis of a GBL claim. Plaintiff's argument to the contrary is patently frivolous.[7]

### C. Plaintiff's Agency Arguments Violate Rule 11

Plaintiff does not dispute that agency hinges on words or conduct by the ostensible principal communicated to the third party. (See BANA Memo, p. 12; Pl. Opp. Memo, p. 10). She compounds her meritless agency argument by tacitly admitting the lack of communication by Countrywide and highlighting parts of an agreement between it and each broker showing that the broker maintained control of a relationship with a potential borrower, which agreement gave all responsibility for contact, interviews, discussion, and information gathering to the non-agent broker. (Pl. Opp. Memo, p. 11). Her further agency by estoppel argument does not save the frivolous pleading. Plaintiff ignores the law that for agency to exist, the person dealing with the ostensible agent must have known of and reasonably relied on the principal's act. (BANA Memo, p. 13). Plaintiff does not allege that happened here. Regardless, Plaintiff denies ever receiving a Countrywide GFE and could not have relied on one in pleading or otherwise. In addition, such GFE does not contain any information from which to infer agency.[8]

## POINT IV

## THE COURT SHOULD IMPOSE SANCTIONS

BANA demonstrated that seven of the eight factors identified by the Advisory Committee Notes justify imposing sanctions. (BANA Memo, p. 16). In the interim, Plaintiff satisfied the eighth factor: Plaintiff has been sanctioned by another court. Represented by the same counsel,

---

[7] On November 7, 2013, counsel appeared before Magistrate Judge Smith, Plaintiff's counsel did not mention a desire to file a FAC. (Finneran Decl. ¶7). Immediately thereafter, counsel appeared for the first time before Judge Roman. (Id). It was not until counsel for BANA outlined its proposed summary judgment motion that Plaintiff's counsel first raised the prospect of a FAC. (Id. ¶ 9, Ex. Y).

9

Plaintiff brought fraud litigation against Citibank, N.A., Watermark, and others concerning the Property at issue here. The Supreme Court, Westchester County sanctioned plaintiff, awarding attorney's fees and costs because "Plaintiff had ample time to research and analyze the legal theories and facts of her case to determine if she had a viable suit and chose not to withdraw her claim against these defendants until after they filed their [summary judgment] motion." (Finneran Reply Decl. Ex. BB (June 4, 2014 Decision & Order)).

Here, sanctions in the form of dismissal and legal fees are appropriate because they will serve to deter future frivolous conduct. Further, the argument that Plaintiff should not be sanctioned because she did not actually file the proposed FAC, even though she made, and counsel signed, a motion to do so does not even pass the straight face test.

## CONCLUSION

For the foregoing reasons, this Court should determine that Plaintiff and counsel violated Rule 11 and impose appropriate sanctions.

Dated: New York, New York
June 30, 2014

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
David B. Chenkin
Kenneth C. Rudd
BJ Finneran
Attorneys for Defendant
 Bank of America, N.A.
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400

---

[8] Even more ridiculous, is Plaintiff's assertion that she changed her pleading from the brokers being her agents to their being Countrywide's after receiving a copy of an agreement ostensibly between her and the brokers reciting that they were not her agents, even though she claims the agreement is forged! (Pl. Opp. Memo at 13).