# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>          Plaintiff<br><br>v.<br><br>COUNTRYWIDE BANK, N.A., a<br>subsidiary of COUNTRYWIDE<br>FINANCIAL CORPORATION<br>WATERMARK CAPITAL, INC.<br>EVOLUTION MORTGAGE INC.<br><br>          Defendants | Case no. 09-CIV-10092<br>(ER) (LMS)<br><br>**Nance M. Hutter's<br>Affidavit in Opposition<br>to Rule 11 Sanctions** |

I, Nance M. Hutter, state under oath as follows:

1. I am the plaintiff in this lawsuit.

2. I present this affidavit in opposition to defendant Countrywide Bank, N.A.'s motion for Rule 11 sanctions.

3. In 2006, both I and my husband had no income.

4. Indeed, we did not have any income in 2004 or 2005 either due to the fact that my husband was in the research and development stage of a proprietary patented emergency housing system for disaster victims – RescUshelter.

[Hutter's Affidavit in Opposition to Rule 11 Sanctions]

5. In the fall of 2006 before I closed on my $1.785 million Countrywide loan, I understood that I would be given an asset based loan and that I would not have to state an income figure to qualify for the loan.

6. I also understood that I would be given mortgage loan with a fixed interest rate of 1.5% for the life of the loan.

7. My original Complaint, and the First, Second, and Third Amended Complaints in this case, did not specify whether I had been offered a loan with a fixed or a variable-rate loan. And I did not discuss that question with my attorney, Stephen A. Katz.

8. I believed that I had been offered a fixed-rate loan, but up until my deposition was held, I did not tell my attorney that I had been promised a fixed-rate loan.

8. I did not think that my complaint needed to specify whether I had been offered a fixed or a variable-rate loan.

9. Regarding the original Complaint and the First, Second, and Third Amended Complaints, I did not pay much attention to paragraph 57(c) in the complaints, which said that "the defendants told Hutter that an adjustable-rate loan was right for her." Since in the end I *was given* a variable-rate loan, I assumed that the paragraph was accurate and that

[Hutter's Affidavit in Opposition to Rule 11 Sanctions]

my husband, while acting as my agent, had been told by the defendants
that a variable-rate loan was right for me.

10.  But I never interpreted paragraph 57(c) as stating that I was
promised a variable-rate loan rather than a fixed-rate one, and I do not
interpret paragraph 57(c) to have that meaning now.

11.  It was only during my deposition, when the defendants questioned
me about paragraph 57(c), that I realized that they were trying to
interpret the paragraph to mean that I had been offered a variable-rate
loan, not a fixed-rate one.

12.  For that reason, I now seek to eliminate paragraph 57(c) from my
complaint; because they way that the defendants are interpreting the
paragraph is untrue. My husband has told me that he was always
promised that my $1.785 million Countrywide loan would have a fixed
rate, so if paragraph 57(c) is interpreted to mean that I was offered a
variable-rate loan, then the paragraph is false and it should be removed
from my complaint.

13.  When I received good-faith estimates for my $1.785 million loan, I
did not know what the term "Loan Program: MTA Option Arm" in the
GFEs referred to. I had never heard of a pay-option loan and did not know
what one was. Because that notation was on the top of the document, not

anywhere near the interest rate or other terms of the loan, I assumed that the language after "Program" was internal language intended for the broker referring to his commission and it made no sense to me.

15. The fact that "Arm" was not all capitalized as "ARM," was also confusing; so it never occurred to me that "Arm" stood for "adjustable-rate mortgage."

15. As for "MTA," to this day, I do not know what the term stands for.

16. At the closing of the loan, I was too groggy from medication I had taken which was prescribed to me that day because I awoke that day with excruciating head pain and vomiting which were a result of a trauma I sustained in an automobile accident that I had been involved three weeks earlier – in November 2006. I was later diagnosed with a traumatic brain injury resulting in a 21% disability rating that made me unable to read the documents presented to me or to comprehend the proceedings. It must have been obvious to the people who ran the closing that I was in no condition to enter into a legal agreement.

17. After I closed on my Countrywide loan on 11 December 2006, I went directly to the Stamford Hospital Emergency Room for emergency treatment and diagnosis of the debilitating head pain and vision problems I was suffering and released the following day.

[Hutter's Affidavit in Opposition to Rule 11 Sanctions]

18.  Evolution Mortgage has produced a mortgage-loan-origination agreement that I supposedly signed on 22 September, 2006.

19.  I have no memory of signing that agreement, no copy of it is in the loan documents and pre-closing documents that I was given before I brought this lawsuit, and consequently, I did not tell my attorney about that 22-SEP-2006 agreement when he drafted the original complaint in this case.

20.  I suspect that my signature is forged on the 22-SEP-2006 mortgage-loan-origination agreement.

21.  When I attended the deposition of Joseph Sciacca in this case, I observed that Sciacca is about 5'10" tall, and he does not have white hair.

Nance M. Hutter

Sworn to before me by
Nance M. Hutter this
5th _____ day of June, 2014

Notary Public

DEBBIE P COLLER
Notary Public - State of New York
NO. 01CO6247450
Qualified in Westchester County
My Commission Expires  8/29/15