David B. Chenkin
Kenneth C. Rudd
BJ Finneran
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400
(212) 753-0396 (fax)

Attorneys for Defendant Bank of America, N.A.,
as successor by merger to Countrywide Bank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>                    Plaintiff,<br><br>- against -<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of<br>COUNTRYWIDE FINANCIAL CORPORATION,<br>WATERMARK CAPITAL, INC. and<br>EVOLUTION MORTGAGE, INC.,<br><br>                    Defendants. | Case No. 09 CV 10092 (NSR)(LMS) |

## STATEMENT OF MATERIAL FACTS ABOUT WHICH THERE IS NO GENUINE ISSUE SUBMITTED BY BANK OF AMERICA, N.A. AS SUCCESSOR BY MERGER TO NAMED DEFENDANT COUNTRYWIDE BANK N.A.

        Bank of America, N.A., successor by merger to defendant Countrywide Bank, N.A. ("BANA" or "Countrywide," as context requires), by its attorneys, Zeichner Ellman & Krause LLP, pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Sothern District of New York, respectfully submits this Statement of Material Facts about which there is no Genuine Issue.

## THE ACTION

1.      On or about November 15, 2011, Plaintiff Nance Hutter ("Plaintiff") filed a Third Amended Complaint (the "Complaint"). The Complaint makes allegations concerning a $1,785,000. Pay Option Adjustable Rate Mortgage loan (the "Loan") Plaintiff obtained from Countrywide on or about December 11, 2006, which Loan was secured by a mortgage on her home at 175 Hickory Kingdom Road Bedford, New York ("the Property"). A true and accurate copy of the Complaint is attached as **Exhibit 1** (and can be found at Docket Entry ("D.E.") 49.)

2.      A true and accurate copy of the BANA's Answer with Cross Claims (DE 50), filed on December 12, 2011, is attached as **Exhibit 2**.

3.      True and accurate copies of the answers with cross claims of defendants Evolution Mortgage, Inc. and Watermark Capital, Inc are attached as **Exhibits 3** and **4**.

4.      For the convenience of the Court, attached are true and accurate excerpts of the following deposition transcripts and orders:

(a)      Deposition of Plaintiff dated June 19, 21, 26 and July 22, 2013 as **Exhibit 5**.

(b)      Deposition of Gerhard Hutter dated October 15, 2013, as **Exhibit 6**.

2

       (c)       Deposition of Lanisa Jenkins dated October 17, 2013  as **Exhibit 7**.

       (d)       Deposition of Joseph Sciacca dated August 19, 2013 as **Exhibit 8**.

       (e)       Deposition of Charles Dragna dated September 17, 2013 as **Exhibit 9**.

       (f)       The Court's Memorandum Opinion and Order (D.E. 158) dated August 22, 2014 (the "Order") as **Exhibit 10**.

## PLAINTIFF'S BORROWING HISTORY

5.      Prior to December 11, 2006, Plaintiff previously borrowed funds secured by mortgages, which loans included those at adjustable rates.  For instance, her borrowing history includes the below:

       (a)       To evidence receipt of a $500,000 loan made by the Putnam Trust Company of Greenwich ("Putnam"), Plaintiff and her husband executed and delivered to Putnam an Adjustable Rate Note dated June 30, 1986.  See Ex. 2, p. 143, Depo. Exhibit O.  A copy of said promissory note is attached as **Exhibit 11**.[1]

---

[1]   For ease of review of these undisputed facts, we refer to deposition exhibits by the designation given at the deposition, but also attach them to the Statement sequentially along with the other exhibits.

(b)     To evidence receipt of a $999,000 loan made by the Fairfield Financial Mortgage Group, Inc. ("Fairfield"), secured by a mortgage on the subject Property, Plaintiff executed and delivered to Fairfield an InterestFirst Note and a Mortgage dated February 6, 2004.  See Ex. 2, pp. 162-163, 171-172, Depo. Exhibits P and Q.  A copy of said Note and Mortgage are attached collectively as **Exhibit 12**.

(c)     To evidence receipt of a $1,206,500 loan made by Fairfield, secured by a mortgage on the subject Property, Plaintiff executed and delivered to Fairfield Adjustable Rate Notes dated April 29, 2005 that called for Plaintiff's monthly payment to adjust five years after closing.  See Ex. 2, pp. 181, 191-192 and 202, Depo. Exhibits R, T and V.  Copies of the notes payable to the order of Fairfield are attached collectively as **Exhibit 13**.

(d)     As collateral security for the repayment of all sums payable pursuant to the immediately above Adjustable Rate Notes and the performance of all Plaintiff's obligations under said notes, Plaintiff executed, acknowledged and delivered to Mortgage Electronic Registration System, Inc., as nominee for Fairfield, a Consolidated Mortgage on the subject Property dated April 29, 2005.  Said Consolidated Mortgage was duly signed by Plaintiff and contained an Adjustable Rate Rider.  See Ex. 2, p. 201, Depo. Exhibit W.  Said Consolidated Mortgage is attached as **Exhibit 14**.

4

## CIRCUMSTANCES AND EVENTS LEADING
## UP TO THE CLOSING OF THE COUNTRYWIDE LOAN

6.      At all times relevant to the Complaint and this action, Plaintiff had no income.  <u>See</u> Ex. 5, p. 40; Ex. 1, ¶ 19.

**A.      Plaintiff Had No Direct Contact with Countrywide**
**Prior to the Loan Closing**

7.      In or around late summer of 2006, Plaintiff and her husband Gerhard Hutter decided to refinance the mortgage on the Property.  <u>See</u> Ex. 5, pp. 17-18, 23.

8.      Plaintiff had no verbal conversation or communication with a Countrywide representative or employee prior to the closing of the Loan.  <u>Id.</u> at p. 24.

9.      Plaintiff did not review or sign any Loan related documents containing the name "Countrywide" and was not aware Countrywide was the lender prior to the Loan closing.  <u>Id.</u> at 25.

10.      Gerhard Hutter had no verbal conversation or communication with a Countrywide representative or employee prior to the closing of the Loan.  <u>See</u> Ex. 6, p. 25; <u>see also</u>, the Order, Ex. 10, at p. 27.

11.      Gerhard Hutter did not receive any documents from Countrywide nor did he submit any documents to Countrywide.  <u>See</u> Ex. 6, p. 26.

12. Plaintiff's husband had no knowledge of Countrywide's involvement in the Loan prior to closing. Id.

13. Therefore, Countrywide did not:

(a) Assure Plaintiff that refinancing would help her. See Ex. 1 at ¶ 57(b).

(b) Promise Plaintiff that the interest rate would be 1.5% fixed for the term of the Loan. Id. at 57 (d).

(c) Assure Plaintiff that housing prices would keep rising so that subsequent to closing on the Loan she could sell her house for a profit or refinance again. Id. at 57 (j).

(d) Assure Plaintiff that she did not need a lawyer at the Loan closing. Id. at 57 (k).

(e) Tell Plaintiff that refinancing would help her. Id. at 57 (n).

14. Prior to closing, Gerhard Hutter negotiated and discussed the Loan only with Todd Matthews. See Ex. 6 at pp. 28 and 39. Neither Todd Matthews nor Joseph Sciacca of Evolution Mortgage, Inc. ("Evolution") were agents or employees of Countrywide and indeed Countrywide never represented to Plaintiff or her husband that they were. See Ex. 10 at pp. 24-28.

15.     Countrywide did not instruct Evolution or Watermark to omit certain information when talking to borrowers or to maneuver borrowers into sub-prime or pay option loans. See Ex. 8 at pp. 131-132 and Ex. 9 at 159-160.

**B.      The Good Faith Estimate**

16.     Plaintiff admits receiving a Good Faith Estimate ("GFE") from Watermark Capital ("Watermark") prior to the closing of the Loan. See Ex. 5, pp. 19-20.

17.     This GFE, the "Watermark GFE," clearly identifies the "Loan Program" as "MTA Option Arm".  The Watermark GFE is attached as **Exhibit 15**.

18.     The Watermark GFE was the only GFE Plaintiff reviewed prior to the Loan closing. See Ex. 5, pp. 26-29.

19.     Plaintiff stated in her Memorandum in Opposition to BANA's motion for sanctions under Rule 11 that she received two additional GFE's from Evolution.  The Evolution GFE's, attached as **Exhibit 16,** identify the Loan program as "OPTION ARM" in all capital letters. See Order, Ex. 10 at p. 37 and D.E. 155, Exhibit I attached thereto.

20.     It is commonly understood that in mortgage parlance an "Arm" or "ARM" is an Adjustable Rate Mortgage.  Indeed, this Court has held that an ARM is "an adjustable rate mortgage." See Order, Ex. 10 at p. 14.

7

21.    Countrywide never sent to Plaintiff a GFE that stated that the interest rate of the proposed Loan would be 1.5%.  See Ex. 5, pp. 26-29.

**C.     Evolution Mortgage, Inc. Performed**
       **Settlement Services for the loan**

22.    Evolution performed broker services for the Loan.  See Ex. 8, p. 27.

23.    Evolution's broker services included verifying Plaintiff's employment and her outstanding loans, ordering an appraisal and title policy and scheduling the Loan closing.  Id. at p. 27-31.

24.    Also, Plaintiff signed, received, and returned a document permitting the bank at which she maintained a deposit account to release information to Evolution, in connection with Evolution settlement services.  See June 4, 2010 Hutter Aff. at ¶ 8 (D.E. 22-2).  A copy is attached as **Exhibit 17**.

**D.     Plaintiff Sought to, and Ultimately did, Submit**
       **only Minimal Information in Support or her Application for the Loan**

25.    Plaintiff's husband insisted that the Loan require minimal to no documentation from Plaintiff.  See Ex. 6, pp. 57-58, 64.

26.    The Loan was a "reduced documentation" stated income loan for which Plaintiff was not required to submit income verification documentation.  See Ex. 7 at p. 76-77.

27.     It was not improper for BANA to accept, without supporting documentation, the $38,500 monthly income amount listed in the loan application. See Seibel Decision, September 23, 2011, page 10, lines 19-23, a copy of which is attached as **Exhibit 18**.

28.     Before the Loan closing, Countrywide received information from the broker that Plaintiff's monthly income was $38,500, as later represented by Plaintiff to be true in her loan Application (defined below). See Ex. 7 at p. 87-89.

## THE CLOSING

29.     On December 11, 2006, Plaintiff and her husband attended a closing (the "Closing") for the subject Loan (the "Closing").

**A.      The Loan Application**

30.     Plaintiff admits signing a loan application at the Closing (the "Application"). See Ex. 5 at p. 38. The Application is attached as **Exhibit 19**.

31.     The Application states that Plaintiff had a monthly income of $38,500. Id. at p. 2.

32.     In fact, Plaintiff had no income for at least 2005, 2006 and 2007. Ex. 5 at p. 40. See also Plaintiff's Interrogatory response at ¶ 15, p. 8-9 attached here as **Exhibit 20**.

33.     The Application states that Plaintiff

represents to Lender…… that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of the information contained in this application may result in civil liability , including monetary damages to any person who may suffer any loss due to reliance on any misrepresentation that I have made on this application, and/or in criminal penalties including but not limited to fine or imprisonment or both under the provisions of Title 18 United State Code Sec. 1001 et seq. ….".

See Ex. 19 at p. 4.

34.     At the Closing, Plaintiff signed a Truth In Lending Disclosure Statement ("TILA") and a Pay Option Adjustable Rate Mortgage Loan Program Disclosure (the "Disclosure"). See Ex. 5, pp. 113, 119-120, Depo. Exhibits I and L.  A copy of the TILA and the Disclosure are attached collectively as **Exhibit 21**.

35.     Plaintiff received $110,790.17 in Loan proceeds as noted on line 303 of the HUD-1 Settlement Statement ("HUD-1").  A copy of the HUD-1, which she signed at the closing, is attached as **Exhibit 22.**

36.     To evidence receipt of the Loan proceeds from Countrywide, Plaintiff executed and delivered to Countrywide a promissory note labeled in bold, large font capital letters "**MONTHLY ADJUSTABLE RATE PAYOPTION NOTE**" (the "Note").  See Ex. 5, p. 257-258, Depo. Exhibit X.  A copy of the Note is attached as **Exhibit 23.**

37.     As collateral security for the repayment of all sums payable pursuant to the Note and the performance of all Borrower's obligations under said notes,

Borrower executed, acknowledged and delivered to Countrywide, a Consolidation, Extension and Modification Agreement ("CEMA") on the subject Property dated December 11, 2006. The CEMA contains the prior loan documents for the loans made by other lenders to Plaintiff which loans were refinanced by the Loan. Reference is made to such documents. See Affidavit of Jonathan Gershon (D.E. 12-2) and CEMA (part of D.E. 12-5) attached as **Exhibit 24**.

38.    None of the documents sent to Plaintiff prior to the closing, or that she signed at the closing, state that the interest rate for the Loan as proposed or consummated was 1.5% fixed for the entire 40 year term of the Loan. See Exs. 15-18, 19, 21-25.

**B.    Plaintiff Received Two Copies of
the Notice of Right to Cancel**

39.    At the Closing, Plaintiff signed and received two copies of the Notice of Right to Cancel ("NRC"). See Ex. 5, p. 121, Depo. Exhibits D1 and D2. Both NRC's are attached as **Exhibit 25.**

40.    Plaintiff acknowledges that it is her signature on both NRC documents and that the signatures are "different". Id.

## PLAINTIFF LACKS THE FINANCIAL CAPACITY TO RESCIND

      41.    Plaintiff admits that she and her husband had no income from 2005-2007. See ¶ 32 above. She was also unemployed in summer of 2013 and had no income at all. Ex. 5, pp. 128, 135, 451, 453. Her husband did not work either. Id., p. 452.

      42.    Plaintiff and her husband did not file tax returns from 2004-2013 and did not have any income in 2013, with the exception of social security income and a pension from Austria. See Ex. 6, pp. 8-10, 22-24.

      43.    Plaintiff lacks the financial capacity to tender the principal sum of the Loan. Id.

Dated:   New York, New York
        December 22, 2014

Respectfully submitted,

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
David I. Chenkin
Kenneth C. Rudd
BJ Finneran
Attorneys for Bank of America, N.A.,
successor by merger to defendant
Countrywide Bank, N.A.
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400

787508v2

12