David B. Chenkin
Kenneth C. Rudd
BJ Finneran
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400
(212) 753-0396 (fax)

Attorneys for Defendant Bank of America, N.A.,
as successor by merger to Countrywide Bank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>                                   Plaintiff,<br><br>                    - against -<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of<br>COUNTRYWIDE FINANCIAL<br>CORPORATION, WATERMARK CAPITAL,<br>INC. and EVOLUTION MORTGAGE, INC.,<br><br>                                   Defendants | Case No.:   09 CV 10092 (NSR)(LMS) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF BANK OF AMERICA, N.A.,
AS SUCCESSOR BY MERGER TO COUNTRYWIDE BANK, N.A**

**ZEICHNER ELLMAN & KRAUSE LLP**
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................ 2

ARGUMENT .................................................................................................... 3

POINT I    THE STANDARD FOR SUMMARY JUDGMENT ................................. 3

POINT II   THE TILA CLAIM FAILS AS A MATTER OF LAW ............................. 4

    A.   Plaintiff Acknowledges Receiving Two Copies Of The NRC ................... 4

    B.   Plaintiff Cannot Effectuate Rescission ...................................... 5

POINT III  THE GBL §349 CLAIM FAILS AS A MATTER OF LAW ..................... 7

    A.   Countrywide Did Not Communicate With Plaintiff .................................. 8

    B.   No Communication was Materially Deceptive or Misleading .................. 9

    C.   Countrywide's Actions Did Not Cause Plaintiff's Injuries ...................... 10

    D.   Plaintiff Has Not Been Injured As A Result of the GFE ........................ 13

POINT IV   THE CLAIM UNDER 12 U.S.C. § 2607(a)-(b) OF RESPA
            FAILS AS A MATTER OF LAW ............................................................. 14

POINT V    THIS COURT SHOULD GRANT BANA SUMMARY
            JUDGMENT ON EVOLUTION'S AND WATERMARK'S
            CROSS-CLAIMS ................................................................................... 16

CONCLUSION ................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Bonanno v. Sec. Atl. Mortg. Co.,
   No. 07-CV-4071, 2010 U.S. Dist. LEXIS 51593 (E.D.N.Y. May 26, 2010) ............................5

Cedeno v. IndyMac Bancorp, Inc.,
   No. 06 Civ. 6438, 2008 U.S. Dist. LEXIS 65337 (S.D.N.Y. August 25, 2008) ......................15

Demarest v. Ocwen Loan Servicing, LLC,
   481 Fed. Appx. 352 (9th Cir. 2012) ................................................................................6

Fiorenza v. Fremont Inv. & Loan,
   No. 08 civ. 858, 2008 U.S. Dist. LEXIS 47831, 10 (S.D.N.Y. June 19, 2008) ......................4

Galiano v. Fid. Nat'l Title Ins. Co.,
   684 F.3d 309 (2nd Cir. 2012) ..........................................................................................15

Karakus v. Wells Fargo Bank, N.A.,
   No. 09-cv-4739, 2013 U.S. Dist. LEXIS 87123 (E.D.N.Y. June 14, 2013) ............................5

Kruse v. Wells Fargo Home Mortg. Inc.,
   383 F.3d 49 (2nd Cir. 2004) ......................................................................................14, 15

Lawson v. Getty Terminals Corp.,
   866 F.Supp. 793 (S.D.N.Y. 1994) ....................................................................................3

Marcus v. AT&T Corp.,
   138 F.3d 46 (2nd Cir. 1998) .............................................................................................9

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986) .........................................................................................................3

Maurizio v. Goldsmith,
   230 F.3d 518 (2nd Cir. 2000) ........................................................................................7, 8

Midouin v. Downey Sav. and Loan Ass'n, F.A.,
   834 F. Supp.2d 95 (E.D.N.Y. 2011) ..................................................................................6

Nunes v. Wells Fargo Bank, NA,
   No. 10-CV-1270, 2013 U.S. Dist. LEXIS 38769 (E.D.N.Y. Mar. 20, 2013) ..........................6

**OTHER CASES**

Morrissey v. Nextel Partners, Inc.,
   22 Misc. 3d 1124(A), 880 N.Y.S.2d 874 (N.Y. Sup. Ct. 2009) ...........................................11

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA,
    85 N.Y.2d 20 (1995) ............................................................................................7, 13

Stutman v. Chemical Bank,
    731 N.E.2d 608 (N.Y. Ct. App. 2000) ........................................................9, 10, 13

**FEDERAL STATUTES**

12 U.S.C. § 2607(a) ........................................................................................................14

12 U.S.C. § 2607(a)-(b) ..................................................................................................14

12 U.S.C. § 2607(b) ........................................................................................................14

12 U.S.C. § 2607(c) ........................................................................................................14

15 U.S.C. § 1635(a) ..........................................................................................................4

15 U.S.C. § 1635(b) ..........................................................................................................6

15 U.S.C. § 1635(c) ..........................................................................................................5

15 U.S.C. § 1635(f) ...........................................................................................................4

**OTHER STATUTES**

New York General Business Law § 349 ...............................................................7, 9, 10, 13

**RULES**

Fed. R. Civ. P. 56 ..............................................................................................................3

Local Civil Rule 56.1 .......................................................................................................11

**OTHER AUTHORITIES**

12 C.F.R. § 226.23(a)-(b) .................................................................................................4

12 C.F.R. § 226.23(d)(4) ..................................................................................................6

Bank of America, N.A., as successor by merger to Countrywide Bank, N.A. ("BANA" or "Countrywide" as context requires) respectfully submits this memorandum of law in support of its summary judgment motion.

## <u>PRELIMINARY STATEMENT</u>

This action arises out of a $1,785,000 loan that Plaintiff obtained from Countrywide to refinance prior mortgages on her home.  The three remaining claims in this Action are all meritless and this Court should grant BANA summary judgment.

*First,* there is no material issue of fact that Plaintiff signed for and received two separate copies of her TILA notice of right to rescind her loan.  She admits it, and yet continued to prosecute the claim anyway.  Further, even if this Court permitted Plaintiff to go forward, and she succeeded at trial, she lacks the wherewithal to rescind, thereby raising serious doubts as to whether she has prosecuted the claim in good faith.

*Second,* there is no material question of fact that neither Plaintiff nor her husband had contact with Countrywide before closing, that no act of Countrywide was materially deceptive, and no act of Countrywide caused her any damage.  Indeed, there is no material question of fact that she was not damaged in any cognizable way.

*Third*, there is no material question of fact that Evolution Mortgage Inc. ("Evolution") actually performed settlement services in connection with the loan. Thus, under the clear law of this circuit, the fee paid to Evolution was proper.

*Fourth*, for the foregoing reasons this Court should dismiss the co-defendants' cross-claims against BANA.

## STATEMENT OF FACTS

The material undisputed facts are fully explained in the accompanying Statement of Material Facts about which there is no Genuine Issue (the "56.1 Stmt.").[1] In sum, Plaintiff sought the Loan to refinance the mortgage on her home in Bedford, New York.  56.1 Stmt., ¶ 7.  Her husband discussed and negotiated said Loan with a broker.  Id., ¶ 14.  Neither Plaintiff nor her husband knew that Countrywide was the lender until they appeared at the closing ceremony when they heard of Countrywide for the first time.  Id., ¶¶ 9, 12.  Although Plaintiff makes numerous allegations about misrepresentations of fact made to her in the period leading up to the closing, she and her husband acknowledge that neither of them ever spoke to Countrywide or received documents from Countrywide (id., ¶¶ 8, 10) and this Court has already determined that the brokers were not Countrywide's agents.  Id., ¶ 14.

At the closing of this $1,785,000 mortgage refinance loan, Plaintiff received approximately $110,000 in cash out proceeds.  Id., ¶ 35, Ex. 22.  At the time she applied for the Loan, Plaintiff had no income, although she signed a loan application representing to Countrywide that her monthly income was $38,500.  Id., ¶¶ 31, 32, Ex. 15, Ex. 20, ¶ 15.  She also currently has no income.  Id., ¶ 41-42.

---

[1]   Citations to exhibits refer to exhibits to the 56.1 Stmt. and capitalized terms herein are defined there.

# ARGUMENT

## POINT I

## THE STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Although the burden of demonstrating the absence of a material issue of fact lies initially with the movant, once satisfied, the burden shifts to the non-moving party to bring forward credible evidence to controvert the movant's Rule 56 showing. See, e.g., Lawson v. Getty Terminals Corp., 866 F.Supp. 793, 799-800 (S.D.N.Y. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). To defeat a motion for summary judgment, "[t]he non-moving party must come forward with specific facts showing there is a genuine issue for trial by 'a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lawson, supra at 800, quoting Celotex, supra. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As fully set forth below, there is no genuine dispute as to any material fact, and this Court should grant BANA summary judgment on all of Plaintiff's claims.

## POINT II

## THE TILA CLAIM FAILS AS A MATTER OF LAW

Plaintiff's claim for rescission of her mortgage loan, based on her alleged non-receipt of two copies of the December 11, 2006 Notice of Right to Cancel ("NRC") as required by TILA, fails for two independent reasons.  First, Plaintiff admittedly signed two copies of the NRC, acknowledging her receipt of the same.   Second, even if Plaintiff did not receive two such notices (which the undisputable evidence shows she did), Plaintiff lacks the ability to effectuate rescission by tendering the Loan's unpaid principal balance, thereby rendering the demand moot and evidencing a wish to waste the Court's time over a dispute which, by definition, cannot be material if she cannot effectuate the relief sought.

### A.      Plaintiff Acknowledges Receiving Two Copies Of The NRC

The Truth in Lending Act provides that, in circumstances such as these here, a lender must provide to the borrower two copies of the NRC, the right to rescind the mortgage loan transaction, which right expires on the third business day following the consummation of the transaction or the delivery of the rescission forms required under TILA together with a statement containing material disclosures required under TILA, whichever is later.  See 12 C.F.R. § 226.23(a)-(b); 15 U.S.C. § 1635(a).  If a borrower does not receive the NRC, the right to rescind the transaction extends for three years. See 15 U.S.C. § 1635(f); Fiorenza v. Fremont Inv. & Loan, No. 08 civ. 858, 2008 U.S. Dist. LEXIS 47831, 10 (S.D.N.Y. June 19, 2008).

4

A borrower's mere denial that she did not receive two NRCs does not give rise to an extended right to rescind.  Written acknowledgment of receipt creates a rebuttal presumption of the delivery of such notices.  15 U.S.C. §1635(c).  Further, a borrower's "bald denials of the statements he earlier adopted by signing his name [on Notice of Right to Cancel] do not create any issue for a fact-finder to resolve, and summary judgment for defendants is proper on this claim."  Bonanno v. Sec. Atl. Mortg. Co., No. 07-CV-4071, 2010 U.S. Dist. LEXIS 51593, 16 (E.D.N.Y. May 26, 2010).

Here, Plaintiff acknowledged her receipt of two NRCs, as evidenced by her signature on two separate copies of the NRC as well as her deposition testimony. Plaintiff's signature appears on *two separate copies* of the NRC below the statement: "The undersigned each acknowledge receipt of two copies of NOTICE OF RIGHT TO CANCEL…".  See 56.1 Stmt., ¶ 39, Ex. 25.  Further, Plaintiff in her deposition testimony acknowledged her signature on both NRC documents. See id., ¶ 40.  Thus, there is no material question of fact, and this Court should grant summary judgment in favor of BANA on Plaintiff's TILA claim for this reason alone.

**B.     Plaintiff Cannot Effectuate Rescission**

Further, if a borrower does have a valid right to rescind, "[e]quitable principles *also* require a borrower to tender the unpaid principal balance of the loan to the creditor before the borrower is entitled to rescission".  See Karakus v. Wells Fargo Bank, N.A., No. 09-cv-4739, 2013 U.S. Dist. LEXIS 87123, 5 (E.D.N.Y. June 14, 2013).

Rescission may occur as follows: within twenty days of receiving a notice of rescission, the creditor is to return any money or property and reflect termination of the security interest; when the creditor has met these obligations, the borrower then must tender the property.  15 U.S.C. §1635(b).  However, the statute expressly permits courts to modify the sequence of these events.  Id.; see also 12 C.F.R. §226.23(d)(4) (stating that the procedures for rescission "may be modified by court order").

If a court orders rescission, it may, in its equitable discretion, properly require a borrower to tender the loan proceeds prior to rescission.  Midouin v. Downey Sav. and Loan Ass'n, F.A., 834 F. Supp.2d 95, 106 (E.D.N.Y. 2011).  Indeed, numerous courts have granted summary judgment to lenders on borrowers' TILA claims seeking rescission because the borrowers failed to raise a genuine dispute of material fact that they could tender the proceeds of the loan.  See e.g. Demarest v. Ocwen Loan Servicing, LLC, 481 Fed. Appx. 352, 353 (9th Cir. 2012); see also Nunes v. Wells Fargo Bank, NA, No. 10-CV-1270, 2013 U.S. Dist. LEXIS 38769, 13-14 (E.D.N.Y. Mar. 20, 2013) (granting summary judgment on TILA rescission claim where plaintiff has failed provide any evidentiary support of her ability to tender loan principal).

Here, there is no genuine issue of material fact that Plaintiff cannot tender the $1,785,000 proceeds of the loan in the event the Court grants her rescission claim. Plaintiff was unemployed and had no income at the time of the Loan.  See 56.1 Stmt. ¶¶ 32, Ex. 19.  Indeed, neither Plaintiff nor her husband filed tax returns for the time period 2004-2013.  See id., ¶ 42.  Similarly, her husband's only income was from social

security and a pension.  See id.  There is no dispute of material fact that Plaintiff cannot effectuate rescission and has been unable to do so since the day she filed this action.  As such, this Court should grant summary judgment in favor of BANA.

## POINT III

## THE GBL §349 CLAIM FAILS AS A MATTER OF LAW

New York General Business Law §349 permits a right of action by a consumer who was damaged as a result of deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.  The section is aimed at wrongs against the consuming public.  Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA, 85 N.Y.2d 20, 24 (1995).  A plaintiff must demonstrate that the acts "have a broader impact on consumers at large.  Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute…  A prima facie case requires as well a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof."  Id. at 25.  The elements of a GBL §349 claim are "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2nd Cir. 2000).

**A.**      **Countrywide Did Not Communicate With Plaintiff**

Plaintiff makes a myriad of often contradictory allegations about promises made to her that led her to refinance prior mortgage loans and borrow $1,785,000 from Countrywide.  See 56.1 Stmt., Ex. 1, ¶ 57.  Both Plaintiff and her husband admit that they had no communications with Countrywide prior to the closing of the Loan, and indeed, they did not even know that Countrywide was the lender until they appeared at the closing.  See id., ¶¶ 8-12; Ex. 10 at p. 27.[2]  More specifically, Plaintiff admits that she did not have "any contact, conversation or communication with anyone from Countrywide".  See id., Ex. 5 at p. 24.  Further, she did not see loan documents containing the name "Countrywide" and was not even aware that Countrywide would be part of the Loan.  See id., Ex. 5 at 25.

Plaintiff's husband likewise admits that he had no verbal conversation or communication with, or receive any documents from, a Countrywide representative or employee prior to the closing of the Loan.  See 56.1 Stmt., ¶¶ 10-12.  Plaintiff's husband further admitted he "didn't even know that Countrywide was in the picture" prior to Loan closing.  Id., Ex. 6 at p. 25.  Thus, there is no material fact in dispute: Countrywide did not engage in any deceptive practice with an impact on consumers at large that caused Plaintiff any damages for the simple reason that it had no contact with Plaintiff.

---

[2]   This Court has already rejected Plaintiff's theories that broker(s) with whom Plaintiff or her husband may have been in contact were Countrywide's agents.  56.1 Stmt., Ex. 10, pp. 24-28.

**B.**     **No Communication was Materially Deceptive or Misleading**

No communication to Plaintiff was deceptive or misleading in a material way. In determining whether a representation or omission is a deceptive act, the test is whether such an act is "likely to mislead a reasonable consumer acting reasonably under the circumstances". Stutman v. Chemical Bank, 731 N.E.2d 608, 611-12 (N.Y. Ct. App. 2000) (quoting Oswego 85 N.Y.2d at 26, 647 N.E.2d 741 (1995)). "An act is deceptive within the meaning of [GBL § 349] only if it is likely to mislead a reasonable consumer." Marcus v. AT&T Corp., 138 F.3d 46, 64 (2nd Cir. 1998).

Here, although Plaintiff made numerous and sometimes contradictory factual assertions in support of her GBL §349 claim (see Ex. 10, at pp. 33-42), the heart of the claim seems to rest on the assertion that she was promised a 1.5% fixed rate loan. See 56.1 Stmt., Ex. 1, ¶ 57. This Court has already found the allegation that the proposed loan was to be at a fixed rate to be sanctionable in light of the clear language on the GFE (the document on which Plaintiff rests the allegation) that the loan was to be an adjustable rate loan. See id., Ex. 10, pp. 37-38. One broker's GFE described the loan as an "Arm" and the other as an "ARM." See id., ¶¶ 16-19, Exs. 15-16.[3] Those

---

[3]  Plaintiff has maintained that she received one GFE from broker Watermark Capital, Inc. ("Watermark"), which GFE described the loan as an "Arm." 56.1 Stmt., ¶¶ 16-18. Separately, Plaintiff, through counsel, admitted that she also received two GFE's from Evolution, which described the Loan as an "ARM." See id., ¶ 19, Ex. 16. Countrywide recognizes that it may have sent to Plaintiff a Good Faith Estimate based upon information provided to it by a broker. See id., Ex. 10 at p. 34. That, however, is not material as Plaintiff admits only to seeing the Watermark GFE. See id., ¶¶ 16-18. This Court should grant summary judgment in favor of BANA for this reason alone.

documents clearly disclose an adjustable rate mortgage, as this Court has already determined. See id., Ex. 10, Order, pp. 37-38. Further, this Court further observed that:

> Although the Good Faith Estimate indicates Plaintiff's loan would have a 1.5% interest rate, the "Loan Program" appearing at the top right of the page identifies the loan as an "MTA Option Arm," (Pl.'s Ex. Q), an ARM being an adjustable rate mortgage, *see* Bd. of Governors of the Fed. Reserve Sys., *Interest-Only Mortgage Payments & Option-Payment ARMs—Are They for You*? 1, 3-4, 12 (2006), *available at* http://www.fdic.gov/consumers/consumer/interest-only/mortgage_interestonly.pdf. Moreover, the Good Faith Estimate requires the loan applicant to sign and thereby acknowledge "receipt of the booklet 'Settlement Costs' and if applicable the Consumer Handbook on ARM Mortgages." Plaintiff and her husband's 2013 testimony that she was promised a fixed-rate loan does not create a genuine dispute of material fact by contradicting her own 2009 allegation, repeated three more times in subsequent amended complaints, that Plaintiff was promised an adjustable rate loan.

Id. at p.14.

Thus, not only did Countrywide not mislead Plaintiff in any material way, but the very gravamen of her claim of misleading representations simply fails as the documents were not deceptive in any material way to a reasonable consumer.

**C.     Countrywide's Actions Did Not Cause Plaintiff's Injuries**

Plaintiff has failed to raise a material question of fact that an act of Countrywide caused her an actual injury.  A GBL § 349 claim "must show that the defendant's 'material deceptive act' caused the claimed injury.  Stutman, 731 N.E.3d at 612 (emphasis added and citation omitted).  In the context of GBL § 349, "causation refers

to the link between an alleged deceptive practice and an actual injury sustained by a consumer as a result of such a practice." Morrissey v. Nextel Partners, Inc., 22 Misc. 3d 1124(A), 880 N.Y.S.2d 874 (N.Y. Sup. Ct. 2009).

Preliminarily, Plaintiff avers no theory in her Complaint of how she was damaged by any claimed deceptive act, asserting only she is entitled to "actual damages." 56.1 Stmt., Ex. 1, *ad damnum* clause. The only alleged change in Plaintiff's circumstances was that she alleges that she was deceived into refinancing a loan she could not afford (because she had no income) with the Loan, which she could not afford either. She does not assert how this damages her, putting aside the immaterial allegation that she thought she would be offered a loan at 1.5%.[4]

There is no material question of fact that no act by Countrywide (and certainly no materially deceptive act) *caused* her to refinance or caused her any damage at all. Indeed, she decided to borrow the money, and came to the closing, never having known that Countrywide was the lender. See 56.1 Stmt., ¶¶ 8-9. At the closing, she was presented with a promissory note labeled in bold, large-font, capital letters: "MONTHLY ADJUSTABLE RATE PAYOPTION NOTE". See id., ¶ 34, Ex. 19. She signed the Note and other related closing documents, which clearly disclosed the terms of the Loan. In addition, Plaintiff also received at the Loan closing a Pay Option Adjustable Rate Mortgage Loan Program Disclosure. See id., ¶ 34, Ex. 21.

---

[4]   Other theories of damages have already been rejected by this Court. See Rule 56.1 Stmt., the Order, Ex 10 at pp. 18-19.

A reasonable consumer – and Plaintiff had significant experience relating to mortgage loan transaction having closed on at least three prior adjustable-rate mortgage loans – would understand the clear disclosure she faced. See id., ¶ 5, Exs. 11-14.

Indeed, it was Plaintiff *herself* that distorted her ability to repay the Loan by misstating her monthly income on the Loan Application.   Plaintiff admits that she signed the Loan Application. See id., ¶ 30.  The Application states that Plaintiff:

> represents to Lender…… that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of the information contained in this application may result in civil liability , including monetary damages to any person who may suffer any loss due to reliance on any misrepresentation that I have made on this application, and/or in criminal penalties including but not limited to fine or imprisonment or both under the provisions of Title 18 United State Code Sec. 1001 et seq. ….".

See id., Ex. 19, p. 4.  In the Loan Application, Plaintiff stated that her monthly income was $38,500.  See id. at p. 2.  In fact, Plaintiff had no income at all. See id., ¶ 32, Ex. 20, ¶ 15.

To extent that Plaintiff argues otherwise, it was proper for Countrywide to accept, without supporting documentation, the $38,500 monthly income amount listed in the Loan Application. [5]  Indeed, Plaintiff sought a loan that permitted her to submit

---

[5]   As Judge Seibel explained in her September 23, 2011 decision: "…offering a no-doc loan is in itself not improper conduct by the lender nor is just accepting the representations in plaintiff's application. Indeed, that is what plaintiff knew Countrywide would do when she applied for a no-doc loan." See 56.1 Stmt., Ex. 18, page 10, lines 19-23.

minimal to no documentation (see id., ¶ 25), which enabled her to obtain the Loan despite her knowledge that she lacked the resources to repay it.

Accordingly, the GBL claims fails for the additional reason that Plaintiff cannot demonstrate a causal link between Countrywide's actions and any injury.

**D.      Plaintiff Has Not Been Injured As A Result of the GFE**

Finally, Plaintiff must prove "actual" injury to recover under GBL § 349. Stutman, 731 N.E.2d at 612; Oswego, 85 N.Y.2d at 26 (a plaintiff seeking compensatory damages under GBL § 349 must show "actual, although not necessarily pecuniary harm").   Plaintiff's speculative theories of damages have already been rejected by the Court (see 56.1 Stmt., Ex. 10 at pp. 18-19), and indeed she suffered no injury.

Here, Plaintiff suffered no damage at all, much less any caused by Countrywide. Refinancing her mortgage did not damage her. She already owed most of the principal she borrowed before she refinanced and received an additional $110,000.00 in cash. See id., ¶ 35, Ex. 22.  Indeed, the Complaint is devoid of any allegation of the injury caused by the allegedly materially deceptive conduct.  In fact, the Complaint merely states that the Court should award her "actual damages…in amounts to be determined at trial".  See Ex. 1, *ad damnum* clause.

For all these reasons, the GBL claim fails as against Countrywide and should be dismissed.

13

## POINT IV

### THE CLAIM UNDER 12 U.S.C. § 2607(a)-(b) OF RESPA
### FAILS AS A MATTER OF LAW

RESPA prohibits fees for the referral of real estate settlement business as well as fees for real estate settlement purposes not actually performed.  Specially, 12 U.S.C. § 2607(a) (business referrals) provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."  Moreover, 12 U.S.C. § 2607(b) (splitting charges) provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed."

Notwithstanding the above, it is the unambiguous law in this Circuit that so long as a fee is for settlement services actually rendered, it is a lawful fee.  Kruse v. Wells Fargo Home Mortg. Inc., 383 F.3d 49, 56 (2nd Cir. 2004).  RESPA's safe harbor provision explicitly provides: "Nothing in this statute shall be construed as prohibiting...the payment to any person of a bona fide salary or compensation or other payment for goods of facilities actually furnished or for services actually performed...".  12 U.S.C. § 2607(c).  Where a payment is for services actually performed, it is within RESPA's safe harbor and a plaintiff has failed to state a claim under RESPA.  See

Cedeno v. IndyMac Bancorp, Inc., No. 06 Civ. 6438, 2008 U.S. Dist. LEXIS 65337, *9-10 (S.D.N.Y. August 25, 2008).

Here, Plaintiff's RESPA claims for alleged kickbacks and fee-splitting are essentially overcharge claims and should therefore be dismissed as a matter of law. Although Plaintiff alleged that BANA gave Evolution a $13,387.50 yield spread premium under an agreement that the brokers would refer borrowers to BANA, there is no material issue of fact that the allegation is false. See Ex. 1, ¶ 69.

Further, Plaintiff admits that both brokers rendered services in connection with the mortgage loan's origination. Id., Ex. 1, ¶¶ 8, 19, 34, 35, 57. "[W]ithout specific facts as to the alleged kickback scheme, plaintiffs' § 8 RESPA claim [§2607] effectively becomes a claim for overcharge" and therefore is not actionable pursuant to Kruse. See Galiano v. Fid. Nat'l Title Ins. Co., 684 F.3d 309, 314 (2nd Cir. 2012) (citing Kruse); Kruse, 383 F.3d at 56 ("We conclude that section 8(b) clearly and unambiguously does not extend to overcharges.").

Further, there is no material issue of fact that Evolution did indeed perform settlement services. These services included verifying Plaintiff's employment and her outstanding loans, ordering an appraisal of the subject property, ordering a title policy in connection with the Loan and scheduling the Loan closing. See 56.1 Stmt., ¶¶ 22-24. Also, Plaintiff signed, received and returned a document permitting the bank at which she maintained a deposit account to release information to Evolution in connection with Evolution's settlement services. See id., Ex. 17, ¶ 8. Therefore,

Plaintiff's further allegation that Evolution accepted monies for acting merely as, in Plaintiff's words, "a figurehead broker" similarly fails to support a RESPA claim.

For all these reasons, the Court should grant BANA summary judgment on Plaintiff's RESPA claim and both cross-claims.

## POINT V

### THIS COURT SHOULD GRANT BANA SUMMARY JUDGMENT ON EVOLUTION'S AND WATERMARK'S CROSS-CLAIMS

Evolution and Watermark's cross-claims are meritless.    Each of Evolution and Watermark assert in their respective formulaic pleadings that to the extent each is found liable to Plaintiff, that each should have judgment over and against BANA.  56.1 Stmt. Ex. 3 ¶ 35, Ex. 4 ¶ 37.

As shown above, there is no material question of fact that Countrywide did not engage in any culpable conduct.   Indeed, Countrywide did not instruct the brokers to act in a deceptive way.  See 56.1 stmt. ¶ 15.  Consequently, no legal or factual basis exists by which Evolution and Watermark may have judgment over and against BANA.

## CONCLUSION

For all the foregoing reasons, this Court should grant summary judgment in favor of BANA on all of Plaintiff's claims and the cross-claims.

Dated:   New York, New York
         December 22, 2014

                                    ZEICHNER ELLMAN & KRAUSE LLP

                    By: _____
                                    David B. Chenkin
                                    Kenneth C. Rudd
                                    BJ Finneran
                                    Attorneys for Defendant
                                    Bank of America, N.A., as successor by merger to
                                      Countrywide Bank, N.A.
                                    1211 Avenue of the Americas
                                    New York, New York 10036
                                    (212) 223-0400

788450

17