David B. Chenkin
Kenneth C. Rudd
BJ Finneran
ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400
(212) 753-0396 (fax)

Attorneys for Defendant Bank of America, N.A.,
as successor by merger to Countrywide Bank, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>         Plaintiff,<br><br>  - against -<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of COUNTRYWIDE FINANCIAL CORPORATION, WATERMARK CAPITAL, INC. and EVOLUTION MORTGAGE, INC.,<br><br>         Defendants. | Case No.:  09 CV 10092 (NSR)(LMS) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR SUMMARY JUDGMENT OF BANK OF AMERICA, N.A.,
<u>AS SUCCESSOR BY MERGER TO COUNTRYWIDE BANK, N.A</u>**

ZEICHNER ELLMAN & KRAUSE LLP
1211 Avenue of the Americas
New York, New York 10036
Telephone: (212) 223-0400

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

POINT I     THE TILA CLAIM FAILS AS A MATTER OF LAW .............................. 1

    A.     Plaintiff's Bald And Contradictory Denial Does Not Create An Issue of Fact That She Received Two Copies Of The NRC ....................... 1

    B.     Plaintiff Admits She Received A Meaningful Disclosure Of Her Right To Cancel ................................................................................................. 2

    C.     Equity Compels Tender Of The Unpaid Principal Balance Before Rescission ............................................................................................................. 3

POINT II     BANA DID NOT VIOLATE GBL SECTION 349 ...................................... 4

    A.     Countrywide Did Not Mislead Plaintiff About Watermark ......................... 4

    B.     Countrywide Did Not Deceive Plaintiff About Her Loan's Interest Rate ............................................................................................................................... 5

    C.     Plaintiff's Own Income Amount in The Application Did Not Mislead Her .................................................................................................................. 7

    D.     Plaintiff Has Not Been Injured As A Result of Deceptive Practice ............ 9

POINT III     PLAINTIFF DOES NOT DENY THAT THE BROKERS PERFORMED SETTLEMENT SERVICES, AND THUS THE RESPA CLAIM SHOULD BE DISMISSED ............................................ 9

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Bonanno v. Sec. Atl. Mortg. Co.,
   No. 07-CV-4071, 2010 U.S. Dist. LEXIS 51593 (E.D.N.Y. May 26, 2010)..........................2

Cooper v. First Gov't Mortg. & Investors Corp.,
   238 F. Supp. 2d 50 (D.D.C. 2002)..........................2

Demarest v. Ocwen Loan Servicing, LLC,
   481 Fed. Appx. 352 (9th Cir. 2012)..........................3

Eveland v. Star Bank, NA,
   976 F. Supp. 721 (S.D. Ohio 1997)..........................3

Gambardella v. G. Fox & Co.,
   716 F.2d 104 (2nd Cir. 1983)..........................2

Hayrioglu v. Granite Capital Funding, LLC,
   794 F. Supp. 2d 405 (E.D.N.Y. 2011)..........................7, 8

In re Underwood,
   66 B.R. 656 (Bankr. W.D. Va. 1986)..........................2

In re: Hopkins,
   372 B.R. 734 (Bankr. E.D. Pa. 2007)..........................2

In re: Jones,
   298 B.R. 451 (Bankr. D. Kan. 2003)..........................2

In re: Mourer,
   309 B.R. 502 (W.D. Mich. 2004)..........................2

In re: Walker,
   183 B.R. 47 (Bankr. W.D.N.Y. 1995)..........................8

Kahraman v. Countrywide Home Loans, Inc.,
   886 F. Supp. 2d 114 (E.D.N.Y. 2012)..........................3

Karakus v. Wells Fargo Bank, N.A.,
   941 F. Supp. 2d 318 (E.D.N.Y. 2013)..........................3, 8

Karakus v. Wells Fargo Bank, N.A.,
   No. 09-cv-4739, 2013 U.S. Dist. LEXIS 87123 (E.D.N.Y. June 14, 2013)..........................3

Kruse v. Wells Fargo Home Mortg. Inc.,
   383 F.3d 49 (2nd Cir. 2004)..........................9

Maurizio v. Goldsmith,
 230 F.3d 518 (2nd Cir. 2000) ...................................................................................4

New York v. St. Francis Hosp.,
 94 F. Supp. 2d 423 (S.D.N.Y. 2000) ........................................................................1

Nunes v. Wells Fargo Bank, NA,
 No. 10-CV-1270, 2013 U.S. Dist. LEXIS 38769 (E.D.N.Y. Mar. 20, 2013)............3

Sutton v. Countrywide Home Loans, Inc.,
 417 Fed. Appx. 833 (11th Cir. 2009) ......................................................................10

Turner v. GMAC,
 180 F.3d 451 (2nd Cir. 1999) ...................................................................................2

**OTHER CASES**

Stutman v. Chemical Bank,
 731 N.E.2d 608 (N.Y. Ct. App. 2000)...................................................................7, 9

**FEDERAL STATUTES**

15 U.S.C. § 1635(b)................................................................................................................3

15 U.S.C. § 1635(c)................................................................................................................2

**OTHER STATUTES**

Banking Law 38.7(a)(2) .........................................................................................................5

**RULES**

Local Civ. R. 56.1 (d)..........................................................................................................1, 2

Fed. R. Civ. P. 11................................................................................................................2, 5

Fed. R. Civ. P. 56 (c)(4) .........................................................................................................1

GBL 349 ........................................................................................................................passim

**REGULATIONS**

12 C.F.R. § 226.23(d)(4) ........................................................................................................3

24 C.F.R. § 3500.7..................................................................................................................6

## PRELIMINARY STATEMENT

Because Plaintiff[1] largely admits that all material facts are undisputed,[2] she resorts to unsupportable arguments and inferences in a vain attempt to avoid summary judgment. Not only does she continue to misrepresent undisputed documentary facts to this Court, she simply ignores clear authority supporting summary judgment. She received two copies of the NRC and received meaningful disclosure; Countrywide engaged in no deceptive practices and Plaintiff was not damaged by the Loan; and Countrywide's fee to Evolution was admittedly for actual services rendered. Accordingly, this Court should grant BANA summary judgment.

## ARGUMENT

### POINT I

### THE TILA CLAIM FAILS AS A MATTER OF LAW

**A.   Plaintiff's Bald And Contradictory Denial Does Not Create An Issue of Fact That She Received Two Copies Of The NRC**

As explained in the Moving Memorandum, written acknowledgment of receipt creates a rebuttable presumption of the delivery of such notices and a borrower's "bald denials of the statements he earlier adopted by signing his name [on Notice of Right to Cancel] do not create

---

[1] Capitalized terms used herein are defined in BANA's Memorandum of Law in support of its summary judgment motion (the "Moving Memorandum").

[2] Plaintiff purports to deny or qualify several assertions in her response to BANA's 56.1 Statement. However, she fails to authenticate most of the documentary evidence she submits, and the Court should therefore not consider it. See Fed. R. Civ. P. 56 (c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); Local Civ. R. 56.1 (d) (denials in Rule 56.1 responses must be followed by citations to admissible evidence). See also New York v. St. Francis Hosp., 94 F. Supp. 2d 423, 426 (S.D.N.Y. 2000) ("documents must be attached to and authenticated by an appropriate affidavit…). Even if the Court considers Plaintiff's irrelevant and inadmissible contentions, it should still grant BANA summary judgment.

any issue for a fact-finder to resolve, and summary judgment for [lender] is proper on this claim." Bonanno v. Sec. Atl. Mortg. Co., No. 07-CV-4071, 2010 U.S. Dist. LEXIS 51593, 16 (E.D.N.Y. May 26, 2010); see also 15 U.S.C. §1635(c).

Here, Plaintiff's denial that she took home two copies of the NRC does not necessarily contradict her admission at her deposition and the documentary evidence that she *received* and signed *two separate* NRCs, each of which states, "The undersigned each acknowledge receipt of two copies of NOTICE OF RIGHT TO CANCEL...". See 56.1 Stmt., ¶¶ 39, 40, Ex. 25.[3] No more is required. Further, in none of the cases relied upon by Plaintiff did the borrowers admit to receiving at least one copy of their right to cancel *and* signing two acknowledgments of their right to cancel.[4] Thus, there is no material question of fact, and this Court should grant summary judgment in favor of BANA on Plaintiff's TILA claim for this reason alone.

B.      **Plaintiff Admits She Received A Meaningful Disclosure Of Her Right To Cancel**

The law in this Circuit is that TILA "does not require perfect disclosure, but only disclosure which clearly reveals to consumers the cost of credit." Gambardella v. G. Fox & Co., 716 F.2d 104, 118 (2nd Cir. 1983) (citation omitted); see also Turner v. GMAC, 180 F.3d 451, 457 (2nd Cir. 1999) (TILA's purpose is to require "meaningful disclosure," not "more

---

[3] Regardless, this Court has held that Plaintiff acted "willfully" in violating Rule 11 of the Federal Rules of Civil Procedure. Rule 56.1 Stmt. ¶4, Ex. 10, p. 45. Her demonstrated willingness to dissemble calls all her factual assertions into question, particularly those that are contradicted by documentary evidence.

[4] See In re Underwood, 66 B.R. 656, 662 (Bankr. W.D. Va. 1986) (borrowers alleged they neither signed nor received any copies of the right to rescind); Cooper v. First Gov't Mortg. & Investors Corp., 238 F. Supp. 2d 50, 52-52, 64-65 (D.D.C. 2002) (where there was only *one* signed acknowledgment that plaintiff received two notices of her right to rescind); In re: Jones, 298 B.R. 451, 455 (Bankr. D. Kan. 2003) (same). Plaintiff misstates the holdings and facts in several of the case she cites: In In re: Mourer, 309 B.R. 502, 507 (W.D. Mich. 2004), the Court *overturned* the bankruptcy court and held that even though the requisite notice was delivered several weeks after the closing, borrowers' right to rescind was not extended to three years; and In re: Hopkins, 372 B.R. 734, 751 (Bankr. E.D. Pa. 2007) involved borrowers' denial of receipt of notice of a loan's variable rate feature, not their right to cancel.

disclosure."). Therefore, Courts in the Second Circuit have dismissed TILA rescission claims where the borrower admits that she received *one* copy of a proper notice to rescind. See e.g. Karakus v. Wells Fargo Bank, N.A., 941 F. Supp. 2d 318, 333-36 (E.D.N.Y. 2013); Kahraman v. Countrywide Home Loans, Inc., 886 F. Supp. 2d 114, 121 (E.D.N.Y. 2012).

As such, Eveland v. Star Bank, NA, 976 F. Supp. 721, 726 (S.D. Ohio 1997) relied upon by Plaintiff is inapposite as the borrower there alleged that the lender failed to provide a mortgagor any notice *whatsoever* of her right to cancel until after she commenced litigation, whereas here Plaintiff by her own admission signed and received two copies of the NRC and was therefore aware of her right to cancel the Loan. See 56.1 ¶ 39, Ex. 25; ¶ 24, Ex. 17, ¶ 14. Accordingly, there is no material issue of fact that Plaintiff was provided meaningful disclosure of her right to rescind and therefore her TILA claim should be dismissed.

C.   **Equity Compels Tender Of The Unpaid Principal Balance Before Rescission**

Even if a borrower has a valid right to rescind, "[e]quitable principles *also* require a borrower to tender the unpaid principal balance of the loan to the creditor before the borrower is entitled to rescission". See Karakus v. Wells Fargo Bank, N.A., No. 09-cv-4739, 2013 U.S. Dist. LEXIS 87123, 5 (E.D.N.Y. June 14, 2013) (citations omitted). Both the relevant statute and regulation permit courts to require the borrower to tender the unpaid principal balance prior to rescission. See 15 U.S.C. §1635(b); 12 C.F.R. §226.23(d)(4). Numerous courts have granted summary judgment on TILA rescission claims because the borrowers failed to raise a genuine dispute of material fact that they could tender the proceeds of the loan. See e.g. Demarest v. Ocwen Loan Servicing, LLC, 481 Fed. Appx. 352, 353 (9th Cir. 2012); Nunes v. Wells Fargo Bank, NA, No. 10-CV-1270, 2013 U.S. Dist. LEXIS 38769, 13-14 (E.D.N.Y. Mar. 20, 2013).

3

Plaintiff lacks the ability to tender the loan proceeds (see 56.1 Stmt. ¶ 32, Ex. 20; pp. 8-9; ¶ 42), a fact that the opposition does not even attempt to rebut. Indeed, Plaintiff admits that "all times relevant to this Complaint and this action, Plaintiff had no income." See Pl. 56.1 Stmt., ¶ 6. Therefore, requiring BANA to remove its lien prior to Plaintiff's tendering the Loan proceeds is both specious and commercially untenable.

## POINT II

## BANA DID NOT VIOLATE GBL SECTION 349

As fully set forth below, Plaintiff makes a series of speculative and unsubstantiated arguments in support her GBL § 349 claim which this Court has already rejected. In order to prevail on a GBL § 349 claim, a plaintiff must, among other things, prove that a defendant committed an act or was engaged in a practice that was misleading in a material way. See Maurizio v. Goldsmith, 230 F.3d 518, 521 (2nd Cir. 2000). Being unable to overcome the undisputed material fact that Countrywide did not communicate with Plaintiff and therefore could not have deceived her or caused her harm (Moving Memorandum, Point III A.), Plaintiff conjures several theories, hoping something will stick. None do.

A.  **Countrywide Did Not Mislead Plaintiff About Watermark**

Plaintiff's unpleaded assertion that it was a deceptive practice for Countrywide to "let" Watermark work on the Loan (Opp. Memorandum at 15) is vacuous nonsense. The Court rejected that very assertion when it denied Plaintiff leave to amend her complaint to plead that very allegation. See 56.1 Stmt., ¶ 24, Ex. 10, pp. 19-20. Further, Plaintiff fails to cite, and BANA is unaware of any authority, supporting the proposition that a lender violates GBL §349 by making a loan when the loan was worked on by an unlicensed broker, particularly when that

4

fact was known, as it was here, to the borrower. See Finneran Decl., ¶ 2, Ex. 26, pp. 283, 357-59; 56.1 Stmt. ¶ 24, Ex. 10, p. 20. Plaintiff testified "...Todd Mathews told my husband that [Watermark] couldn't broker the loan in New York because they couldn't get a license in New York." See Finneran Decl., ¶ 2, Ex. 26, p. 283. She later testified: "...there was an issue about Matthews not being able to broker a loan in New York because his company that he worked for didn't have a broker's license." Id., at p. 358. Thus even if Watermark violated New York's Banking Law 38.7(a)(2) due to its involvement in the Loan origination, such a violation cannot sustain a GBL § 349 claim against Countrywide.

B.     <u>Countrywide Did Not Deceive Plaintiff About Her Loan's Interest Rate</u>

The Court has already rejected Plaintiff's theory that the GFE could have misled her into believing that she was to receive a 1.5% fixed rate loan. See 56.1 Stmt. ¶ 24 Ex. 10, pp. 37-38. As the Court explained at page 14 in its Rule 11 Decision:

> Plaintiff and her husband's 2013 testimony that she was promised a fixed-rate loan does not create a genuine dispute of material fact by contradicting her own 2009 allegation, repeated three more times in subsequent amended complaints, that Plaintiff was promised an adjustable rate loan.

In addition, the GFE in question was not prepared and sent by Countrywide, but rather by Evolution, which Plaintiff concedes is not an agent of Countrywide. See Opp. Memorandum, p. 11. Faced with these inconvenient facts, Plaintiff resorts to unsubstantiated speculation by claiming that the 1.5% interest rate "originated" with Countrywide. In support of this canard Plaintiff mischaracterizes the deposition testimony of Countrywide's witness, Lanisa Jenkins. A review of the testimony cited by Plaintiff reveals that Ms. Jenkins, in response to Plaintiff's question, merely explains how the 1.5% figure appeared in the GFEs provided by the Broker

5

Defendants[5]. Plaintiff's extrapolation from this testimony is unfounded hyperbole and a gross and disingenuous distortion of the testimony.

Further, Plaintiff simply dissembles in asserting that a GFE prepared and sent by Countrywide promised a 1.5% interest rate. Opp. Memorandum at pp. 12-14. Not only is a good faith estimate just an "estimate, as dollar amount or range, of each charge in section L of the HUD-1...and that the borrower will normally pay and incur at or before settlement based upon common practice in the locality of the mortgage property." (24 C.F.R. § 3500.7 (2006)), and not a promise, but Plaintiff's assertion that the Countrywide GFE, which she never received, inaccurately disclosed a 1.5% rate is knowingly false. Countrywide produced the only GFE it prepared that it found in its files. See Finneran Decl., ¶¶ 3-5, Ex. 27 at pp. 15-16, 127; Ex. 28. Tellingly, she fails to cite to it. That GFE apparently reflects the terms of a different proposed loan (a conventional fixed rate loan at 6.125%) and could not have possibly misled Plaintiff into believing that her loan would have a 1.5% fixed rate as that figure appears nowhere on the document.

Further, this Court has determined that the information in the Broker Defendants' GFEs could not have misled Plaintiff into believing she would receive a 1.5% fixed rate. See 56.1 Stmt., ¶ 24, Ex. 10, pp. 14, 37-38. Finally, Plaintiff's phantom GFE theory is not consistent with her and her husband's testimony that they were not even aware that Countrywide was "in the picture" prior to the Loan's closing. See id., ¶¶ 4, 8-12; Ex. 5 at pp. 24-25; Ex. 6 at pp. 25-26; Ex. 10 at p. 27. For all these reasons, there is no genuine issue of fact that Countrywide *did not* mislead Plaintiff about her Loan's interest rate.

---

[5] Tellingly, Plaintiff included pages 39 and 41 of Ms. Jenkins's transcript but intentionally omitted page 40 in which she testified that the GFEs were produced, and sent to Countrywide, by the Broker Defendants.

C. **Plaintiff's Own Income Amount in The Application Did Not Mislead Her**

In determining whether a representation or omission is a deceptive act under GBL § 349, the test is whether such an act is "likely to mislead a reasonable consumer acting reasonably under the circumstances". Stutman v. Chemical Bank, 731 N.E.2d 608, 611-12 (N.Y. Ct. App. 2000). In support of a GBL § 349 claim, "plaintiff cannot plausibly assert that he believed [a lender's] misstatement of his own income, or that [a lender's] alleged failure to request documentation of his income mislead [sic] him about his own income level." Hayrioglu v. Granite Capital Funding, LLC, 794 F. Supp. 2d 405, 411 (E.D.N.Y. 2011). To the extent that a plaintiff argues that a lender's "extension of credit to the plaintiff was an implied assertion that she could afford to repay the loan, a reasonable consumer would not be misled by such a statement." Id.

Plaintiff's speculation, based upon the Wholesale Broker Agreement with Evolution, that Countrywide drafted the Application with an inaccurate income figure is both not a reasonable inference from the facts and irrelevant. The Application is not a "closing document" as contemplated by Section 3.3 of the Agreement as it is not necessary for closing, as are a note and mortgage. Rather, it is needed to permit Countrywide to decide whether to lend. Section 1.1 of the same Agreement cited by Plaintiff requires the broker to, among other things:

> (e) gather all information and documentation needed to complete the Loan application including applicable information required by applicable state and federal law and any regulations related thereto;
> (f) assist Applicant in filling out all Loan applications;[6]

---

[6] A copy of the Wholesale Broker Agreement, addressed but not authenticated by Plaintiff was attached to her opposition as Exhibit A. That document was previously submitted and considered in connection with a prior motion. See D.E. 151-15.

7

As such, the entire premise of Plaintiff's argument is false and the Court should disregard it.

Moreover, Plaintiff cannot plausibly assert that she believed the Application misled her about her own income level and that misstatement caused her damage as she, better than anyone, knew her own income. See Hayrioglu, 794 F. Supp. 2d at 411 (applying same analysis in dismissing GBL §349 claim). Plaintiff knew or should have known that her monthly income of zero is substantially less than any mortgage payment. Further, "a reasonable consumer [under GBL §349] is responsible for reading and familiarizing herself with the terms of an agreement she freely enters into." Karakus, 941 F. Supp. 2d at 342.[7] It was not deceptive for Countrywide to require Plaintiff to sign the Application at the closing nor is the Application rendered deceptive due to Plaintiff's failure to read it.

Finally, Plaintiff's citing the sale of the Loan and a settlement between Countrywide-related entities (but not Countrywide) and the trustee is a red herring.[8] Whether a loan is sold or maintained in the originator's portfolio is not deceptive to a potential borrower. See id. at 343 ("While plaintiffs cite various accusations, lawsuits and fines levied against [lender]...they fail to plead facts that actually demonstrate how [lender's] conduct *in this lending* would have been "likely to mislead a reasonable consumer acting reasonably under the circumstances.").

---

[7] Plaintiff's reliance on In re: Walker, 183 B.R. 47 (Bankr. W.D.N.Y. 1995) is misplaced. In that case, a borrower who was *defending* himself against a claim that he had filed a falsified loan application argued that he had not actually read the document, and thus lacked the requisite "intent to deceive." That holding has no bearing on a situation such as this one, in which Plaintiff is *asserting* a GBL claim against Countrywide based on its alleged misrepresentation. Also inapplicable are the other cases that the opposition cites in support of the broad and quite frankly obvious statement that "Caselaw has allowed borrowers to sue lenders under the Deceptive Practices Act." See Opp. Memorandum p. 22.

[8] While Plaintiff purports to submit into evidence a settlement agreement by and among The Bank of New York as Trustee and Countrywide-related entities, Plaintiff fails to authenticate this document and therefore it should be disregarded. See n. 2, supra. Even if the Court were to consider the settlement agreement, it is unequivocal in its statement that "The Bank of America Parties and Countrywide parties have denied and continue to deny and all wrongdoing of any kind whatsoever..." and therefore the agreement cannot be construed as BANA's admission of any wrongdoing concerning Plaintiff's Loan. See Pl. Opp. Ex. P, ¶ 20, pp. 41-42.

D. **Plaintiff Has Not Been Injured As A Result of Deceptive Practice**

As discussed in the Moving Memorandum, Plaintiff must prove "actual" injury to recover under GBL § 349. Stutman, 731 N.E.2d at 612. Initially, Plaintiff was not damaged because she could not afford any loan. Further, Plaintiff's claim that she is entitled to damages in the amount of interest she must pay, calculated as the difference between the interest on the 1.5% fixed rate loan she falsely claims she was promised and 8.125%, which she falsely claims is the rate of the Loan, fundamentally misrepresents facts to the Court. According to the Note, 8.125% was merely an introductory interest rate and the rate adjusted almost immediately after the first month. The Loan's interest rate reset at 3.275% above the twelve-month average of the annual yields on Treasury securities. See 56.1 Stmt., ¶ 36, Ex. 23, § 2. The index for the variable rate loan that was refinanced was based on LIBOR (see id., ¶ 5, Ex. 13, § 4), making a proper computation of this theory of cost difference complex. Indeed, she has not shown that the Loan was more expensive that the loans it refinanced.[9] Accordingly, Plaintiff has failed to establish damages recoverable under GBL § 349. For this and the numerous reasons discussed above, the GBL claim fails as against Countrywide and should be dismissed.

## POINT III

## PLAINTIFF DOES NOT DENY THAT THE BROKERS PERFORMED SETTLEMENT SERVICES, AND THUS THE RESPA CLAIM SHOULD BE DISMISSED

It is the unambiguous law in this Circuit that so long as a fee is for settlement services actually rendered, it is a lawful fee. Kruse v. Wells Fargo Home Mortg. Inc., 383 F.3d 49, 56 (2nd Cir. 2004). In addition, even where a broker allegedly misrepresented borrower's income

---

[9] BANA reserves all rights to challenge the admissibility of any computation or method of computation of damages.

and otherwise provided deceptive settlement services, a lender is still entitled to pay the broker a fee. See Sutton v. Countrywide Home Loans, Inc., 417 Fed. Appx. 833, 835-36 (11th Cir. 2009).

Here, Plaintiff's lack of a denial should be interpreted as an admission that the Broker Defendants provided settlement services in connection with the Loan. Therefore, the fees that were paid to them cannot support a RESPA claim. Moreover, Plaintiff's attempt to characterize two of the settlement services performed as illegitimate—the preparation of the GFE and the Application—fails to save her RESPA claim as the test is whether settlement services were actually performed, not how they were performed. Accordingly, this Court should dismiss Plaintiff's RESPA claim against BANA.

## CONCLUSION

For all the foregoing reasons, this Court should grant summary judgment in favor of BANA on all of Plaintiff's claims and the cross-claims as unopposed.

Dated: New York, New York
February 6, 2015

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
David B. Chenkin
Kenneth C. Rudd
BJ Finneran
Attorneys for Defendant
 Bank of America, N.A.,
 as successor by merger to
 Countrywide Bank, N.A.
1211 Avenue of the Americas
New York, New York 10036
(212) 223-0400

10

## **CERTIFICATE OF SERVICE**

ANTHONY ROSARIO, hereby certifies pursuant to 28 U.S.C. 1746 and under penalty of perjury that on the 6th day of February, 2015, I served a true copy of the within **DEFENDANT BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO COUNTRYWIDE. N.A.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** upon the attorney in the manner indicated below at the place indicated below:

### *By FIRST CLASS MAIL*

    STEPHEN A. KATZ, P.C.
    Attorneys for Plaintiff
    111 John Street, Suite 800
    New York, New York 10038-3180

Dated: February 6, 2015

                                                                    Anthony Rosario