Michael Janus
JANUS LAW, PC
825 East Gate Blvd. - Suite 308
Garden City, New York 11530
(516) 683-1200
(516) 320-8949 (fax)

Attorneys for Evolution Mortgage, Inc..

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER, | Case No.: 09 CV 10092 (NSR) |
| Plaintiff, | |
| - against - | |
| COUNTRYWIDE BANK, N.A., a subsidiary of COUNTRYWIDE FINANCIAL ORPORATION, WATERMARK CAPITAL, INC. and EVOLUTION MORTGAGE, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT OF EVOLUTION MORTGAGE, INC.,**

JANUS LAW, P.C.
825 East Gate Blvd. - Suite 308
Garden City, New York 11530
Telephone: (516) 683-1200

1

The Defendant, EVOLUTION MORTGAGE, INC. (EVOLUTION), respectfully submits this memorandum of law in support of its motion to dismiss the Third Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action arises out of a $1,785,000 loan that Plaintiff obtained from Countrywide BANK, N.A ("**BANA**") to refinance prior mortgages on her home. The two remaining claims in this Action against EVOLUTION are all meritless and this Court should grant EVOLUTION summary judgment.

*First,* there is no material question of fact that no act of EVOLUTION was materially deceptive, and no act of EVOLUTION caused Plaintiff any damage. Indeed, there is no material question of fact that HUTTER was not damaged in any cognizable way.

*Second,* there is no material question of fact that Evolution Mortgage Inc. ("Evolution") actually performed settlement services in connection with the loan. Thus, under the clear law of this circuit, the fee paid to Evolution was proper.

## STATEMENT OF FACTS

Submitted with this memorandum and in support of this motion is one declaration, that of Michael Janus, The material undisputed facts are fully explained in the accompanying Statement of Material Facts about which there is no Genuine Issue (the "56.1 Stmt.").[1] In sum, Plaintiff sought the Loan to refinance the mortgage on her home in Bedford, New York. 56.1 Stmt., ¶ 7. The Plaintiff never spoke with EVOLUTION and her husband

---

[1] Citations to exhibits refer to exhibits to the 56.1 Stmt. and capitalized terms herein are defined there.

2

discussed and negotiated all of the terms of said Loan and he never spoke with EVOLUTION. Id., ¶ 8

At the closing of this $1,785,000 mortgage refinance loan, Plaintiff received approximately $110,000 in cash out proceeds. Id., ¶ 25, Ex. 11. At the time she applied for the Loan, Plaintiff had no income, although she signed a loan application representing to Countrywide that her monthly income was $38,500. Id., ¶¶ 20 & 21. Ex. 9, Ex. 18, ¶ 24.

## ARGUMENT

### POINT I    THE STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Although the burden of demonstrating the absence of a material issue of fact lies initially with the movant, once satisfied, the burden shifts to the non-moving party to bring forward credible evidence to controvert the movant's Rule 56 showing. See, e.g., Lawson v. Getty Terminals Corp., 866 F.Supp. 793, 799-800 (S.D.N.Y. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). To defeat a motion for summary judgment, "[t]he non-moving party must come forward with specific facts showing there is a genuine issue for trial by 'a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lawson, supra at 800, quoting Celotex, supra. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As fully set forth below, there is no genuine dispute as to any material fact, and this Court should grant EVOLUTION summary judgment on all of Plaintiff's claims.

## POINT II    THE GBL §349 CLAIM FAILS AS A MATTER OF LAW

New York General Business Law §349 permits a right of action by a consumer who was damaged as a result of deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service. The section is aimed at wrongs against the consuming public. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA, 85 N.Y.2d 20, 24 (1995). A plaintiff must demonstrate that the acts "have a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute… A prima facie case requires as well a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." Id. at 25. The elements of a GBL §349 claim are "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2nd Cir. 2000).

### A.    No Communication was Materially Deceptive or Misleading

No communication to Plaintiff was deceptive or misleading in a material way. In determining whether a representation or omission is a deceptive act, the test is whether such an act is "likely to mislead a reasonable consumer acting reasonably under the circumstances". Stutman v. Chemical Bank, 731 N.E.2d 608, 611-12 (N.Y. Ct. App. 2000) (quoting Oswego 85 N.Y.2d at 26, 647 N.E.2d 741 (1995)). "An act is deceptive within the meaning of [GBL § 349]

only if it is likely to mislead a reasonable consumer." <u>Marcus v. AT&T Corp.</u>, 138 F.3d 46, 64 (2nd Cir. 1998).

Here, although Plaintiff made numerous and sometimes contradictory factual assertions in support of her GBL §349 claim (<u>see</u> Ex. 8, at pp. 33-42), the heart of the claim seems to rest on the assertion that she was promised a 1.5% fixed rate loan. <u>See</u> 56.1 Stmt., Ex. 1, ¶ 57. This Court has already found the allegation that the proposed loan was to be at a fixed rate to be sanctionable in light of the clear language on the GFE (the document on which Plaintiff rests the allegation) that the loan was to be an adjustable rate loan. <u>See id.</u>, Ex. 8, pp. 37-38. In the case at bar the Plaintiff admits having no conversation or communication with EVOLUTION concerning the terms of the loan, so therefore could not have been deceived or mislead in any way. In fact, as counsel for the Plaintiff is well aware, from prior cases of which he was the attorney, it has been held, that there is no meritorious cause of action. Putting aside that there is no showing that the allegations are towards consumers at large, the Plaintiff admits that she signed the loan application which verified her incomes was $38,5000 as stated. Even if that figure were false, as she now claims, she should have been well aware of it and could not have been misled.

Similar to the cases of <u>Aydin v. Opteum Financial Services, LLC.</u>, 2014 WL 2612516, which cited <u>Hayrioglu v. Granite Capital Funding, LLC</u>, 794 F.Supp.2d 405 (E.D.N.Y.2011), Hutter could not have relied on the alleged misrepresentations regarding her income, because she was well aware that she had no income and no income existed, regardless of the amount set forth. In fact, Hutter, just like Mrs. Aydin was fully aware of her monthly income and cannot have reasonably relied upon a misstatement that grossly exaggerated her own earnings. Counsel for Plaintiff should be well aware of those cases, since he was Plaintiff's counsel on them.

5

In the case at bar, Plaintiff was fully aware that she had no monthly income and cannot claim to have reasonably relied upon what she now asserts is a misstatement that grossly exaggerated her own earnings. Especially when it stated her monthly income was $38,5000 when in actuality it was zero. The facts in this case are similar to those in <u>Karakus v. Wells Fargo Bank, N.A.</u>, 941 F.Supp.2d 318, 343–44 (E.D.N.Y.2013), another case brought by Plaintiff's counsel. In this case, it is clear that the payments were beyond her means. As the Court cited in <u>Karakus</u>, a "reasonable consumer" should know the state of her own finances and whether or not she can afford a certain monthly loan payment. The documents Wells Fargo provided to the Karakuses at closing made clear what these monthly amounts would be. (*See* McKenney Decl., Exhs. J, L (describing the loans' total amounts, finance charges, interest rates, monthly payments, and the final balloon payment for the home equity loan)). In the case at bar, Hutter signed the Truth in Lending Statement that detailed this amounts. <u>See</u> Ex. 10. A borrower who simply accepts another party's assertions that she will be able to afford clearly stated monthly fees acts unreasonably if she cannot, in fact, afford those payments. *See* <u>Patterson v. Somerset Invs. Corp.</u> 96 A.D.3d at 817, 946 N.Y.S.2d 217 (rejecting a DPA claim because "the terms of the subject mortgage loan were fully set forth in the loan documents, and ... no deceptive act or practice occurred"); <u>Hayrioglu,</u> 794 F.Supp.2d at 413 ("[T]he fact that the plaintiff sought and received a loan he could not afford does not mean that he can now proceed on a Section 349 claim against the party that made his mistake possible."). What is interesting is that Mr. Katz was also Plaintiff's counsel in the *Patterson* case, and therefore should be very familiar with the law and should not have commenced this litigation, or at least not this cause if action.

In the case at bar, as in *Patterson* it has been demonstrated that the terms of the subject mortgage loan were fully set forth in the loan documents, and that no deceptive act or practice

6

occurred in this case (*see Morales v AMS Mtge. Servs., Inc.*, 69 AD3d 691, 693 [2010]).  Just as in *Patterson*, the plaintiff's claim that she did not read the documents before executing them is unavailing, since a party who signs a document without any valid excuse for having failed to read it is "conclusively bound" by its terms (*Gillman v Chase Manhattan Bank*, 73 NY2d 1, 11 [1988]; *see KMK Safety Consulting, LLC v Jeffrey M. Brown Assoc., Inc.*, 72 AD3d 650, 650-651 [2010]; *Ahmed v Getty Petroleum Mktg., Inc.*, 12 AD3d 385, 386 [2004]; *Sofio v Hughes*, 162 AD2d 518, 519-520 [1990]).  As in *Patterson,* , the documentary evidence submitted by EVOLUTION conclusively established that the plaintiff has no cause of action pursuant to General Business Law § 349.

**B.      Evolution's Actions Did Not Cause Plaintiff's Injuries**

Plaintiff has failed to raise a material question of fact that an act of Evolution caused her an actual injury.  A GBL § 349 claim "must show that the defendant's 'material deceptive act' caused the claimed injury.  Stutman, 731 N.E.3d at 612 (emphasis added and citation omitted).  In the context of GBL § 349, "causation refers to the link between an alleged deceptive practice and an actual injury sustained by a consumer as a result of such a practice." Morrissey v. Nextel Partners, Inc., 22 Misc. 3d 1124(A), 880 N.Y.S.2d 874 (N.Y. Sup. Ct. 2009).

Preliminarily, Plaintiff avers no theory in her Complaint of how she was damaged by any claimed deceptive act, asserting only she is entitled to "actual damages."  56.1 Stmt., Ex. 1, *ad damnum* clause.  The only alleged change in Plaintiff's circumstances was that she alleges that she was deceived into refinancing a loan she could not afford (because she had no income) with the Loan, which she could not afford either.  Ironic how she claims she was deceived, yet she never spoke to anyone about the terms of the loan except for her husband, who would therefore be the only one that may have deceived her.  She does not assert how this damages her, putting

7

aside the immaterial allegation that she thought she would be offered a loan at 1.5%.[2] Additionally, the loan she refinanced was also an adjustable rate loan as evidenced above.

There is no material question of fact that no act by Evolution (and certainly no materially deceptive act) *caused* her to refinance or caused her any damage at all. Indeed, she decided to borrow the money, and voluntarily came to the closing. At the closing, she was presented with a promissory note labeled in bold, large-font, capital letters: "MONTHLY ADJUSTABLE RATE PAY OPTION NOTE". See id., ¶ 26, Ex. 12. She signed the Note and other related closing documents, which clearly disclosed the terms of the Loan. In addition, Plaintiff also received at the Loan closing a Pay Option Adjustable Rate Mortgage Loan Program Disclosure. See id., ¶ 24, Ex. 10. A reasonable consumer – and Plaintiff had significant experience relating to mortgage loan transaction having closed on at least three prior adjustable-rate mortgage loans – would understand the clear disclosure she faced. See id., ¶ 5, Exs. 9-14.

Accordingly, the GBL claims fails for the additional reason that Plaintiff cannot demonstrate a causal link between Evolution's actions and any injury.

**C.   Plaintiff Has Not Been Injured As A Result of the GFE**

Finally, Plaintiff must prove "actual" injury to recover under GBL § 349. Stutman, 731 N.E.2d at 612; Oswego, 85 N.Y.2d at 26 (a plaintiff seeking compensatory damages under GBL § 349 must show "actual, although not necessarily pecuniary harm"). Plaintiff's speculative theories of damages have already been rejected by the Court (see 56.1 Stmt., Ex. 8 at pp. 18-19), and indeed she suffered no injury.

L

Here, Plaintiff suffered no damage at all, much less any caused by Evolution. Refinancing her mortgage did <u>not</u> damage her. She already owed most of the principal she borrowed before she refinanced and received an additional $110,000.00 in cash. <u>See</u> id., ¶ 35, Ex. 11. Indeed, the Complaint is devoid of any allegation of the injury caused by the allegedly materially deceptive conduct. In fact, the Complaint merely states that the Court should award her "actual damages…in amounts to be determined at trial". <u>See</u> Ex. 1, *ad damnum* clause.

For all these reasons, the GBL claim fails as against Evolution and should be dismissed.

### POINT III   THE CLAIM UNDER 12 U.S.C. § 2607(A)-(B) OF RESPA FAILS AS A MATTER OF LAW

Plaintiff alleges that EVOLUTION and BANA violated the Real Estate Settlement Procedure Act (RESPA) which prohibits unearned fees. Where a payment is for services actually performed, it is within RESPA's safe harbor and a plaintiff has failed to state a claim under RESPA. <u>See</u> <u>Cedeno v. IndyMac Bancorp, Inc.</u>, No. 06 Civ. 6438, 2008 U.S. Dist. LEXIS 65337, *9-10 (S.D.N.Y. August 25, 2008).

Here, Plaintiff's RESPA claims for alleged kickbacks and fee-splitting are essentially overcharge claims and should therefore be dismissed as a matter of law. Although Plaintiff alleged that Evolution received from BANA a $13,387.50 yield spread premium under an agreement that the brokers would refer borrowers to BANA, there is no material issue of fact that the allegation is false. <u>See</u> Ex. 1, ¶ 69.

Further, Plaintiff admits that both brokers rendered services in connection with the mortgage loan's origination. <u>Id.</u>, Ex. 1, ¶¶ 8, 19, 34, 35, 57. "[W]ithout specific facts as to the alleged kickback scheme, plaintiffs' § 8 RESPA claim [§2607] effectively becomes a claim

9

for overcharge" and therefore is not actionable pursuant to Kruse. See Galiano v. Fid. Nat'l Title Ins. Co., 684 F.3d 309, 314 (2nd Cir. 2012) (citing Kruse); Kruse, 383 F.3d at 56 ("We conclude that section 8(b) clearly and unambiguously does not extend to overcharges.").

Further, there is no material issue of fact that Evolution did indeed perform settlement services. These services included verifying Plaintiff's employment, via a letter from her CPA and her outstanding loans, ordering an appraisal of the subject property, ordering a title policy in connection with the Loan and scheduling the Loan closing. See 56.1 Stmt., ¶¶ 16-18. Also, Plaintiff signed, received and returned a document permitting the bank at which she maintained a deposit account to release information to Evolution in connection with Evolution's settlement services. See id., Ex. 16 ¶ 8. Therefore, Plaintiff's further allegation that Evolution accepted monies for acting merely as, in Plaintiff's words, "a figurehead broker" similarly fails to support a RESPA claim.

## CONCLUSION

For all the foregoing reasons, this Court should grant summary judgment in favor of EVOLUTION on all of Plaintiff's claims and the cross-claims.

Dated:   Garden City, New York
         February 11, 2015

                                JANUS LAW, PC

                                By: _____
                                Michael Janus
                                Attorneys for Defendant
                                Evolution Mortgage, Inc.
                                825 East Gate Blvd.-Suite 308
                                Garden City, New York 11530
                                (516) 683-1200