Michael Janus
JANUS LAW, PC
825 East Gate Blvd. - Suite 308
Garden City, New York 11530
(516) 683-1200
(516) 320-8949 (fax)

Attorneys for Evolution Mortgage, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>                              Plaintiff,<br><br>- against -<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of COUNTRYWIDE FINANCIAL CORPORATION, WATERMARK CAPITAL, INC. and EVOLUTION MORTGAGE, INC.,<br><br>                              Defendants. | Case No. 09 CV 10092 (NSR)(LMS) |

### STATEMENT OF MATERIAL FACTS ABOUT WHICH THERE IS NO GENUINE ISSUE SUBMITTED BY EVOLUTION MORTGAGE, INC..

Evolution Mortgage, Inc. by its attorneys, Janus Law, P.C. pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, respectfully submits this Statement of Material Facts about which there is no Genuine Issue.

## THE ACTION

1. On or about November 15, 2011, Plaintiff Nance Hutter ("Plaintiff") filed a Third Amended Complaint (the "Complaint"). The Complaint makes allegations concerning a $1,785,000. Pay Option Adjustable Rate Mortgage loan (the "Loan") Plaintiff obtained from Countrywide on or about December 11, 2006, which Loan was secured by a mortgage on her home at 175 Hickory Kingdom Road Bedford, New York ("the Property"). A true and accurate copy of the Complaint is attached as **Exhibit 1** (and can be found at Docket Entry ("D.E.") 49.)

2. A true and accurate copy of EVOLUTION'S Answer with Cross Claims (DE 58), filed on January 3, 2012, is attached as **Exhibit 2**.

3. True and accurate copies of the answers with cross claims of defendants COUNTRYWIDE BANK, N.A., a subsidiary of COUNTRYWIDE FINANCIAL CORPORATION (hereinafter " BANA"). and Watermark Capital, Inc are attached as **Exhibits 3 and 4.**

4. For the convenience of the Court, attached are true and accurate excerpts of the following deposition transcripts and orders:

    (a) Deposition of Plaintiff dated June 19, 21, 26 and July 22, 2013 as **Exhibit 5**.

    (b) Deposition of Gerhard Hutter dated October 15, 2013, as **Exhibit 6**.

(c) Deposition of Joseph Sciacca dated August 19, 2013 as **Exhibit 7**.

(d) The Court's Memorandum Opinion and Order (D.E. 158) dated August 22, 2014 (the "Order") as **Exhibit 8**.

### PLAINTIFF'S BORROWING HISTORY

5. As has been pointed out in the motion by BANA, the Plaintiff was no stranger to adjustable rate loans. See Exhibits 11-14 of BANA's Rule 56.1 Statement

### CIRCUMSTANCES AND EVENTS LEADING UP TO THE CLOSING OF THE COUNTRYWIDE LOAN

6. At all times relevant to the Complaint and this action, Plaintiff had no income. See **Ex. 5,** p. 40; **Ex. 1,** ¶ 19.

A. **Plaintiff Had No Direct Communication with Evolution Regarding The terms of the Loan Prior to the Loan Closing**

7. In or around late summer of 2006, Plaintiff and her husband Gerhard Hutter decided to refinance the mortgage on the Property. **See Ex. 5**, pp. 17-18, 23.

8. Plaintiff testified that she had no verbal conversation or communication with anyone from EVOLUTION prior to the closing of the Loan. **See Ex. 5** pages 24, 89, 235, 236, 238 and 245. In fact she herself actually only had one

3

conversation/communication regarding this loan and it was with Todd Matthews whom is not a party to this lawsuit and he definitely was not an employee or agent of EVOLUTION. See **Ex. 5** Pages 239-240 and page 257. Plaintiff also never had any representations made to her concerning the terms of the loan by EVOLUTION See **Ex. 5** pages 238 and 239. She definitely never had any personal conversation with anyone at EVOLUTION See **Ex. 5** at page 245. In fact, other than that one alleged conversation with Todd Matthews, the only person she had conversations with concerning this loan was her Husband. See **Ex. 5** Page 244. Her Husband had all of the conversations See **Ex. 5** at page 257. In fact, the first person she communicated with about this loan was her husband and never spoke with anyone from EVOLUTION regarding this loan. A copy of Plaintiff's Response to EVOLUTION'S first set of interrogatories is annexed hereto as **Ex. 18.** See responses to demands 1&2. According to the Plaintiff, other than signing a document to release information regarding Citibank accounts, Plaintiff had no contact or communication with EVOLUTION. In fact, from the beginning of this litigation she has stated that she never had any contact with Evolution regarding this loan. See Para 6 of **Ex. 16**

    9. It is evidently clear, that the Plaintiff, who brought this action never spoke or had any direct contact with EVOLUTION or its employees or agents. Any alleged communication, representations, etc. were made by and/or to her husband and the Court has already denied Plaintiff's attempt to Amend the Complaint to have him deemed her agent. See **Ex. 8.**

10. Therefore, Evolution did not:

(a) Assure Plaintiff that refinancing would help her. See Ex. 1 at ¶ 57(b).

(b) Promise Plaintiff that the interest rate would be 1.5% fixed for the term of the Loan. Id. at 57 (d).

(c) Assure Plaintiff that housing prices would keep rising so that subsequent to closing on the Loan she could sell her house for a profit or refinance again. Id. at 57 (j).

(d) Assure Plaintiff that she did not need a lawyer at the Loan closing. Id. at 57 (k).

(e) Tell Plaintiff that refinancing would help her. Id. at 57 (n).

11. Prior to closing, Gerhard Hutter negotiated and discussed the Loan only with Todd Matthews. See **Ex. 6 at** pp. 28 and 39 and Todd Matthews was not an agent of Evolution and nor did Plaintiff assert he was.

12. Since Plaintiff concedes that she herself had no communication whatsoever with anyone from EVOLUTION concerning the subject loan it is impossible and frivolous to claim she was deceived. In fact, the only deception was committed by her by signing the loan application attesting that her monthly income was $38,500.00 and taking out the loan, knowing full well she had no income or ability to repay it. As will be pointed out in the accompanying memorandum of law, Plaintiff cannot make out s prima

5

facie showing of a violation of the N.Y. GBS. LAW § 349 and the necessary elements to succeed under such a claim.

**B.     The Good Faith Estimate**

13.     Plaintiff admits receiving a GFE from Evolution. The Evolution GFE's, attached as **Ex. 16,** identify the Loan program as "OPTION ARM" in all capital letters. See Order **Ex. 8** at p. 37 and D.E. 155, Exhibits H& I attached thereto

14.     It is commonly understood that in mortgage parlance an "Arm" or "ARM" is an Adjustable Rate Mortgage. Indeed, this Court has held that an ARM is "an adjustable rate mortgage." See Order, **Ex. 8** at p. 14.

15.     It is commonly understood that in mortgage parlance an "Arm" or "ARM" is an Adjustable Rate Mortgage. Indeed, this Court has held that an ARM is "an adjustable rate mortgage." See Order, **Ex. 8** at p. 14.

**C.     Evolution Mortgage, Inc. Performed Settlement Services for the loan**

16.     Evolution performed broker services for the Loan. See **Ex. 7,** p. 27.

17.     Evolution's broker services included verifying Plaintiff's employment (with letter from her CPA) and her outstanding loans, ordering an appraisal and title policy and scheduling the Loan closing. **Id.** at p. 27-31.

18. Also, Plaintiff signed, received, and returned a document permitting the bank at which she maintained a deposit account to release information to Evolution, in connection with Evolution settlement services. See June 4, 2010 Hutter Aff. at ¶ 8 (D.E. 22-2, a copy which is attached as **Ex. 16**.

## THE CLOSING

19. On December 11, 2006, Plaintiff and her husband attended a closing (the "Closing") for the subject Loan (the "Closing").

A. **The Loan Application**

20. Plaintiff admits signing a loan application at the Closing (the "Application"). See Ex. 5 at p. 38. The Application is attached as **Ex. 9**.

21. The Application states that Plaintiff had a monthly income of $38,500. Id. at p. 2.

22. In fact, Plaintiff had no income for at least 2005, 2006 and 2007. Ex. 5 at p. 40. See also Plaintiff's Interrogatory response at ¶ 24, p. 10 attached here as **Ex. 18**.

23. The Application states that Plaintiff

> represents to Lender...... that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of the information contained in this application may result in civil liability, including monetary

7

> damages to any person who may suffer any loss due to reliance on any misrepresentation that I have made on this application, and/or in criminal penalties including but not limited to fine or imprisonment or both under the provisions of Title 18 United State Code Sec. 1001 et seq. ....".

See Ex. 9 at p. 4.

24. At the Closing, Plaintiff signed a Truth In Lending Disclosure Statement ("TILA") and a Pay Option Adjustable Rate Mortgage Loan Program Disclosure (the "Disclosure"). See Ex. 5, pp. 113, 119-120, Depo. Exhibits I and L. A copy of the TILA and the Disclosure are attached collectively as **Ex. 10**.

25. Plaintiff received $110,790.17 in Loan proceeds as noted on line 303 of the HUD-1 Settlement Statement ("HUD-1"). A copy of the HUD-1, which she signed at the closing, is attached as **Ex. 11.**

26. To evidence receipt of the Loan proceeds from Countrywide, Plaintiff executed and delivered to Countrywide a promissory note labeled in bold, large font capital letters **"MONTHLY ADJUSTABLE RATE PAYOPTION NOTE"** (the "Note"). See Ex. 5, p. 257-258, Depo. Exhibit X. A copy of the Note is attached as **Ex. 12**

27. As collateral security for the repayment of all sums payable pursuant to the Note and the performance of all Borrower's obligations under said notes, Borrower executed, acknowledged and delivered to Countrywide, a Consolidation, Extension and Modification Agreement ("CEMA") on the subject Property dated

December 11, 2006. The CEMA contains the prior loan documents for the loans made by other lenders to Plaintiff which loans were refinanced by the Loan. Reference is made to such documents. <u>See</u> Affidavit of Jonathan Gershon (D.E. 12-2) and CEMA (part of D.E. 12-5) attached as **Ex. 13**.

28. None of the documents sent to Plaintiff prior to the closing, or that she signed at the closing, state that the interest rate for the Loan as proposed or consummated was 1.5% fixed for the entire 40 year term of the Loan. See Exs. 9-15.

Dated: Garden City, New York
February 10, 2015

Respectfully submitted,

JANUS LAW, PC

By: _____
Michael Janus
Attorneys for Evolution Mortgage, Inc.
825 East Gate Blvd. – Suite 308
Garden City, New York 11530
(516) 683-1200