John T. Serio
LAW OFFICE OF JOHN T. SERIO

Old Country Road- Suite 420
Mineola, NY 11501
(516) 248-5317
(516) 294-5348 (fax)

Attorneys for Watermark Capital Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>         Plaintiff,<br><br>   - against -<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of<br>COUNTRYWIDE FINANCIAL<br>CORPORATION, WATERMARK CAPITAL,<br>INC. and EVOLUTION MORTGAGE, INC.,<br><br>         Defendant. | Case No.:  09 CV 10092 (NSR)(LMS) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT OF WATERMARK CAPITAL INC.**

**LAW OFFICE OF JOHN T. SERIO**
114 Old Country Road - Suite 420
Mineola, New York 11501
Telephone: (516) 248-5317

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT ................................................................................................... 3

POINT I       THE STANDARD FOR SUMMARY JUDGMENT .................................. 3

POINT II      THE GBL §349 CLAIM FAILS AS A MATTER OF LAW ..................... 7

      A.    No Communication was Materially Deceptive or Misleading .................... 9

      B.    Watermark's Actions Did Not Cause Plaintiff's Injuries ........................... 10

      C.    Plaintiff Has Not Been Injured As A Result of the GFE ........................... 13

POINT III   Watermark did not violate New York Banking Law sections 589-599

CONCLUSION ............................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Aydin v. Opteum Financial services, LLC.,
    2014 WL 2612516 ...................................................................................................8,9

Celotex Corp. v. Catrett,
    477 U.S. 317 ........................................................................................................ 2,3

Havrioglu v. Granite Capital funding, LLC.,
    794 F.Supp.2d 405 (E.D.N.Y. 2011) ......................................................................8,9

Karakus v. Wells Fargo Bank, N.A.,
    No. 09-cv-4739, 2013 U.S. Dist. LEXIS 87123 (E.D.N.Y. June 14, 2013) ........................8,10

Lawson v. Getty Terminals Corp.,
    866 F.Supp. 793 (S.D.N.Y. 1994) ..........................................................................2,3

Marcus v. AT&T Corp.,
    138 F.3d 46 (2nd Cir. 1998).................................................................................4,5

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)...........................................................................................2

Maurizio v. Goldsmith,
    230 F.3d 518 (2nd Cir. 2000)................................................................................3

**OTHER CASES**

Ahmed v. Getty Petroleum Mktg. Inc.,
    12 AD3d 385 ......................................................................................................9

Gillman v. Chase Manhatten,
    73 NY2d 1 ..........................................................................................................9

KMK safety Consulting, LLC v. Jeffrey M. Brown Assoc., Inc.
    72 AD3d 650 ......................................................................................................9

Morales v. AMS Mtge Servs., Inc., ,
    69 AD3d 691 ......................................................................................................9

Morrissey v. Nextel Partners, Inc.,
    22 Misc. 3d 1124(A), 880 N.Y.S.2d 874 (N.Y. Sup. Ct. 2009)...............................6

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA,
    85 N.Y.2d 20 (1995) ......................................................................................3,4,9

Patterson v. Somerset Invs. Corp.,
    96 AD2 814, 946 NYS2d 217 ...................................................................................8,9

Sofio v. Hughes,
    162 AD2d 518 ...........................................................................................................9

Stutman v. Chemical Bank,
    731 N.E.2d 608 (N.Y. Ct. App. 2000) .................................................................4,6,9

## FEDERAL STATUTES

18 U.S.C. § 1001 ...............................................................................................................8,9

## OTHER STATUTES

New York General Business Law § 349 .......................................................................1,3,4,6,9,10

New York Banking Law §§589-599 ...........................................................................1.10,11

New York Banking Law §590.2(b) ............................................................................ 10,11

## RULES

Fed. R. Civ. P. 56.a .........................................................................................................2

Local Civil Rule 56.1 ...................................................................................................3,6,11

Watermark Capital Inc., ("WATERMARK") respectfully submits this memorandum of law in support of its summary judgment motion.

## PRELIMINARY STATEMENT

This action arises out of a $1,785,000 loan that Plaintiff obtained from Countrywide to refinance prior mortgages on her home. The plaintiff now has two causes of action remaining, i.e., GBL §349 deceptive practices and second, violating §§ 589 through 599 of the New York Banking Law, brokering a mortgage in NYS without being properly licensed. These two claims are utterly meritless and this Court should grant WATERMARK summary judgment.

*First,* there is no material question of fact in dispute as to whether these defendant's materially deceived the plaintiff concerning the contents of the loan at issue. Additionally, in spite of the truth or falsity of the plaintiff's claim, there is zero evidence to suggest that anything these moving defendants may have done resulted in the plaintiff being damaged in any fashion. Indeed, there is no dispute that this plaintiff was not damaged in any cognizable way. Finally, §349 of the GBL is not applicable when considering a private dispute between contracting parties. Alas, §349 applies only under circumstances in which the alleged deceptive practices are targeted at consumers at large. Simply stated, that has not occurred here.

*Second,* despite the plaintiff's multiple protestations to the contrary, at the time this loan was made, §589 of the NY Banking Law Law, did not exist. In short, on December 11, 2006, there was no legal impediment for any individual, from any state, to act as a loan officer in the State of New York, so long as that individual operated under the umbrella of a properly licensed New York mortgage broker. There is no dispute that co-defendant Evolution Mortgage

1

was the identified mortgage broker for the loan at issue.   There is no question that Charles Dragna, admittedly a principle of defendant Watermark, acted in his individual capacity and engaged in loan services under the auspices of Evolution mortgage.   Simply put, there was absolutely nothing improper for anyone, including Charles Dragna, to perform the services that he performed and to be subsequently compensated for his efforts.   The statute upon which the plaintiff relies was not enacted by the State legislature until the year 2008.

## ARGUMENT

### POINT I

### THE STANDARD FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Although the burden of demonstrating the absence of a material issue of fact lies initially with the movant, once satisfied, the burden shifts to the non-moving party to bring forward credible evidence to controvert the movant's Rule 56 showing.   See, e.g., Lawson v. Getty Terminals Corp., 866 F.Supp. 793, 799-800 (S.D.N.Y. 1994) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).   To defeat a motion for summary judgment, "[t]he non-moving party must come forward with specific facts showing there is a genuine issue for trial by 'a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'"   Lawson, supra at 800, quoting Celotex, supra.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

As fully set forth below, there is no genuine dispute as to any material fact, and this Court should grant WATERMARK summary judgment on all of Plaintiff's claims.

## POINT II

### THE GBL §349 CLAIM FAILS AS A MATTER OF LAW

New York General Business Law §349 permits a right of action by a consumer who was damaged as a result of deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.  The section is aimed at wrongs against the consuming public.  Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, NA, 85 N.Y.2d 20, 24 (1995).  A plaintiff must demonstrate that the acts "have a broader impact on consumers at large.  Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute…  A prima facie case requires as well a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof."  Id. at 25.  The elements of a GBL §349 claim are "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2nd Cir. 2000).  The plaintiff cannot satisfy any of the foregoing criteria.

### A.    No Communication was Materially Deceptive or Misleading

To begin with, it is the position of Watermark that the plaintiff was never mislead by **ANYONE**, excepting possibly her own husband, as she readily admits that all negotiations concerning this loan were performed by her husband.  .  Furthermore, all negotiations were had with an individual named Todd Matthews. See **Ex. H** at pp 254-256.  Although Mr. Matthews

would on occasion provide loan services on behalf of Watermark, he was not in their employ and never acted on their behalf. Accordingly, for these reasons alone, the Court need go no further as plaintiff's claims that she was deceived by Watermark cannot be sustained.

However, presuming this Court gives credence to the allegation that Todd Matthews was an employee, or otherwise acted on behalf, of Watermark and not Charles Dragna, the plaintiff's complaint must still fail as a matter of law. No communication to Plaintiff was deceptive or misleading in a material way.

In determining whether a representation or omission is a deceptive act, the test is whether such an act is "likely to mislead a reasonable consumer acting reasonably under the circumstances". Stutman v. Chemical Bank, 731 N.E.2d 608, 611-12 (N.Y. Ct. App. 2000) (quoting Oswego 85 N.Y.2d at 26, 647 N.E.2d 741 (1995)). "An act is deceptive within the meaning of [GBL § 349] only if it is likely to mislead a reasonable consumer." Marcus v. AT&T Corp., 138 F.3d 46, 64 (2nd Cir. 1998).

Here, although Plaintiff made numerous and sometimes contradictory factual assertions in support of her GBL §349 claim (see **Ex. D**, at pp. 33-42), the heart of the claim seems to rest on the assertion that she was promised a 1.5% fixed rate loan. **See Ex. A**, ¶ 57. Due to the clear and unambiguous language of the GFE, this Court has already found as sanctionable the allegation the proposed loan was to be one of a fixed rate. **See Ex. D**, pp. 37-38. In addition, this Court further observed that:

> Although the Good Faith Estimate indicates Plaintiff's loan would have a 1.5% interest rate, the "Loan Program" appearing at the top right of the page identifies the loan as an "MTA Option Arm," (Pl.'s Ex. Q), an ARM being an adjustable rate mortgage, *see* Bd. of Governors of the Fed. Reserve Sys., *Interest-Only Mortgage Payments & Option-*

> *Payment ARMs—Are They for You*? 1, 3-4, 12 (2006), *available at* http://www.fdic.gov/consumers/consumer/interest-only/mortgage_interestonly.pdf. Moreover, the Good Faith Estimate requires the loan applicant to sign and thereby acknowledge "receipt of the booklet 'Settlement Costs' and if applicable the Consumer Handbook on ARM Mortgages." Plaintiff and her husband's 2013 testimony that she was promised a fixed-rate loan does not create a genuine dispute of material fact by contradicting her own 2009 allegation, repeated three more times in subsequent amended complaints, that Plaintiff was promised an adjustable rate loan.

Id. at p.14.

Thus, not only did Watermark not mislead Plaintiff in any material way, but the very gravamen of plaintiff's claim of misleading representations simply fails as the documents were not deceptive in any material way to a reasonable consumer.

In addition, it cannot be stressed more forcefully that the plaintiff has acknowledged in a multitude of formats, that her husband conducted all the negotiations for this loan. **See Exhibit H** – at pp. 11, 17, 55, 254-256. In fact, the Plaintiff has stated that at most, she had one conversation with Todd Matthews but she cannot be certain if she actually spoke with him, or she was recalling what her husband told her. Although the relevant colloquy is attached within Exhibit H, the following portion of Plaintiff's testimony is worth repeating. In discussing the one and only conversation Ms. Hutter claims to have had with Todd Matthews, she states the following:

A. "…I don't know if I was on the phone with Todd and my husband or if it was just me or if it was a conversation that my husband had and he relayed to me…"

**Id. at** – p. 12 L 17-25.

5

Clearly, there can be little of any doubt that the Plaintiff herself was never mislead by anyone as she cannot even state with certainty if she even spoke to Todd Matthews concerning this loan. Conversely, as is shown throughout her deposition testimony, Plaintiff has repeatedly and steadfastly stated that it was her husband who did **ALL** (emphasis added) Accordingly, contrary to the allegations set forth in the TAC, i.e. that **SHE** was deceived by these defendants, the truth is she could not have been, as she had no substantive conversations with any one at all, other than possibly her husband, concerning this loan.

**B.      Watermarks Actions Did Not Cause Plaintiff's Injuries**

Plaintiff has failed to raise a material question of fact that an act of Watermark caused the plaintiff to suffer actual injury. A GBL § 349 claim "must show that the defendant's 'material deceptive act' <u>caused</u> the claimed injury. <u>Stutman</u>, 731 N.E.3d at 612 (emphasis added and citation omitted). In the context of GBL § 349, "causation refers to the link between an alleged deceptive practice and an actual injury sustained by a consumer as a result of such a practice." <u>Morrissey v. Nextel Partners, Inc.</u>, 22 Misc. 3d 1124(A), 880 N.Y.S.2d 874 (N.Y. Sup. Ct. 2009).

Preliminarily, Plaintiff avers no theory in her Complaint of how she was damaged by any claimed deceptive act, asserting only she is entitled to "actual damages." **56.1 Stmt., Ex. A**, *ad damnum* clause. The only alleged change in Plaintiff's circumstances is her claim that she was deceived into refinancing a loan she could not afford (because she had no income) with the Loan,

6

which she also could not afford.  She does not assert how this damages her, putting aside the immaterial allegation that she thought she would be offered a loan at 1.5%.[1]

There is no material question of fact that no act by Watermark (and certainly no materially deceptive act) *caused* her to refinance or caused her any damage at all.  Indeed, she decided to borrow the money, and voluntarily came to the closing.  At the closing, she was presented with a promissory note labeled in bold, large-font, capital letters: "MONTHLY ADJUSTABLE RATE PAY OPTION NOTE".  **See Ex. M**.  She signed the Note and other related closing documents, which clearly disclosed the terms of the Loan.  In addition, Plaintiff also received at the Loan closing a Pay Option Adjustable Rate Mortgage Loan Program Disclosure.  **Ex. J.**  A reasonable consumer – and Plaintiff had significant experience relating to mortgage loan transaction having closed on at least three prior adjustable-rate mortgage loans – would understand the clear disclosure she faced.  (For the purpose of brevity, this Court is respectfully referred to pages 3 & 4 of the Statement of Facts submitted on behalf of co-defendant Countrywide for an outline of the plaintiff's borrowing history for a showing of her level of sophistication in this regard.)

Indeed, it was Plaintiff *herself* that distorted her ability to repay the Loan by misstating her monthly income on the Loan Application.   Plaintiff admits that she signed the Loan Application.  **See H** – at pp. 94, 95.  The Application states that Plaintiff:

> represents to Lender...... that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of the information contained in this application may result in civil liability , including monetary damages to any person who may suffer any loss due

---

[1]   Other theories of damages have already been rejected by this Court.  See Rule 56.1 Stmt., the Order, Ex 10 at pp. 18-19.

to reliance on any misrepresentation that I have made on this
application, and/or in criminal penalties including but not limited to fine
or imprisonment or both under the provisions of Title 18 United State
Code Sec. 1001 et seq. ….".

**Ex. I**, p. 4.  In the Loan Application, Plaintiff stated that her monthly income was $38,500.  **See**

**id.** at p. 2.  In fact, Plaintiff had no income at all.  **See Ex. A**, ¶ 19.

As is aptly pointed out in the brief of co-movant Evolution, counsel for plaintiff has been

involved with several other matters with very similar fact patterns. See, the cases of Aydin v.

Opteum Financial Services, LLC., 2014 WL 2612516, which cited  Hayrioglu v. Granite Capital

Funding, LLC, 794 F.Supp.2d 405 (E.D.N.Y.2011).  In both of those matters, it was held that the

Plaintiff could not have relied on alleged misrepresentations regarding her own income.  As was

the case with Ms. Aydin in Aydin v. Opteum , Mrs. Hutter was fully aware of her monthly

income and cannot have reasonably relied upon a misstatement that grossly exaggerated her own

earnings.  Counsel for Plaintiff is fully aware of these holdings as he was counsel for the plaintiff

(s) there as well.

In the case at bar, Plaintiff was fully aware that she had no monthly income and cannot

claim to have reasonably relied upon what she now asserts is a misstatement that grossly

exaggerated her own earnings. Especially when it stated her monthly income was $38,500 when

in actuality it was zero.  See also, Karakus v. Wells Fargo Bank, N.A., 941 F.Supp.2d 318, 343–

44 (E.D.N.Y.2013), (also brought by counsel for Ms. Hutter) where the Court held  a "reasonable

consumer" should know the state of her own finances and whether or not she can afford a certain

monthly loan payment.  "A borrower who simply accepts another party's assertions that she will

be able to afford clearly stated monthly fees acts unreasonably if she cannot, in fact, afford those

payments." *See* Patterson *v.* Somerset Invs. Corp. 96 A.D.3d at 817, 946 N.Y.S.2d 217.   In the

8

case at bar, as in *Patterson* it has been demonstrated that the terms of the subject mortgage loan were fully set forth in the loan documents, and that no deceptive act or practice occurred in this case (*see Morales v AMS Mtge. Servs., Inc.*, 69 AD3d 691, 693 [2010]).  Just as in *Patterron, t*he plaintiff's claim that she did not read the documents before executing them is unavailing, since a party who signs a document without any valid excuse for having failed to read it is "conclusively bound" by its terms (*Gillman v Chase Manhattan Bank*, 73 NY2d 1, 11 [1988]; *see KMK Safety Consulting, LLC v Jeffrey M. Brown Assoc., Inc.*, 72 AD3d 650, 650-651 [2010]; *Ahmed v Getty Petroleum Mktg., Inc.*, 12 AD3d 385, 386 [2004]; *Sofio v Hughes*, 162 AD2d 518, 519-520 [1990]).  As in *Patteron,*, the documentary evidence submitted in this matter conclusively establishes that the plaintiff has no cause of action pursuant to General Business Law § 349.,

Finally, in spite of plaintiff's arguments to the contrary, it was proper to accept, Without supporting documentation, the $38,500 monthly income amount listed in the Loan Application.  Indeed, Plaintiff sought a loan that permitted her to submit minimal to no documentation which  enabled her to obtain the Loan despite her knowledge that she lacked the resources to repay it.

Accordingly, the GBL claims fails for the additional reason that Plaintiff cannot demonstrate a causal link between Watermarks actions, if any, and any injury.

## C.   **Plaintiff Has Not Been Injured As A Result of the GFE**

Finally, Plaintiff must prove "actual" injury to recover under GBL § 349. <u>Stutman</u>, 731 N.E.2d at 612; <u>Oswego</u>, 85 N.Y.2d at 26 (a plaintiff seeking compensatory damages under GBL § 349 must show "actual, although not necessarily pecuniary harm").  Plaintiff's speculative theories of damages have already been rejected by the Court (**Ex. D** at pp. 18-19), and indeed she suffered no injury.

Here, Plaintiff suffered no damage at all, much less any caused by Watermark. Refinancing her mortgage did <u>not</u> damage her. She already owed most of the principal She borrowed before she refinanced and received an additional $110,000.00 in cash. **See Ex. K**.   Indeed, the Complaint is devoid of any allegation of the injury caused by the allegedly materially deceptive conduct.  In fact, the Complaint merely states that the Court should award her "actual damages…in amounts to be determined at trial".  **See Ex. A**, *ad damnum* clause.

For all these reasons, the GBL claim fails as against Watermark and should be dismissed.

## POINT III

**WATERMARK DID NOT VIOLATE NEW YORK BANKING LAW  SECTION 589-599 AS AT THE TIME THIS LOAN WAS CLOSED THESE STATUTES  HAD NOT YET BEEN ENACTED LAW**

The plaintiff has alleged that the defendant Watermark violated New York's Licensed Mortgage Broker law by brokering a loan when they were unlicensed to do so in the State of New York.  To support their claim, the plaintiff relies upon New York Banking Law §§ 589 – 599.  These defendants concede that as written, this section of the banking law may have indeed been violated if the facts at issue occurred today and of course, if Watermark were, in fact, the brokers of record (which they were not.)  However, as we've seen throughout, co-defendant Evolution, not Watermark, was the broker for this Loan.  **See Exhibit F** at p. 27

The loan documents were initially prepared by Todd Matthews.  This is a fact that has been acknowledged from inception by the plaintiff, her counsel and her husband, the individual who is now claimed to have conducted all the negotiations on the loan.  Unable to close the loan on his own, Todd Matthews obtained the assistance of Charles Dragna.  Mr. Dragna recognizing

that his company, defendant Watermark, was not a licensed mortgage broker in the State of New York, contacted Joe Sciacca.  Joe Sciacca is and was the President of defendant Evolution and Evolution was a properly licensed Mortgage Broker in the State of New York.  **See Id**. Through Evolution, the loan was completed.  Evolution is the mortgage broker on record. Evolution, and Evolutions name only, appears on all the necessary closing documents.  See **Ex. K, line 810; Ex. I, p. 4.**  Upon information and belief, Evolution received its compensation from the proceeds of the loan.  Thereafter, Evolution paid Charles Dragna individually for the work he performed in preparing the loan documents.  Evolution issued to Charles Dragna, not Watermark, IRS Form 1099.  **See Exhibit G – 1099 form.**  Evolution paid Charles Dragna individually.  **See Exhibit H – Copy of the check**.  There is no interpretation of the evidence that could possibly lead to the conclusion that Watermark was the brokers for this loan.

The second and more compelling reason Watermark could not have violated the law as alleged by plaintiff is without any possible rebuttal.  The loan at issue herein closed on December 11, 2006. Banking Law § 590.2(b) was not in effect at the time this transaction was concluded.  In response to the collapse of the housing market and the casualties that presumptively followed as a result of predatory lending, in 2008, the legislature drafted § 590.2(b) in an effort to curtail some of the lending practices that were seen by a few as taking advantage of less sophisticated citizens who desired only to own a home of their own.  This law did not go into effect until 2009!!  In fact, whether knowingly or not, plaintiff's counsel acknowledges this fact in a footnote in the TAC, which states "14 N.Y Banking Law §§ 589-599 (McKinney 2008. S**ee Ex. A p. 18**.  At the time this loan closed, nothing that was done by Charles Dragna, and Watermark by extension, was contrary to the then state of New York law. There was absolutely no prohibition for Charles Dragna to perform services for this loan.  At the

11

time, all that was required was that the mortgage broker of record was properly licensed in New York, as Evolution was and, that whoever the loan officer was, in this case Charles Dragna, that individual worked under the umbrella of the Evolution license.  See **Ex. E.** the **"UNDERTAKING of ACCOUNTABILITY"** undertaking of accountability, which was prepared by Evolution and filed with the State of New York.,   There can be no doubt that this document identifies Charles Dragna, not Watermark, as the loan officer working under Evolutions license.  The actions taken by Charles Dragna, Joseph Sciacca and Evolution Mortgage were completely legal at the time this loan was closed.  Further, even if Watermark were somehow involved, an allegation that has been shown to be untrue, they too would not have been in violation of any New York State law as it is disputed by none that Evolution was the broker of record.  The plaintiff's claim for violating New York's Licensed Broker Law cannot be sustained.

## CONCLUSION

This plaintiff has gone on a spree of refinancing deals for the property in question. Although there is only one such loan before this court, the plaintiff had taken two additional loans, one previous to this in January of 2006 and another just one month after the Loan before this court.  In each of those loans, the plaintiff has drawn a substantial amount of cash, nearing one million dollars, for her personal use and benefit.  Once the market crashed and the equity in her home was no longer available, the plaintiff commenced this, as well as two other lawsuits each of which set forth nearly identical claims of harm and misdeeds by the defendants.

It is clear from this record that the plaintiff is simply attempting to "game" the system.  For all the foregoing reasons, this Court should grant summary judgment in favor of WATERMARK on all of Plaintiff's claims.

Dated:    Mineola, New York
          February 13, 2015

                              LAW OFFICE OF JOHN T. SERIO


                      By: _____
                          John T. Serio
                          Attorneys for Defendant
                          Watermark Capital Inc.
                          114 Old Country Road - Suite 420
                          Mineola, New York 11501