John T. Serio
LAW OFFICE OF JOHN T. SERIO

Old Country Road- Suite 420
Mineola, NY 11501
(516) 248-5317
(516) 294-5348 (fax)

Attorneys for Watermark Capital Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>                    Plaintiff,<br><br>- against -<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of COUNTRYWIDE FINANCIAL CORPORATION, WATERMARK CAPITAL, INC. and EVOLUTION MORTGAGE, INC.,<br><br>                    Defendants. | Case No.:   09 CV 10092 (NSR)(LMS) |

### STATEMENT OF MATERIAL FACTS ABOUT WHICH THERE IS NO GENUINE ISSUE SUBMITTED BY DEFENDANT WATERMARK CAPITAL

Watermark Capital Inc., ("WATERMARK") by its attorneys, the Law Office of John T. Serio, pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, respectfully submits this Statement of Material Facts about which there is no Genuine Issue.

1. On or about November 15, 2011, the plaintiff Nance M. Hutter ("Plaintiff") filed a Third Amended Complaint (TAC). The complaint sets forth allegations regarding a $1,785,000 Pay Option Adjustable Rate Mortgage Loan (the "Loan") that the plaintiff obtained from Countrywide on December 11, 2006. This loan was a "No-doc" loan and was secured by a mortgage on her home at 175 Hickory Kingdom Road, Bedford, NY. (the "Property") A true and accurate copy of the complaint is attached as **Exhibit A**.

2. A true and accurate copy of defendant Watermark's Answer with Cross-Claims is attached as **Exhibit B**.

3. That the plaintiff was first contacted in December of 2004 when she received what she describes as a "solicitation" letter from an individual named Todd Matthews. The letter she describes utilized a letterhead identifying the sender as "Capstone Mortgage." Neither Capstone Mortgage, and more curiously Todd Matthews, were ever named as defendants in this action. The "solicitation" letter is attached as **Exhibit C**.

4. Todd Matthews was not an employee of Watermark and in fact owned his own mortgage broker firm called Procession, which was located in California.

5. Todd Matthews, believing Charles Dragna, to be licensed in New York referred the loan to him.

6. In turn, knowing his company was not licensed in New York, Dragna referred the loan to a business associate named Joe Sciacca and his company, co-defendant Evolution.

7. There is no dispute that Evolution was the mortgage broker of record for the loan at issue. This fact is recognized by the plaintiff herself in various paragraphs of the TAC, by the deposition testimony of Joseph Sciacca, President of Evolution, as well as several pre-closing and closing documents associated with the Loan.

8. That on or about December 2006, Evolution, as required by law, filed the required form known as an "Undertaking of Responsibility" with the State of New York. Under the laws of New York at the time, the filing of this document granted Charles Dragna legal authority to perform the mortgage services in question. See **Exhibit E**.

9. Evolution performed broker services for the Loan. See **Exhibit F** at page 27.

10. Plaintiff received, signed and returned a document permitting the bank at which she maintained a deposit account to release information to **EVOLUTION** (emphasis added), in connection with Evolution settlement services. See June 4, 2010 Hutter Aff. Para. 8. A copy is attached as **Exhibit G.**

11. On December 11, 2006, Plaintiff and her husband attended the closing (Closing) for the subject loan.

12. Plaintiff admits to signing a loan application at the Closing (the "Application") See **Exhibit H** at p. 38. The Application is attached as **Exhibit I** .

13. The application states that Plaintiff had a monthly income of $38,500. Id. at p.2

14. The Application identifies Joseph Sciacca and Evolution Mortgage as the mortgage broker for the Loan. Id. at p.4.

15. The Plaintiff in fact had no income for the years 2005-2007. See **Exhibit H**, at p. 40.

16. At the Closing, Plaintiff signed a Truth In Lending Disclosure Statement ("TILA") and a Pay Option Adjustable Rate Mortgage Loan Program Disclosure ("Disclosure") See **Exhibit H** at pp. 113, 119-120. A copy of the TILA and Disclosure are attached as **Exhibit J** collectively.

17. Plaintiff received $110,790.17 in Loan proceeds as noted on line 303 of the HUD – 1 Settlement Statement ("HUD-1") A copy of the HUD-1, signed by Plaintiff, is attached as **Exhibit K**.

18. None of the documents sent to Plaintiff prior to closing, or that she signed at the closing , state that the interest rate for the loan as proposed or consummated was a 1.5% fixed rate for the entire 40 term of the loan. See **Exhibits L** (GFE), **I** (loan application) **J** ( TILA) and **K** (HUD-1) respectively.

19. That at the closing of this loan, no member, principle, employee or agent of Watermark was present at the closing ceremony

20. That subsequent to the closing, Evolution paid Charles Dragna, not Watermark, for services rendered. See **Exhibit O**.

21. That in accordance with that payment, Charles Dragna individually, received tax form 1099 from Evolution. Charles Dragna claimed the payment on his

personal income tax and was never reimbursed by Watermark for the taxes he paid as a result of the loan in question. See **Exhibit O.** Also see **Exhibit N** at p.42-44.

      22.  That throughout the loan application process and up to and including the date of the closing, the plaintiff acknowledges that she never personally had any conversations with Charles Dragna or any other employee of Watermark.  All discussions and negotiations were conducted by her husband, Gerard Hutter, and were had with Todd Matthews.  See **Exhibit H** at pp. 254 -256.

      23. That contrary to the allegations set forth in numerous paragraphs of the TAC, Plaintiff was never personally deceived, tricked or misinformed by this defendant or anyone acting on their behalf. Id. at pp 297-307.

      24. At the time of this loan, the plaintiff had no income, however, she nonetheless signed a loan application which stated her monthly income to be $38,500.

      25.  That the plaintiff cannot set forth or identify an identifiable in any objective manner how she has been damaged by any of the wrongful "acts" alleged to have been committed by defendant Watermark.

      26.  At the Closing, Plaintiff signed and received two copies of the Notice of Right to Cancel ("NRC") See **Exhibit H** , p.121 Depo. Exhibits D1 and D2.

      27.  Plaintiff acknowledges that it is her signature on both NRC documents. Id.

28. Plaintiff admits that she and her husband had no income from 2005-2007. **See Exhibit H** at p. 40.

Respectfully submitted,

Law Office of John T. Serio

JOHN T. SERIO/JTS-0007
Attorney for defendant Watermark Capital Inc.
114 Old Country Road, Suite 420
Mineola, New York 11501
(516) 248-5317

11