Case 7:09-cv-10092-NSR   Document 201   Filed 04/01/15   Page 1 of 10

John T. Serio
LAW OFFICE OF JOHN T. SERIO
Old Country Road- Suite 420
Mineola, NY 11501
(516) 248-5317
(516) 294-5348 (fax)
Attorneys for Watermark Capital Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCE M. HUTTER,<br><br>                    Plaintiff,<br><br>- against -<br><br>COUNTRYWIDE BANK, N.A., a subsidiary of COUNTRYWIDE FINANCIAL CORPORATION, WATERMARK CAPITAL, INC. and EVOLUTION MORTGAGE, INC.,<br><br>                    Defendants. | Case No.: 09 CV 10092 (NSR)(LMS) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**WATERMARK CAPITAL INC. MOTION FOR SUMMARY JUDGMENT**

**LAW OFFICE OF JOHN T. SERIO**
114 Old Country Road - Suite 420
Mineola, New York 11501
Telephone: (516) 248-5

## PRELIMINARY STATEMENT

In her Preliminary Statement the plaintiff expresses surprise that Watermark "is in this case at all." Agreed, though the reasons cannot be more polar. Interestingly, the plaintiff "admits" to some of the most relevant and dispositive facts surrounding this case. To highlight, the plaintiff admits co-defendant Evolution was the mortgage broker for this loan; she admits to signing the loan application at the closing; she admits to receiving the amount of $110,719.17 in loan proceeds shortly after closing; she admits that none of the documents sent to her prior to closing or executed by her at closing state the interest rate of the loan would be 1.5% for the 40 year duration of the loan; she admits that Evolution paid commissions to Charles Dragna and not Watermark Capital; she admits that Charles Dragna received IRS form 1099 for said payment and she admits to signing the loan application that claimed the plaintiff had a stated monthly income of $38,500 when by her own account, she had no income at all.

The plaintiff continues to submit disingenuous arguments to this court in a desperate effort to avoid summary judgment. It is clear that Watermark Capital did not, and could not have, engaged in any deceptive practice(s) at all. Once again the plaintiff, whether intentionally or not, misstates Watermarks argument concerning the status of the law in December of 2006 as it concerns the need for mortgage brokers to be licensed within the state of New York. Continuing along those lines, the plaintiff again refuses to acknowledge the clear meaning of N.Y. General Business Law §349 as well as the subsequent case law interpreting it by repeatedly claiming that Watermarks alleged involvement with this sole loan somehow brings it under the umbrella of GBL §349. It does not. Finally, despite plaintiff's distorted efforts to do so, she cannot, as a matter of law, establish the incurring of any damages at all, never mind damages resulting directly from the acts of this defendant. Accordingly, this Court should grant Watermark summary judgment.

1

# ARGUMENT

## 1. WATERMARK CAPITAL DID NOT VIOLATE GBL §349 THE DECEPTIVE PRACTICES ACT

The plaintiff's opposition correctly states the elements required to establish a deceptive practices claim under GBL §349, those being;

    a.    The deceptive acts must have been directed at consumers as a whole and must not involve an isolated dispute between a consumer and a business;
    b.    The acts are misleading in a material way; and
    c.    The plaintiff must have been injured by the deceptive practices.

Although the plaintiff correctly states the requisite elements, her attempts to bring this defendant within those parameters is, at the very least, a bit of a stretch.

### A. Plainttiff's Argument that Watermarks Acts Were "Directed at Consumers" is Utterly Without Merit

The plaintiff first attempts to convince this Court that the acts she attributes to Watermark were directed to "consumers" in general and not a singular dispute between parties. Her argument fails miserably. A review of plaintiff's brief clearly shows her attempt to attribute years of so-called bad behavior committed by Countrywide Bank to defendant Watermark. The plaintiff repeats a litany of acts she claims to have been performed by Countrywide that, if true, may give rise to a §349 claim, but only against Countrywide. In a desperate attempt to attribute §349 conduct to Watermark, the plaintiff alleges that Watermark participated in Countrywide's "irresponsible" lending in two ways. First, the plaintiff claims that Watermarks use of a false Good Faith Estimate was "not unique to Hutter's loan, but was part of a trend." See Opp. Memorandum page 9. The plaintiff argues this to be true because "lending to people who cannot afford their loans as Countrywide did, requires false documents." Id

The Plaintiff next argues that Watermark further participated in Countrywide's claimed pattern of "bad mortgage loans" when, in 2005, it entered into an agreement to broker Countrywide

2

loans (plaintiff mistakenly states the agreement was reached in 2005. The correct date was April 11, 2006. See **Plaintiff's Ex. H**) The plaintiff argues by doing so "That makes it likely that Watermark brokered other Countrywide loans besides Hutter's in which Watermark falsified a loan document (emphasis added), the borrower could not afford her loan and Countrywide sold the bad loan to a securitization trust." See **Opp. Memorandum**, page 9. This is weaker than pure speculation. The plaintiff's argument is nothing short of outrageous, as it alleges illegal conduct upon Watermark without a single, solitary shred of evidence to support such a scurrilous claim. The plaintiff's own argument acknowledges it to be unsupported by fact and of pure speculation by her use of the phrase "makes it likely that Watermark brokered…" See **Opp. Memorandum** page 10. The plaintiff goes on to summarize this argument by stating:

> "**because Hutter's Countrywide loan was one of thousands of unaffordable loans that Countrywide made that used false documents and that helped cause the Great Recession, Watermark's brokering Hutter's loan by means of a false good faith estimate had a broader impact on consumers at large than just its effect on Hutter.**" See Opp. Memorandum page 10.

With all due respect, this argument is so preposterous it is difficult to present a rational response. Nevertheless, Watermark cannot speak to those loans that Countrywide may or may not have previously made, but can address only the loan at issue involving this plaintiff. As it concerns Watermark, the alleged Good Faith Estimate is absolutely unique to this plaintiff, involving Mrs. Hutter and Mrs. Hutter alone. The Plaintiff has not set forth a scintilla of evidence that Watermark closed any other loans with Countrywide as the lender and if it had, there is no evidence that false documents were utilized in doing so. Further, there is also no support whatsoever for the claim that Watermark ever engaged in any "deceptive conduct" that was "directed at consumers." Which brings us to the plaintiff's second "basis" for plaintiff's attempt to bring Watermark within

3

the requisite criteria needed to establish a Deceptive Practices Claim, that being that "the acts are misleading in a material way."

As argued in their moving papers, Watermark reiterates that nothing in the Good Faith Estimate the plaintiff relies upon constitutes the purposely false and misleading act that is necessary to state a claim under §349. It is undisputed that the document states the loan will be at a rate of 1.5%. Nevertheless, this, as the name of the document indicates, is nothing more than an estimate. Argue as she will, nothing in the Good Faith Estimate can possibly be construed as a "promise" for the rate to be 1.5% for the forty year duration of the loan. It was an "estimate," pure and simple. In fact, the plaintiff herself defeats that portion of her argument that claims the Good Faith Estimate spoke of a "fixed-rate mortgage" when she acknowledges that the 1.5% figure was an "adjustable rate mortgage" and not the claimed fixed rate for the duration. **See Opp. Memorandum, page 14.**

Finally, although the 1.5% rate stated on the Good Faith Estimate is obviously different from the 8.125% rate the loan ultimately closed at, there is absolutely no evidence to support the allegation that this rate was purposely and deceitfully placed there in order to "dupe" an unsuspecting Mrs. Hutter. Further, this Court has already rejected Plaintiff's theory that the GFE could have misled her into believing that she was to receive a 1.5% fixed rate loan. As the Court explained at page 14 in its Rule 11 Decision:

> Plaintiff and her husband's 2013 testimony that she was promised a fixed-rate loan does not create dispute of material fact by contradicting her own 2009 allegation, repeated three more times in subsequent amended complaints, that Plaintiff was promised an adjustable rate loan.
> **See 56.1 Stmt. Ex. D – Memorandum Opinion and Order.**

The GFE did not "promise" the plaintiff any specific rate at all. A GFE is just "an estimate, as dollar amount or range, of each charge in section L of the HUD-1...and that the borrower will

4

normally pay and incur at or before settlement based upon common practice in the locality of the mortgage property." (24 C.F.R. § 3500.7 (2006))   Let us not forget the most compelling fact of all, the closing documents plaintiff signed clearly displayed the interest rate to be 8.125%.   In determining whether a representation or omission is a deceptive act under GBL, the test is whether such an act is "likely to mislead a reasonable consumer acting reasonably under the circumstances." Stutman v. Chemical Bank, 731 N.E. 2d 608, 611-12 (N.Y. Ct. App.2000).  The plaintiff's claim that for a myriad of reasons, she couldn't read the documents she signed at the closing is of no avail. "A reasonable consumer [under GBL §349] is responsible for reading and familiarizing herself with the terms of an agreement she freely entered into." Karakus v Wells Fargo Bank, N.A.  941 F. Supp. 2d 318.

Nothing further need be said.  Neither Charles Dragna, nor Watermark, have violated this portion of GBL §349.  As plaintiff cannot, as a matter of law, establish a disputed material issue of fact, this claim must fail.

### B. For the Purpose of This Motion The Involvement of Todd Matthews Is Irrelevant

This defendant is compelled to briefly address the Plaintiff's argument that "there is evidence that Todd Matthews worked for Watermark." Although it has been established that Todd Matthews was not an employee of Watermark but was instead an independent broker, his status is irrelevant as it concerns this motion. This Court is respectfully referred to page 17, paragraph two of the Plaintiff's Opposition Memorandum. There, Plaintiff sets forth the weakest of suppositions i.e. "…we know that Mr. Hutter transmitted at least some of what Matthews told Mr. Hutter, to Mrs. Hutter."; "So it's possible that Matthews, while working for Watermark, transmitted the false representations …to Mrs. Hutter." ; "Matthews would have done that by telling the falsehoods to Mr. Hutter, who passed them on to his wife. And Matthews would have known (plaintiff's

5

emphasis) that Mr. Hutter would pass the falsehoods on to Mrs. Hutter, and Matthews would have wanted (plaintiff's emphasis) Mr. Hutter to do that."

The Plaintiff's arguments have been reduced to, "we know he transmitted some of what Matthews told him"… "So it's possible", ".. Matthews would have known", and "Matthews would have wanted Mr. Hutter to do that." Not one iota of these arguments are supported by relevant facts. How does the Plaintiff know what Matthews would have known or wanted? How do we know what falsehoods, if any, were said to Mr. Hutter? How do we know what was said during the Matthews-Mr. Hutter conversations that was not transmitted to Mrs. Hutter? How do we know if it wasn't Mr. Hutter, on his own, who deceived his wife in order to obtain funds he would not otherwise had access to in order to save his struggling company? We can only speculate. Speculation cannot save the Plaintiff from the granting of summary judgment. What Todd Matthews said or did not say to Mr. Hutter has no bearing on whether or not Watermark violated any laws in its alleged dealings with Mrs. Hutter.

### C. Watermark was not the Mortgage Broker for this Loan and Therefore Could Not Have Violated the Deceptive Practices Act

As has been argued throughout and actually acknowledged by the plaintiff (see Opp. Memorandum to Evolutions Motion for Summary Judgment), the mortgage broker for this loan was co-defendant EVOLUTION MORTGAGE. As shown time and again, Charles Dragna principle of Watermark, provided a portion of the brokers work but did so under the umbrella of the Statement of Accountability, filed by Evolution with the State of New York.

The plaintiff argues that by Watermark operating without a license, this act alone constitutes a "deceptive practice." It appears the plaintiff is arguing there is an implied representation that the entity working on the loan, in this case Dragna and as alleged, Watermark, is licensed to do so and if not licensed this fact alone makes the conduct deceptive:

6

> "A mortgage broker who works on a loan represents that the broker is properly licensed to do so. When Watermark performed the essential broker's duty…it represented to her and to Countrywide that it was properly licensed as a mortgage broker …so, by doing unlicensed brokerage work on Hutter's loan, Watermark violated the Deceptive Practices Act's prohibition against 'deceptive acts or practices..." **See Opp. Memorandum** pages 12-13.

Once again, the plaintiff attempts to apply the law into areas never contemplated by the legislature. In fact, this approach is so novel that case law addressing this issue seems not to exist. Nevertheless, there are several flaws in the plaintiff's argument. First, it must be repeated, Evolution, as is acknowledged by the Plaintiff time and again, was the broker for this loan. The inquiry should stop here. Second, it has also been established that Charles Dragna, acting as an Independent agent, provided broker services under the umbrella of the licensed broker Evolution via the "undertaking of accountability" filed with the State of New York. Finally, the plaintiff's argument of deception is completely undermined by her own deposition testimony where she stated; "…Todd Matthews told my husband that Watermark couldn't broker the loan in New York because they couldn't get a license in New York." **See Serio Addendum to 56.1, Para. 2 Exhibit R , Nance Hutter deposition p. 283.**

This statement alone ends the Plaintiff's argument as she unequivocally acknowledges being fully aware of the fact that Watermark was unlicensed. It is difficult to imagine how one can argue that they were deceived because they "presumed" Watermark was licensed when they had specific knowledge that they were not.

Presuming for the purpose of this argument that Watermark, and not Evolution or Dragna, was the broker, for the foregoing reasons the allegations set forth by the plaintiff in support of her claim of "deceptive practice" by being unlicensed must fail as a matter of law.

7

### D.  Plaintiff Has Not Been Injured As a Result of Deceptive Practice

As discussed in the moving Memorandum, the Plaintiff must prove "actual" injury to recover under GBL §349. Stutman 731 N.E.2d at 612. To begin, based upon her own claim of "no income" the plaintiff could not afford the payments on any loan at all. In addition, it is only in her Opposition Memorandum that the Plaintiff first sets forth her claim for damages is based upon the difference between the 1.5% fixed rate loan she falsely claims she was promised and the 8.125% which she falsely claims is the rate of the loan. This claim fundamentally misleads this Court as the plaintiff knows that the 8.125% rate was an introductory one that adjusted almost immediately to a rate of 3.275% above the twelve-month average of the annual yields on Treasury securities. (For brevity, for further discussion this Court is referred to the Reply Memorandum of Countrywide) Notwithstanding any of the foregoing, taking all the plaintiff claims as true regarding the representation of 1.5% on the GFE, this fact alone could not have lead to any injury at all to the plaintiff as it was nothing more than an estimate and never a "promise" of a specific rate.

### 2.  EVOLUTION, NOT WATERMARK, WAS THE BROKER ON THIS LOAN AND AS SUCH, WATERMARK COULD NOT HAVE VIOLATED NEW YORK BANKING LAW §§ 589-599

The plaintiff again tries to save herself from summary dismissal by attempting to argue facts that are simply untrue. In the face of all the evidence to the contrary, the plaintiff again tries to convince this Court that Watermark, and not Evolution, was the broker of record for this loan. This argument cannot succeed. It is admitted without hesitation that Charles Dragna provided broker services for this loan. Unfortunately for the plaintiff, at the time this loan was originated, there was absolutely no legal prohibition for Mr. Dragna, or for that matter, any individual, from anywhere, to act as a loan officer so long as he/she acted under the auspices of a properly licensed

8

mortgage broker. As has been shown time and again, through deposition testimony and the "undertaking of Accountability" (See **Exhibit E**) filed by Evolution with the State of New York, there was nothing improper or prohibited by law for this loan to be placed as it was. That is exactly what occurred here as Dragna was a disclosed broker. As is pointed out in literally dozens of areas, i.e. deposition testimony of the plaintiff, deposition testimony of Joseph Sciacca, deposition testimony of Charles Dragna, there is no doubt that Evolution, and no other, was the broker of record. Even more compelling than the foregoing is the critical fact that where required, the name Evolution Mortgage, and no other, is displayed throughout the closing documents wherever the name of the mortgage broker is required to be disclosed. This fact alone should end this discussion.

## CONCLUSION

The defendant bares the initial burden of establishing a prima facie showing for the granting of summary judgment. It has done that. The burden then shifts to the Plaintiff to set forth material facts in dispute to preclude the granting of summary judgment. The Plaintiff has failed. The Plaintiff's opposition relies almost entirely upon pure speculation as she can set forth no facts that would raise a triable issue of fact as it concerns this moving defendant. For the reasons set forth in the moving memorandum and further contained within this Reply, it is respectfully requested that this Court grant summary judgment to defendant Watermark and dismiss all of Plaintiffs claims against it.

Dated:   Mineola, New York
         March 31, 2015                    LAW OFFICE OF JOHN T. SERIO

                                           By: _____
                                              John T. Serio
                                              Attorneys for Defendant
                                              Watermark Capital Inc.
                                              114 Old Country Road - Suite 420
                                              Mineola, New York 11501